1                                                          HON. ROBERT S. LASNIK

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
9                                SEATTLE DIVISION

10    UNITED STATES OF AMERICA,
                                                    No.  CV05-1285L
11              Plaintiff,
                                                    JOINT STATUS REPORT AND
12          v.                                      DISCOVERY PLAN

13    IMPULSE MEDIA GROUP, INC. a
      Washington corporation
14
                Defendant.
15

16

17    1.    **NATURE AND COMPLEXITY OF THE CASE.**

18          A.    **The United States' Statement of the Factual and Legal Bases of the**

19                **Claims.**

20          Plaintiff filed this action seeking civil penalties, a permanent injunction and other

21    equitable relief, alleging that the Defendant violated Section 5(a) and (d) of the Controlling

22    the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM"), 15

23    U.S.C. § 7704(a) and (d), and the Federal Trade Commission's ("FTC") Adult Labeling

24    Rule (the "Adult Labeling Rule" or the "Rule"), 16 C.F.R. Part 316.4.

25          Since May 19, 2004, and continuing to the present, Defendant has owned and

26    operated dozens of commercial web sites that sell access to a vast collection of sexually

JOINT STATUS REPORT AND DISCOVERY PLAN
NO. CV05-1285L – Page 1

1    oriented videos and pictures.  Defendant promotes these sites through an affiliate program

2    that pays people who sign on as "affiliates" to steer consumers to Defendant's sites.

3    Affiliates advertise Defendant's web sites through a variety of means such as email, pop-up

4    advertisements, banner advertisements, and web pages.

5         Some people who participate in Defendant's affiliate program advertise and

6    promote Defendant's commercial web sites through widely distributed commercial email

7    messages containing sexually explicit pictures and stories that hyperlink to Defendant's

8    web sites.  Defendant can identify a particular affiliate as the entity deserving payment

9    when a potential customer clicks through an email to one of Defendant's sites due to the

10   specific characteristics of the hyperlinks in the email employed by the individual affiliate.

11   Since May 19, 2004, numerous email messages that advertise and promote Defendant's

12   commercial web sites have been sent to computers used in interstate or foreign commerce

13   and communication.

14        In connection with the marketing and promotion of Defendant's commercial web

15   sites, Defendant, through its affiliate program, has induced others, by monetary payments

16   and other consideration, to transmit commercial email messages on Defendant's behalf.  In

17   doing so, Defendant has procured the transmission of such messages and thereby "initiates"

18   as the term is defined under CAN-SPAM, 15 U.S.C. § 7702(9), the email messages sent by

19   its affiliates that promote and market Defendant's web sites.  In addition, because

20   Defendant's web sites are being advertised or promoted by such messages, Defendant is

21   also a "sender," as that term is defined under CAN-SPAM, 15 U.S.C. § 7702(16), of the

22   email messages that its affiliates are transmitting on Defendant's behalf.

23        CAN-SPAM and the Rule do not forbid sending sexually oriented material via

24   email.  Rather, they provide the electronic equivalent of a brown paper wrapper.  Email

25   advertising sites like those owned by the Defendant must caution the reader in the email

26   subject line concerning the sexual content of the email, and the initially viewable area of the

JOINT STATUS REPORT AND DISCOVERY PLAN
NO. CV05-1285L – Page 2

1  email cannot contain sexually oriented material.  Such email must also have a workable

2  "opt-out" option, and state the physical address of the sender.  Thus, firms like the

3  Defendant are free to peddle their wares via email, they must merely conform to some basic

4  rules of law when they do so.

