HON. ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>IMPULSE MEDIA GROUP, INC., a Washington corporation,<br><br>Defendant. | **No. CV 05-1285L**<br><br>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>NOTE FOR MOTION CALENDAR:<br>    September 29, 2006<br><br>**CLERKS ACTION REQUIRED** |

## I.   INTRODUCTION

Plaintiff has sued Defendant Impulse Media Group, Inc. for alleged violations of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM" or the "CAN-SPAM Act"), 15 U.S.C. § 7706(a), seeking to secure civil penalties, a permanent injunction, and other equitable relief for Defendant's alleged violations of Section 5(a) and (d) of CAN-SPAM, 15 U.S.C. § 7704(a) and (d), and the FTC's Adult Labeling Rule (the "Adult Labeling Rule" or the "Rule"), 16 C.F.R. Part 316.4.

Plaintiff alleges in its Complaint that Defendant's affiliates have transmitted e-mail messages in violation of 15 U.S.C. § 7704(d)(1)(B) and 16 CFR 316.4(2).

Defendant brings this motion to obtain an answer to legal issues raised by Plaintiff's Complaint. Defendant submits that the issues are not subject to material facts, and that the questions do not hinge on any fact, material or otherwise.

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT  - 1

**CARPELAW** <sup>PLLC</sup>
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

## II.    MOTION AND MEMORANDUM OF LAW

### A.    THE MOTION

Defendant Impulse Media, by and through its counsel of record, hereby MOVES THIS HONORABLE COURT for summary judgment for the reasons more fully described herein.

### B.    THE LEGAL STANDARD

Summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Summary judgment should be granted where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 322. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968).

### C.    DISCUSSION

In this case, the Plaintiff has submitted hundreds of electronic mail communications that it has specifically alleged to be the bases for, and the evidence supporting, the allegations in its Complaint. These e-mail communications were sent by third parties. This undisputed fact in no way prevents Plaintiff from arguing that Defendant may be liable for the acts of the other parties, nor is it an attempt to be semantic with who is or is not an "initiator" or "sender" of an e-mail under the statutory definitions contained in the CAN-SPAM Act of 2004, 15 U.S.C. 7701, *et seq*.

Fed. R. Civ. P. 56 states in part, "[a] party against whom a claim … is asserted … may, at any time, move … for a summary judgment in the party's favor as to … any part thereof." The Defendant believes that the majority of the case, if not all, will be decided in this summary judgment motion.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

CARPELAW PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

As to the hundreds of e-mails that were not sent by Defendant, but rather by third parties, Defendant believes that this motion will dispose of all three Counts of the Complaint.

Count I of the Plaintiff's Complaint alleges that the Defendant violated 15 U.S.C. § 7704(d) and 16 C.F.R. § 316.4. (Complaint ¶ 30) In particular, Plaintiff alleges that Defendant violated these provisions by committing certain acts, to wit: (1) failing to include the phrase "SEXUALLY-EXPLICIT: " as the first 19 characters at the beginning of the subject line; (2) failing to include, within the initially viewable content of the message, a second instance of the phrase "SEXUALLY-EXPLICIT: "; (3) failing to include, within the initially viewable content of the message, clear and conspicuous notice of the opportunity of a recipient to decline to receive further commercial e-mail messages from Defendant; (4) failing to include a clear and conspicuous display of a valid physical postal address of Defendant within the initially viewable content of the message; or (5) including sexually explicit material within the initially viewable content of the message. (Complaint ¶ 29)

One must commence with the language of the statute. 15 U.S.C. § 7704(d) states:

(d) Requirement to place warning labels on commercial electronic mail containing sexually oriented material.

(1) In general. No person may initiate in or affecting interstate commerce the transmission, to a protected computer, of any commercial electronic mail message that includes sexually oriented material and--

> (A) fail to include in subject heading for the electronic mail message the marks or notices prescribed by the Commission under this subsection; or

> (B) fail to provide that the matter in the message that is initially viewable to the recipient, when the message is opened by any recipient and absent any further actions by the recipient, includes only—

>> (i) to the extent required or authorized pursuant to paragraph (2), any such marks or notices;

>> (ii) the information required to be included in the message pursuant to subsection (a)(5); and

>> (iii) instructions on how to access, or a mechanism to access, the sexually oriented material.