5      Based on the facts outlined above and others as alleged in the Amended Complaint,

6  Plaintiff alleges three causes of action: (1) Defendant's acts or practices violate Section 5(d)

7  of the CAN-SPAM Act, 15 U.S.C. § 7704(d), and the Adult Labeling Rule, 16 C.F.R. §

8  316.4(a); (2) Defendant's acts or practices violate Section 5(a)(5)(A)(ii) and Section 5(a)(3)

9  of the CAN-SPAM Act, 15 U.S.C. §§ 7704(a)(5)(A)(ii) and 7704(a)(3); and (3)

10  Defendant's acts or practices violate Section 5(a)(5)(A)(iii) of the CAN-SPAM Act, 15

11  U.S.C. § 7704(a)(5)(A)(iii).

12      **B.      Defendants' Statement of the Factual and Legal Bases of the Defenses.**

13      This is a case of first impression under the recently enacted CAN-SPAM Act, 15

14  U.S.C. § 7701, *et seq.*, and the even more recently enacted regulations promulgated

15  thereunder at 16 C.F.R. Part 316.4, regulating unsolicited commercial email of a sexually-

16  oriented nature.  The essential issue in this case is one of vicarious liability.  In a nutshell,

17  the Plaintiff contends that the Act leaves providers of goods and services liable for "spam"

18  advertising of their products by others who are not agents, employees, officers, directors,

19  partners or otherwise under the control of the providers, notwithstanding the fact that those

20  providers, such as the Defendant, had no knowledge of the spam or of its illegal nature prior

21  to it being sent.

22      Congress passed the CAN-SPAM Act in December of 2003, effective January 1,

23  2004, only after considering numerous spam-related bills over the years.  The Act includes

24  enabling legislation allowing the Federal Trade Commission ("FTC") to promulgate

25  regulations of various types.

26

1    Central to this case are those regulations promulgated by the FTC related to

2    sexually-oriented spam, 16 C.F.R. Part 316.4, the self-styled "Adult Labeling Rules," which

3    became effective May 19, 2004.

4    It is noteworthy that in May of this year, the FTC solicited and received public

5    comments concerning the possibility of creating a set of "safe harbor" provisions for those

6    in precisely the same position as Defendant Impulse Media Group, i.e., those who sell

7    products of services that are promoted by others whose conduct the seller cannot control.

8    Ironically, in apparent recognition that vicarious liability may not be appropriate in

9    situations such as that faced by Defendant Impulse Media Group, the FTC queried, "Should

10   the Commission adopt a 'safe harbor' with respect to opt-out and other obligations for

11   companies whose products or services are advertised by affiliates or other third-parties?  If

12   not, why not?  If so, what would be the appropriate criteria for such a safe harbor?"

13   Definitions, Implementation, and Reporting Requirements Under the CAN-SPAM Act, 70

14   Fed. Reg. 25426, 25450 (May 12, 2005).  Nevertheless, without answers to those questions,

15   the FTC brings this action against the Defendant alleging violation of the very conduct

16   questioned by Plaintiff's posit.

17   Contrary to Plaintiff's intimations in its Amended Complaint, Defendant Impulse

18   Media Group does not "pre-pay" members of its affiliate program to refer potential

19   customers to Defendant's Web sites.  Also contrary to Plaintiff's allegations, no affiliates

20   advertise and promote Defendant's commercial Web sites through widely distributed

21   commercial email messages with Defendant's knowledge or consent.

22   Defendant Impulse Media Group submits that the United States lacks standing to

23   claim relief for alleged violations of 15 U.S.C. § 7704(d) and 16 C.F.R. Part 316.4(a) on the

24   basis that 15 U.S.C. § 7704(d) and 16 C.F.R. Part 316.4(a) are unconstitutionally vague and

25   therefore void.

26

1      Defendant Impulse Media Group submits that the evidence will not show that it has

2  unlawfully initiated transmission, to protected computers, of commercial email messages in

3  violation of 15 U.S.C. §§ 7704(a)(5)(A)(ii) and 7704(a)(3).  Defendant Impulse Media

4  Group further submits that the evidence will not show that it has unlawfully initiated

5  transmission, to protected computers, of commercial email messages in violation of 15

6  U.S.C. § 7704(a)(5)(A)(iii).

7      Defendant Impulse Media Group will show that it has, at all times, maintained and

8  enforced a "zero tolerance" policy against violators of CAN-SPAM and the Adult Labeling