Likewise, one must examine the relevant portions of 16 C.F.R. § 314.4(a), which states:

(a) Any person who initiates, to a protected computer, the transmission of a commercial electronic mail message that includes sexually oriented material must:

(1) Exclude sexually oriented materials from the subject heading for the electronic mail message and include in the subject heading the phrase "SEXUALLY-EXPLICIT: " in capital letters as the first nineteen (19) characters at the beginning of the subject line;

(2) Provide that the content of the message that is initially viewable by the recipient, when the message is opened by any recipient and absent any further actions by the recipient, include only the following information:

(i) The phrase ``SEXUALLY-EXPLICIT: " in a clear and conspicuous manner;

(ii) Clear and conspicuous identification that the message is an advertisement or solicitation;

(iii) Clear and conspicuous notice of the opportunity of a recipient to decline to receive further commercial electronic mail messages from the sender;

(iv) A functioning return electronic mail address or other Internet-based mechanism, clearly and conspicuously displayed, that—

(A) A recipient may use to submit, in a manner specified in the message, a reply electronic mail message or other form of Internet-based communication requesting not to receive future commercial electronic mail messages from that sender at the electronic mail address where the message was received; and

(B) Remains capable of receiving such messages or communications for no less than 30 days after the transmission of the original message;

(v) Clear and conspicuous display of a valid physical postal address of the sender; and

(vi) Any needed instructions on how to access, or activate a mechanism to access, the sexually oriented material, preceded by a clear and conspicuous statement that to avoid viewing the sexually oriented material, a recipient should delete the e-mail message without following such instructions.

Fed. R. Civ. P. 56 precludes summary judgment when the facts are in dispute. At trial, the validity of the claims of infractions will be contested by competent evidence. However, for purposes of this motion only, assume that all of the e-mails are of the kind and nature to fall under the requirements of the statute and regulation alleged in paragraph 30 of the Complaint. Further assume that the allegations of paragraphs 29(A) through 29(E) are also true, thereby removing a dispute of fact on those issues for purpose of this motion. However, assuming the truth of the allegations of Count I for

purposes of this motion only, liability under the statute or the regulation under the facts of this particular case is not present as a discrete matter of law.

All of the requirements alleged in paragraphs 29(A) through 29(E) are found specifically in either 15 U.S.C. § 7704(d)(1) or 16 C.F.R. 316.4(a).

In this case, the Defendant did not actually send these e-mails. Declaration of Seth Schermerhorn in Support of Defendant's Motion for Summary Judgment ("Schermerhorn Decl.") ¶ 3 at 1. Rather, third parties sent the e-mails. *Id.* ¶ 4 at 1. Defendant candidly admits to the Court that Defendant had entered into agreements with the third parties whereby it paid those third parties a commission, or "finders fee," for sales resulting from referrals by those third parties to Defendants Web sites. *Id.* ¶¶ 5-8 at 1-2. Impulse Media's terms and conditions for its Web Masters specifically proscribes the Web Masters from using mass solicitation methods to promote Impulse Media's Web sites, including the use of e-mail messages. *Id.* ¶ 9-10 at 2. However, Defendant does not pay these third parties to market or advertise Defendant's Web sites. *Id.* ¶¶ 11-12 at 2-3. Rather, it pays them a finders fee if, and only if, someone whom the third party had referred to one of Defendant's Web sites subsequently subscribes to that Web site. *Id.* ¶ 13 at 3.

The critical point that the Court must understand is that Defendant never knowingly or intentionally violated the CAN-SPAM Act, the Adult Labeling Rule, or any other statute or regulation and never expressly, implicitly or otherwise authorized such persons to violate the CAN-SPAM Act and/or the Adult Labeling Rule. *Id.* ¶¶ 14-15 at 3. In fact, the Soulcash Program Agreement for the third parties expressly forbade violations of its terms encompassing violations of the CAN-SPAM Act and the Adult Labeling Rule. *Id.* It did not expressly, implicitly or otherwise suffer such persons to violate the CAN-SPAM Act, and when it discovered that such third parties had violated the Act without its knowledge consent or acquiescence, it terminated business relationships with said persons. *Id.* ¶ 16 at 3.