9  Rule of whom it has become aware.

10      This is not a complex case.

11     **C.**     **The United States' Response to Defendant's Statement.**

12      Defendant asserts that it is noteworthy that in May of this year, the FTC solicited

13  and received public comments concerning the possibility of creating a set of safe harbor

14  provisions.  Definitions, Implementation, and Reporting Requirements Under the

15  CAN-SPAM Act, 70 Fed. Reg. 25426, 25450 (May 12, 2005).  The issue of a safe harbor

16  provision was raised by some commentators seeking a ruling from the FTC on a safe

17  harbor, but the FTC declined to establish a safe harbor for the reasons set forth in its

18  comments.

19      As stated in the FTC comments in the proposed rulemaking cited by Defendant:

20  "Some commenters asked the Commission for a ruling that content providers are not

21  responsible for e-mail messages advertising their product or service if the messages are sent

22  by affiliates or other third parties over which they have no control.  The Commission

23  declines to issue so broad a statement -- especially because, in other contexts, it has

24  specifically held sellers liable for the actions of third-party representatives if those sellers

25  have failed to adequately monitor the activities of such third parties and have neglected to

26  take corrective action when those parties fail to comply with the law.  The Commission

JOINT STATUS REPORT AND DISCOVERY PLAN
NO. CV05-1285L – Page 5

1  believes it inappropriate to excuse content providers in advance from the obligation to

2  monitor the activities of third parties with whom they contract. However, the Commission

3  includes questions in Part VII on whether a 'safe harbor' provision should be added to the

4  Rule and, if so, what criteria such a safe harbor might include." 70 Fed. Reg. at 25431

5  (footnotes omitted).

6  **2.      ALTERNATIVE DISPUTE RESOLUTION.**

7          The parties agree to submit these matters to mediation pursuant to Local Rule CR

8  39.1.

9  **3.      TIMING OF ALTERNATIVE DISPUTE RESOLUTION.**

10         The parties agree to submit these matters to mediation by October 27, 2006.

11 **4.      PROPOSED DEADLINE FOR JOINING ADDITIONAL PARTIES.**

12         The parties proposed deadline for joining additional parties is January 20, 2006.

13 **5.      PROPOSED DISCOVERY PLAN.**

14         **A.      Fed. R. Civ. P. 26(f) Conference.**

15         The Fed. R. Civ. P. 26(f) conference was held telephonically on October 14, 2005.

16 Plaintiff was represented by counsel. Defendant was represented by counsel. Pursuant to

17 the Court's order of September 23, 2005, Plaintiff's initial Fed. R. Civ. P. 26(a) disclosures

18 will be provided on or before October 28, 2005. By agreement of the parties, Defendant's

19 initial Fed. R. Civ. P. 26(a) disclosures will be provided within one week of Plaintiff's

20 disclosures. This Joint Status Report and Discovery Plan pursuant to Fed. R. Civ. P. 26(f)

21 will have been filed by November 4, 2005.

22         **B.      Discovery to be conducted.**

23         Plaintiff intends to serve discovery requests regarding, but not necessarily limited

24 to: the initiation, development, utilization and operation of Defendant's affiliate program;

25 the Defendant's relationship with each affiliate; copies of commercial electronic mail

26 messages sent by Defendant or an affiliate of Defendant as part of Defendant's affiliate

1  program; documents relating to earnings, payments, commissions or other consideration

2  provided to any affiliate, prospective affiliates or terminated affiliate; documents relating to

3  questions, concerns, complaints, or disputes from any person relating to the receipt of a

4  commercial electronic mail message related to Defendant's website(s), products, or

5  services; and financial statements.