The uncontested facts of the case show that the Defendant did not permit or condone the illegal activity alleged in the Plaintiff's Complaint. These are the facts of the case that have been demonstrated by the Defendant in the manner prescribed and required by Fed.R.Civ.P. 56. With such

facts so having been properly established, the Court must then examine the Plaintiff's obligations in defending the motion. Fed. R.Civ. P. 56(e) states in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Therefore, under Fed. R. Civ. P. 56(e), the Plaintiff must demonstrate a dispute of the facts established by the Defendant. If it fails to do so, the Court must accept the facts as properly demonstrated by Defendant. Since there are no facts that can negate the Defendant's factual assertions, as they are the truth, the analysis moves to the second prong of the test for summary judgment: the moving party must demonstrate that it is entitled to judgment as a matter of law.

Such a demonstration in this case is relatively straightforward. By accepting the fact, for purposes of this motion only, that someone or some persons sent out e-mails in violation of the CAN-SPAM Act and/or the Adult Labeling Rule, and by accepting the uncontradicted fact that the Defendant did not do so personally, nor did the Defendant know or authorize or permit or suffer such to be done by others, the liability of the Defendant, if any, must be determined by the language of the Act itself. In other words, with the facts not being in dispute, the question of whether or not the Defendant is entitled to summary judgment on the facts is ultimately a question of statutory construction in this case.

From the facts alleged by Plaintiff, it is clear that the Plaintiff's whole case hinges on the proposition that somehow the CAN-SPAM Act provides for civil liability against the Defendant because third parties violated the CAN-SPAM Act while promoting Defendant's business. There is simply no doubt that the mechanical act of sending the e-mails were done by third parties who were not the Defendant or the Defendant's employees, officers, directors or shareholders. Schermerhorn Decl. ¶ 3 at 1. For purposes of this motion only, one must assume that such third parties did send out such e-mails and that the e-mails violated the CAN-SPAM Act and/or the Adult Labeling Rule in every way that the Plaintiff has alleged. Yet, at the end of the day and on the final adjudication of this motion, the determination leads to the proposition that this Defendant is not liable for the illegal acts of such third persons under the particular circumstances of this case.

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT  - 6

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

In construing the statute, one must closely examine what is illegal under the Act. For example, the unlawful acts under 15 U.S.C. § 7705 are for "any person to initiate the transmission."[1] In adjudicating whether the Defendant is subject to liability, the Court must pay close attention to the fact that the prohibition is against **the initiation of a transmission** that is in violation of the Act. The offending act that gives rise to liability is not, for example, the failure to include the correct header in an e-mail, but rather the liability arises by **initiating** an e-mail that does not comply with the mandates of the Act and the Rule. Therefore, as only an "initiator" of a prohibited communication is liable under the Act, it is imperative to clearly define what that term means under the Act.

### A. Defining "Initiation" under the CAM SPAM Act

The Act, itself, defines the term "initiate." 15 U.S.C. § 7702(9).

> The term "initiate", when used with respect to a commercial electronic mail message, means to originate or transmit such message or to procure the origination or transmission of such message, but shall not include actions that constitute routine conveyance of such message. For purposes of this paragraph, more than one person may be considered to have initiated a message.

This definition must be accepted as written and cannot be expanded to suit Plaintiff's position. "As a rule, '[a] definition which declares what a term 'means' . . . excludes any meaning that is not stated.'" *United States v. Alvarez-Gutierrez*, 394 F.3d 1241, (9th Cir. 2005), citing *Colautti v. Franklin,* 439 U.S. 379, 392-93, 58 L. Ed. 2d 596, 99 S. Ct. 675 (1979). Nothing can be added to or omitted from the express Congressional language. Therefore, to "initiate" a commercial electronic mail message within the meaning of the Act, one must: (1) originate the message, or (2) one must actually transmit the message or (3) one must procure another to originate or transmit the message. Other than these acts, and these acts alone, there are no definitions or applications of the term "initiate" that are legally permissible under the CAN-SPAM Act.

The undisputed facts of the case demonstrate that this Defendant did not originate the offending commercial electronic mail messages. *Id.* ¶ 3 at 1. Likewise, the undisputed facts demonstrate that

---

[1] (§ 7705(a)(1) covers initiating transmissions with header information that is materially false or misleading; § 7705(a)(2) covers sending "e-mails" with subject messages that may reasonably mislead the recipient as to the content under the subjective circumstances; § 7705(a)(3)(A) covers sending "e-mails" that do not have a functional return "e-mail" address; § 7705(a)(5) covers generally sending "e-mails" without disclaimers that the transmission is an advertisement or solicitation, and identification of the sender, etc.)