6         Defendant intends to serve discovery requests regarding, but not necessarily limited

7  to: Plaintiff's facilities, processes, and procedures for receiving, processing, authenticating,

8  and investigating complaints received by Plaintiff for alleged violations of CAN-SPAM and

9  the Adult Labeling Rule; Plaintiff's investigation of Defendant; all notes, memoranda,

10 letters, electronic mail messages, inter-departmental communications, intra-departmental

11 communications, and communications between Plaintiff and outside parties and entities

12 related to Plaintiff's investigation of and claims against Defendant; identities and actions of

13 Plaintiff's agents, employees, officers, and representatives involved in any manner

14 whatsoever in the investigation by Plaintiff of Defendant; identities and actions of outside

15 entities, including but not limited to Microsoft Corp., involved in any manner whatsoever

16 with Plaintiff's investigation of Defendant; and all notes, memoranda, letters, electronic

17 mail messages, inter-departmental communications, intra-departmental communications,

18 and communications related to the FTC's promulgation of regulations codified in 16 C.F.R.

19 Part 316.4(a).

20     **C.**      **Limitations on discovery.**

21        The parties agree that no changes or additions should be made to the limitations to

22 discovery imposed under the Federal Rules of Civil Procedure and the Local Civil Rules.

23     **D.**      **Management of discovery.**

24        The parties agree that the Federal Rules of Civil Procedure and the Local Civil

25 Rules shall be used to manage discovery so as to minimize expenses.

26     **E.**      **Other orders to be entered by the Court.**

The parties agree that, at the time of the Joint Status Report, no other orders should be entered by the Court pursuant to Fed. R. Civ. P. 26(c) or Local Rules CR 16(b) and (c).

**6.    DATE OF COMPLETION OF DISCOVERY.**

The parties agree that all discovery matters in this case will be completed by June 30, 2006.

**7.    CONSENT TO MAGISTRATE JUDGE TO CONDUCT ALL PROCEEDINGS.**

Plaintiff consents to a Magistrate Judge for all pre-trial matters.  Defendant Impulse Media Group consents to a Magistrate judge for all pre-trial matters.  Defendant Impulse Media Group does not agree to a Magistrate judge for trial on the basis that Defendant Impulse Media Group respectfully demands a jury trial.

**8.    BIFURCATION.**

The parties agree that the liability issues and damages issues in this case should not be bifurcated.

**9.    PRETRIAL STATEMENTS AND PRETRIAL ORDERS.**

The parties agree that the pretrial statements and a pretrial order pursuant to Local Rules CR 16(e), (h), (i), and (l), and 16.1 should be required in whole and not dispensed.

**10.    SUGGESTIONS FOR SHORTENING OR SIMPLIFYING CASE.**

The parties do not have further suggestions for shortening or simplifying this case.

**11.    DATE FOR TRIAL.**

The parties agree that this matter will be ready for trial the week of November 27, 2006.

**12.    JURY OR NON-JURY TRIAL.**

Defendant Impulse Media Group has requested a jury trial.

Plaintiff contends that any jury trial should be limited to a jury's determination of Defendant's liability for civil penalties, s*ee Tull v. U.S.*, 481 U.S. 412 (1987), and that the

JOINT STATUS REPORT AND DISCOVERY PLAN
NO. CV05-1285L – Page 8

1  amount of civil penalty, and determinations regarding liability for and the nature of

2  injunctive relief are reserved to the Court.

3      Defendant agrees that it is entitled to have a jury determine its liability for civil

4  penalties, but disputes Plaintiff's contention that determinations regarding liability for

5  injunctive relief are reserved to the Court.  Rather, Defendant observes that the Supreme

6  Court's holding in *Tull* specifically observed that where a "legal claim is joined with an

7  equitable claim, the right to jury trial on the legal claim, including all issues common to

8  both claims, remains intact. The right cannot be abridged by characterizing the legal claim

9  as 'incidental' to the equitable relief sought." *Tull*, 481 U.S. at 425 (citing *Curtis v. Loether*,

10  415 U.S., at 196, n. 11).

11      Defendant agrees that the amount of civil penalties and the nature of injunctive

12  relief falls fully within the sound discretion of the Court.