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 7

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

this Defendant did not actually transmit the offending commercial electronic mail messages. *Id.* Therefore, if the Plaintiff is to survive this motion, and Defendant is to be held liable, Plaintiff must show that Defendant "procured" the e-mails as it clearly did not originate or transmit them.

However, Plaintiff would have the Court believe that the Defendant procured others to do so because it simply paid others for sales made by Defendant resulting from a referral of a prospective customer to an Impulse Media Web site. Such is simply not the case. Agreements for sales compensation do not subject a party to liability if and when one of the parties advertises the goods or services of the other party and the advertising party acts: (1) outside the law, and (2) without the knowledge consent or assent of the other party. By examining the statute, the Court can see such to be the case.

## B. Defining "Procure" under the CAM-SPAM Act

The term "procure" has a specific definition under the Act. "The term 'procure,' when used with respect to the initiation of a commercial electronic mail message, means intentionally to pay or provide other consideration to, or induce, another person to initiate such a message on one's behalf." 15 U.S.C. § 7702(12). It is on this term that the Court must truly and in earnest begin its analysis based on established principles and cannons of statutory interpretation and construction.

The first rule of statutory construction has been eloquently stated by the Ninth Circuit Court of Appeals in *Roles v. Maddox*, 439 F.3d 1016 (9th Cir. 2006) wherein the Court held that "[i]n determining the scope of a statute, we look first to its language, giving the words used their ordinary meaning." Yet in doing so, the Ninth Circuit has also held that a proper plain language construction of a statute will flow not only from the plain language interpretation of the words employed, but also from the established grammatical applications of the English language in relation to the employment and use of such words.[2]

---

[2] See *Bonnichsen v. United States*, 357 F.3d 962 (9th Cir. 2004) (Analyzing the case on the grammatical tense of the verb in question). *United States v. Belless*, 338 F.3d 1063, (9th Cir. 2003) (Initially analyzing the plain language of the statute on its "grammar and syntax.") *United States v. Stockdale*, 139 F.3d 767, (9th Cir. Or. 1997)("These inferences from grammar might be a bit thin, except that they lead to the only result that makes sense. … The common sense of the result suggests that Congress adopted the wording and grammar it did to achieve the result to which they lead.")

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

**CARPELAW** PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

The statutory definition of "procure" at 15 U.S.C. § 7702(12) is a compound sentence. If one divides the compound sentence into its elements, one is left with two sentences specifying two prohibited acts: (1) "The term 'procure', when used with respect to the initiation of a commercial electronic mail message, means intentionally to pay or provide other consideration to another person to initiate such a message on one's behalf"; (2) "The term 'procure,' when used with respect to the initiation of a commercial electronic mail message, means intentionally to induce, another person to initiate such a message on one's behalf." The there are two infinitives in this provision (technically three if "pay or provide" are split), "to pay or provide" and "to induce." The verbal modifier of "intentionally," as it precedes the infinitives, is obviously intended to modify both infinitives.

### 1. Defendant is not liable under the "pay or provide" definition

This Defendant did pay others to direct consumers to its business. There is no doubt about that. However, it did not intentionally pay any person to initiate e-mails as a manner of doing so. It did not intentionally provide other compensation to any person to initiate e-mails as a manner of doing so. In other words, it paid for sales resulting from referrals, but did not pay the third parties to market, advertise, or otherwise promote Defendant's Web sites. As a natural corollary, Defendant certainly did not pay to obtain the specific act of sending e-mails. It provided payment and compensation for sales resulting from the lawful direction of prospective sales traffic to its business. These facts are undisputed and established, *supra,* in accordance with Fed.R.Civ. P. 56. The Defendant's policies with affiliates actually proscribed the affiliates from sending out e-mails as apparently they did in violation of the prohibition. Schermerhorn Decl. ¶¶ 9-10 at 2. If third parties acted without Defendant's knowledge, approval or acquiescence, does not mean that Defendant intentionally paid them to initiate commercial e-mail messages on Defendant's behalf simply because Defendant **would have or had** paid those parties or other parties for sales resulting from lawful and approved promotion. Nevertheless, Plaintiff would have the Court believe that the mere fact that Defendant compensated its affiliates is sufficient to establish liability for the Defendant. However, it flies in the face of the statutory definition of "procure" under the "pay or provide" theory. The Act states that the Defendant must have "**intentionally**" paid or provided "other consideration to … another person **to initiate such message** on [Defendant's] behalf." See 15 U.S.C. § 7702(12). (emphasis added)