13  **13.    NUMBER OF DAYS FOR TRIAL.**

14      The parties believe that this matter should be able to be tried within five court days.

15  **14.    NAMES, ADDRESSES, AND TELEPHONE NUMBERS OF TRIAL**

16      **COUNSEL.**

17
18  Jeffrey I. Steger                          Robert S. Apgood
    Office of Consumer Litigation              CARPELAW PLLC
    U.S. Department of Justice                 2400 NW 80th Street #130
19  P.O. Box 386                               Seattle, WA 98117
    Washington, D.C. 20044                     206-624-2379 (voice)
20  202-307-0047 (voice)                       206-784-6305 (fax)
    202-514-8742 (fax)                         rob@carpelaw.com
21  Jeffrey.steger@usdoj.gov                   Attorney for Defendant
    Attorney for Plaintiff
22
    Brian C. Kipnis
23  Assistant U.S. Attorney
    Western District of Washington
24  700 Stewart Street
    Seattle, WA 9810
25  206-553-7970 (voice)
    206-553-0882 (fax)
26  Attorney for Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**15.     SERVICE ON REMAINING DEFENDANTS.**

All defendants have been served.

**16.     SCHEDULING CONFERENCE PRIOR TO SCHEDULING ORDER.**

The parties do not request a scheduling conference prior to scheduling.

OF COUNSEL:                          FOR THE UNITED STATES OF AMERICA

Alan Hile                            Peter D. Keisler, Jr.
Acting Associate Director for Marketing   Assistant Attorney General
Practices                            Civil Division
Federal Trade Commission             U.S. Department of Justice

K. Michelle Grajales                 John McKay
Attorney                             United States Attorney
Federal Trade Commission
600 Pennsylvania Ave. N.W., Rm 238
Washington, D.C. 20580               Brian Kipnis
Phone: 202-326-3172                  Assistant U.S. Attorney
Fax: 202-326-3395                    Western District of Washington
                                     700 Stewart Street
                                     Seattle, WA
                                     Phone: 206-553-7970
                                     Fax: 206-553-0882


                                     __s/ Jeffrey I. Steger_____
                                     Jeffrey I. Steger
                                     Trial Attorney
                                     Office of Consumer Litigation
                                     U.S. Department of Justice
                                     P.O. Box 386
                                     Washington, D.C. 20044
                                     Phone: 202-307-0047
                                     Fax: 202-514-8742
                                     Email: Jeffrey.steger@usdoj.gov

JOINT STATUS REPORT AND DISCOVERY PLAN
NO. CV05-1285L – Page 10

1

2

3          FOR DEFENDANT IMPULSE MEDIA
           GROUP, INC.

4          CARPELAW PLLC

5          ___s/ Robert S. Apgood_____
           Robert S. Apgood, WSBA #31023
6          CARPELAW PLLC
7          2400 NW 80th Street #130
           Seattle, WA 98117-4449
8          Telephone: (206) 624-2379
           Facsimile: (206) 784-6305
9          Email: rob@carpelaw.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATUS REPORT AND DISCOVERY PLAN
NO. CV05-1285L – Page 11

## **DECLARATION OF SERVICE**

I, Jeffrey I. Steger, hereby make the following Declaration from personal knowledge that on October 26, 2005, I electronically filed the foregoing

**Joint Status Report and Discovery Plan**

with the Clerk of the Court using the CM/ECF system.  In accordance with their ECF registration agreement, the Clerk of the Court will send e-mail notification of such filing to the following attorney:

> Robert S. Apgood, WSBA #31023
> CARPELAW PLLC
> 2400 NW 80th Street #130
> Seattle, WA 98117-4449
> Telephone: (206) 624-2379
> Facsimile: (206) 784-6305
> Email: rob@carpelaw.com

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of October 2005 in Washington, D.C.

> s/ Jeffrey I. Steger
> Jeffrey I. Steger
> Trial Attorney
> Office of Consumer Litigation
> U.S. Department of Justice
> P.O. Box 386
> Washington, D.C. 20044
> Phone: 202-307-0047
> Fax: 202-514-8742
> Email: Jeffrey.steger@usdoj.gov