In other words, it is not enough that Defendant paid or provided compensation to third parties who ultimately violated the Act. For liability to attach to Defendant, the Act requires that Defendant paid such third parties to commit the **specific** act of sending "a commercial electronic mail message" that violates the Act. Even mere compensation for general advertising is not enough under the Act. Such payment must be **intentionally** made by Defendant to obtain the specific and actual result of the third person sending such an e-mail.

However, looking at the undisputed facts as established in accordance with Fed.R.Civ.P. 56, it is clear that Defendant paid its affiliates only to send business its way in a lawful manner and consistent with Defendant's Terms and Conditions. It expressly, by written agreement, **prohibited** affiliates from advertising or soliciting business in an illegal manner, but more importantly, **expressly** prohibited e-mails, whether in violation of the CAN-SPAM Act and the Adult Labeling Rule or otherwise. Any affiliate who sent e-mails would not be compensated for its actions but rather generally would be terminated from affiliation. Schermerhorn Decl. ¶ 16 at 3. However, it is unambiguously clear that the **uncontradicted** facts demonstrate that Defendant did not pay or provide compensation to the authors and senders of the e-mails for actually committing the act of sending such e-mails. The facts further demonstrate that Defendant was not only unaware of such acts at the time they were accomplished, but also disapproved of such acts. Therefore, Defendant did not fall within the "pay or provide other compensation" theory of the term "procure."

**2. Defendant is not liable under the "induce" definition of "procure"**

The facts stated above are the same for this argument. This construction argument focuses on the particular language of the "induce" theory. The Defendant simply did not intentionally induce, or otherwise induce, any person to initiate a commercial electronic mail message. The term "induce" is not defined by the Act. Therefore, it must be given its plain language meaning. See *Roles v. Maddox supra.*

The Oxford Encyclopedic English Dictionary defines the term "induce" as "(often foll. by to + infin.) prevail on [or] persuade." While it is readily admitted that this Defendant did induce others to refer prospective customers to its Web sites, the Defendant did not induce others to initiate commercial electronic communication. The two concepts are different under the law. It is not illegal to induce

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 10

C<small>ARPE</small>L<small>AW</small> <small>PLLC</small>
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

others to solicit business in a lawful way. However, when one is induced to solicit business in a lawful way, and then unilaterally violates the CAN-SPAM Act on his own initiative without the knowledge or consent of the inducer, such actions do not mean that the inducer intentionally induced the third party to initiate an commercial electronic message on its behalf. This is especially true in this case where such e-mails were actually in violation of the policies of the Defendant.

Certainly the third party would be liable under the Act. This is not disputed. However, as in this case, when the initiation of the activity was not induced, intended, permitted or even known to the Defendant, the Defendant is not liable for the illegal activity.

One must never lose sight of the statutory application of the word "intentionally" within the definition. Again, for Defendant to be liable under the "induce" theory, the Defendant must have intentionally acted in a manner to induce or persuade another person to send e-mails on its behalf. Liability is not present merely because Defendant merely induced others to solicit business. On the contrary, the Act requires that the Defendant acted towards the third party in a manner so as to actually cause the third party to specifically send an e-mail. If Defendant did not intentionally act with such end result in mind, Defendant is not liable under the Act. The facts, established in accordance with Fed.R.Civ.P. 56, clearly show that such was not the intent of Defendant; and in the absence of evidence to create a dispute of fact as to this intent, the definition does not apply to this Defendant.

### 3. Established cannons of construction support Defendant's construction

Under these facts, the only theory on which Plaintiff could hold Defendant liable under the Act is a theory of strict liability. Strict liability statutes are statutes that allow for the imposition of a civil penalty without regard to intent.[3] Such an application under the CAN-SPAM Act is simply untenable. Keeping in mind that it is conclusively established that this Defendant neither originated nor transmitted thel e-mails, to construe the statute as strict liability would be to completely ignore one paramount word in the statute itself, to wit: "intentionally." This is so because under the facts relating to the e-mails, if the Defendant violated the Act by "initiating" an e-mail, it must have done so by "procuring" the illegal communication since it did not send them itself.

---

[3] *United States v. Sinclair Oil Co.*, 767 F. Supp. 200 (D. Mont. 1990) (Clean Water Act requires no intent) *Minnehaha Creek Watershed Dist. v. Hoffman*, 597 F.2d 617, 627 (8th Cir. 1979) (intent to pollute under clean water act is irrelevant)

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

To procure it, as conclusively demonstrated *supra,* the Defendant must have **intentionally** paid or provided compensation to another to send the e-mail or it must have **intentionally** induced another to do so. To conclude that the Defendant violated the statute without intent would be to render the Congressionally-applied word "intentionally" as mere surplussage, which would be to violate a basic tenant of statutory construction. The Ninth Circuit has held that "[i]n construing a statute we are obliged to give effect, if possible, to every word Congress used." *Diaz v. Gates*, 420 F.3d 897, 914 (9th Cir. 2005). There are fundamentally only two ways to construe this statute. One is to interpret it as creating strict liability for merchants who use third party advertisers that violate the Act without the knowledge of the merchant. This construction gives no effect to the word "intentionally" as contained in the Act. The second construction gives credence and application to the word "intentionally" as contained in the Act, but means that before such a merchant is held liable under the Act for the acts of a third party, the merchant must have subjectively and intentionally paid or induced the third party to specifically send a commercial e-mail in violation of the Act. It must have intended the actual sending of the e-mails as the end result of such payment or inducement.

The Plaintiff's strict liability theory may most be likened to a situation in which a mobile communications company gives a customer a free month of mobile phone service for each new person that customer signs up. If the customer forces a third person to sign up at gunpoint, it is hardly the fault of the company if the company did not know about the circumstances, condone the circumstances, or tolerate the circumstances. To impose liability on the innocent business would: (1) hinder the exercise of legitimate trade, which was not a purpose of the CAN-SPAM Act; and (2) as this example shows, result in a construction that yields patently absurd results. "When a statute is fairly susceptible of two constructions, one leading inevitably to mischief or absurdity and the other consisting of sound sense and wise policy, the former should be rejected and the latter adopted." *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982). By adopting Plaintiff's position of strict liability in this case, the Court would not only have to ignore the word "intentionally" in the statute, the Court would also necessarily have to accept the fact that such a construction would lead to absurd results. If the Court truly questions this result, the Court could consider an alternative hypothetical.

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT  - 12

Assume that a major U.S. car manufacturer institutes an incentive program for its dealers to promote a new car. Some "eager beaver" salesman at a dealership, wishing to make a name for himself, decides that he has a brilliant strategy that his bosses and the manufacturer will love – mass e-mails. Assume these e-mails violate the CAN-SPAM Act in any number of particulars. The construction of the Act, which does not give credence to "intentionally" paying someone to send e-mails in violation of the Act, would impose liability on the car manufacturer. The result cannot vary because of content. The car manufacturer compensates its dealers for car sales, the salesman at a dealership sent out e-mails promoting the manufacturer's cars, therefore the manufacturer is liable for the e-mails. The fact that this Defendant is not a car manufacturer does not vary the fact that like the car manufacturer, the Defendant contracted with third persons for lawful acts, and without the consent of Defendant and against the directives of Defendant, a greed-ridden third party violated the Act for his own purposes. The result cannot vary under Plaintiff's construction for the car manufacturer or for this Defendant. However, Plaintiff would have this Court be the first Court in the United States to construe this provision of the statute; and would further have this Court render the first construction in a way that would produce a legal absurdity.

### 4. The legislative history of the CAN-SPAM Act supports Defendant's plain language construction

The Defendant asserts that because the plain language as grammatically employed is unambiguous, the Court need go no further in its inquiry. *United States v. Ye*, 436 F.3d 1117, 1120 (9th Cir. 2006). However, there are many times when statutory language is clear and a Court simply annotates that the legislative history verifies the plain language construction. See *Id.* Such an examination in this case would not only demonstrate that the Defendant's construction is the proper construction, but would also verify that the Plaintiff's construction is an improper construction.

In the Congressional declaration of policy behind the CAN-SPAM Act, at 15 U.S.C. § 7701(b), Congress set forth three bases of policy. One deals with governmental interest in oversight. Another deals with the rights of consumers, and the third deals with senders of e-mails. It employs the terms "senders." It can be seen from this language that Congress' focus behind the Act is those who actually violate the law and those who, for lack of a better phrase, "aid and abet" in the violation or those who

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT  - 13

CARPELAW PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

are accessories to the violation. It is not, and never was, intended to create liability against lawfully operating entities who had nothing to do with an illegal act, and in this case, actually took action against people who engaged in illegal acts. It cannot be read any other logical way.

Yet, if one were to more deeply examine the legislative history of the CAN-SPAM Act, one can clearly see that, although there is very little in the history that is of assistance, what is present clearly indicates an intent element is required before a Defendant can be held liable for a violation of the Act. In reading the following colloquy between Congressmen Burns and Wyden, it is important to note that this Plaintiff filed suit and has asserted claims only under § 5 of the Can-Spam Act and not § 6.

> Mr. BURNS. I would like to flag one other aspect of the bill. Under section 6, the FTC can bring enforcement actions against merchants whose products are promoted in spam e-mails, even if the merchant is not the spammer. Isn't that correct?
>
> Mr. WYDEN. I agree with the Senator.
>
> Mr. BURNS. But isn't it also true that section 5 can be used against merchants whose products are promoted in spam e-mails? Can't the FTC, State A.G.s, and Internet Service Providers bring actions under section 5 against parties who aren't themselves spamming, but rather hire spammers to promote their products or services?
>
> Mr. WYDEN. Absolutely. The bill's definition of "initiate" makes that clear, because it applies not only to the spammer that originates the actual e-mail, but also to a party who has hired or otherwise induced the spammer to send the e-mail on its behalf. If the e-mail message violates the bill, both parties would be on the hook under section 5, and enforcement would be possible against both or either parties.
>
> Mr. BURNS. That confirms my understanding. So what is different about section 6, as I understand it, is that section 6 does not require any showing that the merchant actually hired or induced the spammer to send the spam. In other words, if the spammer is hard to find and his contractual relationship with the merchant has been obscured by under-the-table dealings, the FTC doesn't have to spend time and effort trying to prove the relationship.
>
> Mr. WYDEN. I share the Senator's understanding of how section 6 differs from the provisions of section 5. I would only add that the drafters considered which parties should have the discretion to enforce the bill in the manner set forth in section 6, and decided that section 6 should be enforced by the FTC only. *149 Cong Rec S 15938*

Throughout this colloquy, the intent element in the definition of procure is repeatedly seen. Burns specifically asked if "section 5 can be used against merchants whose products are promoted in spam e-mails?" However, his next comment clearly indicates that strict liability is not implied. "Can't the FTC, State A.G.s, and Internet Service Providers bring actions under section 5 against parties who aren't themselves spamming, but rather **hire spammers** to promote their products or services?"

1  (Emphasis added)  The clear intent of the Legislators who enacted the CAN-SPAM Act was to allow

2  the Act to cover not only those who physically violated the Act by sending an illegal "e-mail" but also

3  to cover those who intentionally brought about the illegal transmission through another.  The legislative

4  history is consistent with the definition "procure" in 15 U.S.C. 7702(12), which requires intentional

5  payment or consideration to another to send an illegal "e-mail" or intentional inducement to send the

6  e-mail.  If the intent of the Defendant was not the ultimate result of the third person sending the illegal

7  "e-mail" the Defendant cannot be held liable under § 5.

8        This point is reinforced by Wyden's specific response to Burn's question.  He stated that the

9  Act would apply "also to a party who has hired or otherwise induced the spammer **to send the e-mail**

10 **on its behalf**."  (Emphasis added)  In other words, the Act will not apply because the Defendant hired a

11 third party to advertise for it, nor will the Act apply because the third party sent out an illegal "e-mail."

12 The Act will only apply against the Defendant if the Defendant specifically hired or induced the third

13 party "**to send the e-mail on its behalf**."  In this case, the evidence indicates a contrary position.

14       Lastly, Burn's retorted that "[s]o what is different about section 6, as I understand it, is that

15 section 6 does not require any showing that the merchant actually hired or induced the spammer **to**

16 **send the spam**."  This "tidbit" of legislative history is important from two separate aspects.  Again, the

17 Congressmen were contemplating the application of the Act only against merchants who **actually** hired

18 or induced the spammer **to send the spam**."  There is never a reference to the application of the act

19 against merchants who hired third persons for any other purpose than specifically sending illegal

20 "e-mails."

21       However, the distinction between § 5 and § 6 of the Act as noted by Congressman Burns is

22 important.  Section 6 (15 U.S.C. § 7705) permits enforcement against a business whose business is

23 being illegally advertised through e-mails by third persons, if and only if, the business is or should have

24 been aware of the violations and failed to take steps to prevent it or to report it.  Again, the Plaintiff has

25 asserted no claims under § 6 in this case.  However, a comparison of the two sections in the Legislative

26 history is enlightening.  Section 6 spells out the particular "knowledge" requirements in the statute.

27 When Congressman Burns states that "[s]o what is different about section 6, as I understand it, is that

28 section 6 does not require any showing that the merchant actually hired or induced the spammer to send

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT  - 15

CARPELAW PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

the spam," it indicates that under § 5 there is a requirement of a showing that the merchant "**actually hired or induced the spammer to send the spam**." This is in keeping with the Congressional language in § 5 requiring intent to violate the law.

Further aspects of the Legislative history clearly indicate that Congress did not intend to create strict liability against merchants who were the innocent victims of unscrupulous "spammers" who operated against set policies of advertising. "This bill establishes clear guidelines for legitimate businesses and **punishes fraudulent conduct**, *not going after the good guys*." *149 Cong Rec H 12186.*, p. 20 (Rep. Goodlatte, *emphasis added*). Congress' intent was to target those who engage in misconduct. It was not to create strict liability for merchants who operate in the scope of the law. The Representative's use of the word "fraudulent" may be technically out of place, but clearly indicates that Congress was targeting those with an evil mind or a mind to break the law rather than those who were not of such a mind.

> We think those businesses that are reputable can continue, and they can live within the framework, and they can live by the rules, and, hopefully, this will help to chase those that intended not to live by the rules out of the system and off our screen. *149 Cong Rec H 12186.*, p. 20. (Rep. Burr)

Congress clearly wanted to strike a balance between those who subjectively follow the law and those who intentionally violate it. The former will be protected by the Act, the latter will be punished by it and not conversely.

//
//
//
//
//
//
//
//
//
//

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 16

### III. CONCLUSION AND PRAYER FOR RELIEF

Defendant Impulse Media, having fully apprised this Honorable Court of the law and Defendant's arguments regarding the inapplicability all three Counts of Plaintiff's Complaint as to each and every e-mail produced by the Plaintiff where each and every of those e-mails was originated and transmitted by third parties, all without the knowledge, consent or assent of Defendant Impulse Media, respectfully PRAYS this Honorable Court to DISMISS Plaintiff's claims under all Counts of the Plaintiff's Complaint as a matter of law.

Respectfully submitted this 5th day of September 2006.

CarpeLaw PLLC

*s/ Robert S. Apgood*
WSBA # 31023
CarpeLaw PLLC
2400 NW 80th Street #130
Seattle, WA 98117-4449
Telephone: (206) 624-2379
Facsimile: (206) 784-6305
E-mail: rob@carpelaw.com

**CERTIFICATE OF SERVICE**

I, Robert S. Apgood, do hereby certify that on the 5th day of September 2006, I caused true and correct copies of the following:

1. Defendant's Motion for Summary Judgment;
2. Declaration of Seth Schermerhorn in Support of Defendant's Motion for Summary Judgment and the Exhibits thereto; and
3. this Certificate of Service

to be served on:

Lauren Hash, Esq.
Department of Justice
Office of Consumer Litigation
P.O. Box 386
Washington, D.C. 20044

Jeffrey E. Steger, Esq.
Department of Justice
Office of Consumer Litigation
P.O. Box 386
Washington, D.C. 20044

by the filing a copy of same with the Clerk of the Court. In accordance with the Local Rule and the attorneys' agreements, the above named attorneys will receive notification of filing and copies of same using the court's CM-ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed at Seattle, Washington,

DATED this 5th day of September 2006.

**CarpeLaw PLLC**

*s/ Robert S. Apgood*
WSBA # 31023
CarpeLaw PLLC
2400 NW 80th Street #130
Seattle, WA 98117-4449
Telephone: (206) 624-2379
Facsimile: (206) 784-6305
E-mail: rob@carpelaw.com