# EXHIBIT H

1  an e-mail under the statutory definitions contained in the CAN-SPAM Act of 2004,

2  15 U.S.C. 7701, *et seq*. Simply put, the legal application differs between the two informal

3  classifications that are asserted herein, and it is important for the Court to understand

4  precisely which category is being addressed in each context.

5  The first part of this motion for partial summary judgment is directed exclusively

6  toward those exhibits submitted by Plaintiff as evidence in support of its claims against

7  Defendant as set forth in the Complaint that were actually sent by Defendant and not

8  other persons. In other words, this class of e-mails is comprised of Exhibits "J" through

9  "L" and "N" through "T" (the "Cyberheat E-Mails") to the Declaration of Allison Vivas

10 in Support of Defendant's Motion for Partial Summary Judgment. Defendant admits

11 that it was the Defendant who actually sent these e-mails, and further admits that it sent

12 Exhibits M-01 through M-04.

13 The second part of this motion for partial summary judgment is directed

14 exclusively at all of those remaining e-mails submitted by Plaintiff as evidence in

15 support of its claims against Defendant as set forth in the Complaint that were not

16 actually sent by Defendant, but rather were sent in the parochial and not statutory sense

17 of the term "sent" by third parties or persons not related to Defendant by employment or

18 position.

19 **1.   <u>The E-Mails "Sent" By Defendant Are Exempted From The Mandates Of
20        15 U.S.C. § 7704(d) And 16 C.F.R. § 316.4, And Defendant Is Entitled To
         Judgment As A Matter Of Law On These E-Mails As To Count I Of The
21        Complaint</u>**

22 The basis for this motion is straightforward. Defendant asserts that the 63 of the

23 67 e-mails that it, in fact, actually sent are excluded from the mandates of 15 U.S.C.

24 § 7704(d) and 16 C.F.R. § 316.4. Defendant candidly admits to this Honorable Court

25 that there is an issue of material fact regarding the remaining four (4) e-mails (Exhibits

26 M-01 through M-04 to the Vivas Declaration, of which Defendant shall assert at trial

27 two are duplicates of the other two). Since Count I of the Complaint is expressly limited

28

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT  - 3

CARPELAW PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1  to violations of these provisions, Defendant asserts that it is entitled to judgment as a
2  matter of law on Count I.
3       Fed. R. Civ. P. 56 states in part, "[a] party against whom a claim … is asserted …
4  may, at any time, move … for a summary judgment in the party's favor as to … any part
5  thereof."  The Defendant believes that the majority of the case will be decided in this
6  summary judgment motion.  However, in candor, the Defendant believes that there shall
7  be remaining issues, which are issues of fact that cannot be decided or adjudicated by
8  summary judgment, and therefore Defendant refrains from asserting these issues in this
9  motion.  The precise nature of those issues is whether or not the Cyberheat E-Mails are
10 actionable under Counts II and III of the Complaint.
11      As to the remaining hundreds of e-mails that were not sent by Defendant, but
12 rather by third parties, Defendant believes that this motion will dispose of all three
13 Counts of the Complaint.  However, as to the Cyberheat E-Mails, this motion does not
14 challenge Counts II and III, although they will be challenged at trial.
15      Count I of the Plaintiff's Complaint alleges that the Defendant violated 15 U.S.C.
16 § 7704(d) and 16 C.F.R. § 316.4.  (Complaint ¶ 30)  In particular, Plaintiff alleges that
17 Defendant violated these provisions by committing certain acts, to wit: (1) failing to
18 include the phrase "SEXUALLY-EXPLICIT: " as the first 19 characters at the beginning
19 of the subject line; (2) failing to include, within the initially viewable content of the
20 message, a second instance of the phrase "SEXUALLY-EXPLICIT: "; (3) failing to
21 include, within the initially viewable content of the message, clear and conspicuous
22 notice of the opportunity of a recipient to decline to receive further commercial e-mail
23 messages from Defendant; (4) failing to include a clear and conspicuous display of a
24 valid physical postal address of Defendant within the initially viewable content of the
25 message; or (5) including sexually explicit material within the initially viewable content
26 of the message.  (Complaint ¶ 29)
27      One must commence with the language of the statute.  15 U.S.C. § 7704(d) states:
28

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT  - 4

CARPELAW PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

    (d) Requirement to place warning labels on commercial electronic mail containing sexually oriented material.

    (1) In general. No person may initiate in or affecting interstate commerce the transmission, to a protected computer, of any commercial electronic mail message that includes sexually oriented material and--

        (A) fail to include in subject heading for the electronic mail message the marks or notices prescribed by the Commission under this subsection; or

        (B) fail to provide that the matter in the message that is initially viewable to the recipient, when the message is opened by any recipient and absent any further actions by the recipient, includes only—

        (i) to the extent required or authorized pursuant to paragraph (2), any such marks or notices;

        (ii) the information required to be included in the message pursuant to subsection (a)(5); and

        (iii) instructions on how to access, or a mechanism to access, the sexually oriented material.

Likewise, one must examine the relevant portions of 16 C.F.R. § 314.4(a), which states:

    (a) Any person who initiates, to a protected computer, the transmission of a commercial electronic mail message that includes sexually oriented material must:

    (1) Exclude sexually oriented materials from the subject heading for the electronic mail message and include in the subject heading the phrase "SEXUALLY-EXPLICIT: " in capital letters as the first nineteen (19) characters at the beginning of the subject line;

    (2) Provide that the content of the message that is initially viewable by the recipient, when the message is opened by any recipient and absent any further actions by the recipient, include only the following information:

        (i) The phrase ``SEXUALLY-EXPLICIT: " in a clear and conspicuous manner;

        (ii) Clear and conspicuous identification that the message is an advertisement or solicitation;

(iii) Clear and conspicuous notice of the opportunity of a recipient to decline to receive further commercial electronic mail messages from the sender;

(iv) A functioning return electronic mail address or other Internet-based mechanism, clearly and conspicuously displayed, that—

(A) A recipient may use to submit, in a manner specified in the message, a reply electronic mail message or other form of Internet-based communication requesting not to receive future commercial electronic mail messages from that sender at the electronic mail address where the message was received; and

(B) Remains capable of receiving such messages or communications for no less than 30 days after the transmission of the original message;

(v) Clear and conspicuous display of a valid physical postal address of the sender; and

(vi) Any needed instructions on how to access, or activate a mechanism to access, the sexually oriented material, preceded by a clear and conspicuous statement that to avoid viewing the sexually oriented material, a recipient should delete the e-mail message without following such instructions.

    Fed. R. Civ. P. 56 precludes summary judgment when the facts are in dispute. At trial, the validity of the claims of infractions will be contested by competent evidence. However, for purposes of this motion only, assume that all of the Cyberheat E-Mails are of the kind and nature to fall under the requirements of the statute and regulation alleged in paragraph 30 of the Complaint. Further assume that the allegations of paragraphs 29(A) through 29(E) are also true, thereby removing a dispute of fact on those issues for purpose of this motion. However, assuming the truth of the allegations of Count I for purposes of this motion only, liability under the statute or the regulation under the facts of this particular case is not present as a discrete matter of law.

    All of the requirements alleged in paragraphs 29(A) through 29(E) are found specifically in either 15 U.S.C. § 7704(d)(1) or 16 C.F.R. 316.4(a). While we will

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT - 6

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1  assume the applicability of the mandates found in 15 U.S.C. § 7704(d)(1) to the

2  Cyberheat E-Mails, there is a critically important exception to these mandates found in

3  15 U.S.C. § 7704(d)(2).  Likewise, while we assume the applicability of the mandates

4  found in 16 C.F.R. 316.4(a) to the Cyberheat E-Mails, there is a critically important

5  exception to these mandates found in 16 C.F.R. 316.4(b).

6      In relation to the mandates of 15 U.S.C. § 7704(d)(1), the exception in 15 U.S.C.

7  § 7704(d)(2) states that: "Prior affirmative consent. Paragraph (1) does not apply to the

8  transmission of an electronic mail message if the recipient has given prior affirmative

9  consent to receipt of the message."  Therefore, if the recipients of the Cyberheat E-Mails

10 had previously consented to receipt of the messages, none of the mandates set forth in

11 § 7704(d)(1) are applicable to the Cyberheat E-Mails.  This much is even stipulated by

12 Plaintiff (See Plaintiff's Responses to Defendant Cyberheat, Inc. Second Set Requests

13 for Admission, Request No. 2051 at page 25, line 9; produced as Exhibit "A" to the

14 Declaration of Robert S. Apgood).  Therefore, even if, *arguendo,* the e-mails do

15 precisely what Plaintiff alleges in paragraph 29, the mandates are inapplicable and there

16 has been no violation of the statute because there was prior affirmative consent by the

17 recipient to receive the communications.

18      Likewise, in relation to the mandates of 16 C.F.R. 316.4(a), the exception in

19 16 C.F.R. 316.4(b) states that:  "Prior affirmative consent. Paragraph (a) of this section

20 does not apply to the transmission of an electronic mail message if the recipient has

21 given prior affirmative consent to receipt of the message."  Therefore, if the recipients of

22 the Cyberheat E-Mails had previously consented to receipt of the messages, none of the

23 mandates set forth in § 316.4(a) are applicable to those e-mails.  Again, this much is

24 admitted by Plaintiff (See Plaintiff's Responses to Defendant Cyberheat, Inc. Second Set

25 Requests for Admission, Request No. 2051 at page 25, line 9; produced as Exhibit "A"

26 to the Declaration of Robert S. Apgood).  It follows then that, even if, *arguendo,* the

27 e-mails do precisely what Plaintiff alleges in paragraph 29, the mandates are inapplicable

28

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT  - 7

CARPELAW PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1  and there has been no violation of the statute because there was prior affirmative consent
2  by the recipient to receive the communications.
3  ==In this case, prior affirmative consent was given for all of the messages contained==
4  ==in the Cyberheat E-Mails.==  Fed. R. Civ. P. 56 states that the burden of this motion is
5  initially on the Defendant as the movant.  The Defendant may demonstrate the
6  uncontested facts through the manner set forth in Rule 56(e), which Defendant has done.
7  The uncontested facts are set forth in the Declaration of Allison Vivas and the
8  Declaration of Robert S. Apgood and more fully in the Statement of Facts In Support of
9  Defendant's Motion for Summary Judgment ("Facts") hereto.  There is no need to
10 reiterate verbatim what they say, as reference to them will inevitably and conclusively
11 support the following summary.  Prior to the enactment of THE CAN-SPAM Act,
12 people who signed up for Defendant's products and services affirmatively consented to
13 receive e-mails from Defendant by accepting the "Terms and Conditions" of subscription
14 to Cyberheat Web Sites.  Facts ¶¶ 5-6 at 2.  Moreover, individuals who were interested
15 in receiving communications from Cyberheat could specifically request to be added to
16 Cyberheat's e-mail lists (the "Double Opt-In").  Facts ¶ 12 at 3-4.  Shortly before the
17 enactment date of the CAN-SPAM Act, Defendant altogether discontinued sending any
18 e-mail messages under the old "Terms and Conditions."
19     Under the Defendant's newly revised Terms and Conditions (revised shortly prior
20 to the enactment of the CAN-SPAM Act), ==if subscribers wanted to receive e-mails from==
21 ==Defendant, they were provided an election whether to receive e-mails from Defendant.==
22 As shown in Exhibit C to the Vivas Declaration, the subscriber could elect or not elect to
23 receive e-mails through the use of a "checkbox" found on Defendant's "join pages."  If
24 the subscriber did not elect to receive e-mails, they were not sent to him.  As the Vivas
25 Declaration states, every single one of the e-mails or communications that are the subject
26 of this part of the motion for partial summary judgment (the Cyberheat E-Mails) were
27 sent by Defendant to a person who had previously used the election checkbox to receive
28 e-mails from Defendant, or who had elected to receive those e-mails prior to the

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT  - 8

1  enactment of the CAN-SPAM Act.  These are the facts of this case.  These facts are
2  uncontested and uncontradicted.  Every single recipient of the Cyberheat E-Mails either
3  acceded to receipt of the messages as a part of the "Terms and Conditions" of
4  Defendant's Web sites prior to the enactment of the CAN-SPAM Act, specifically
5  requested to receive those messages, or after the enactment of the CAN-SPAM Act, was
6  received by a party who had specifically elect to receive such e-mails, in the face of an
7  absolute right to decline to do so.
8       Taking these facts, which were established in accordance with Fed. R. Civ. P. 56,
9  into consideration, and squaring them with 15 U.S.C. § 7704(d)(2) and 16 C.F.R.
10 316.4(b), there can be but only one competent legal conclusion and that is that the
11 recipients had given "**prior consent**" for Defendant to send them the messages in the
12 Cyberheat E-Mails.  The legal question is whether the prior consent was "prior
13 **affirmative** consent" within the definition and meaning of the CAN-SPAM Act and the
14 Adult Labeling Rule.  The question is definitively answered by merely examining both
15 laws.
16      16 C.F.R. Part 316.4(c)(1) states that "[t]he definition of the term 'affirmative
17 consent' is the same as the definition of that term in the CAN-SPAM Act, 15 U.S.C.
18 7702(1)."  Under that definition, "affirmative consent" is defined as follows:
19      Affirmative consent. The term "affirmative consent", when used with respect to
20  a commercial electronic mail message, means that—
21      (A) the recipient expressly consented to receive the message, either in response
        to a clear and conspicuous request for such consent or at the recipient's own
22      initiative; and
23
24      (B) if the message is from a party other than the party to which the recipient
        communicated such consent, the recipient was given clear and conspicuous
25      notice at the time the consent was communicated that the recipient's electronic
        mail address could be transferred to such other party for the purpose of initiating
26      commercial electronic mail messages.
27
28

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT  - 9

**CARPELAW** PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1   Plaintiff alleges, and Defendant concedes that all of the Cyberheat E-Mails were "from"
2   Defendant and not a third person.  Therefore, the definition at § 7702(1)(A) is applicable
3   and the definition of subsection (B) is not applicable to the Cyberheat E-Mails.
4         As the Facts clearly show, prior to January 1, 2004, the recipient consented to
5   receive the message at the recipient's own initiative by either subscribing to a Cyberheat
6   Web site or by exercising the Double Opt-In mechanism, or, commencing shortly before
7   January 1, 2004, in response to a clear and conspicuous request.  ==When presented the==
8   ==checkbox" as a clear and conspicuous request, the recipient of these e-mails had to==
9   ==make a determination as to whether he wished to receive e-mails.  If he did not want==
10  ==them and so elected not to receive them, he could do so.  If he did want them and elected==
11  ==to receive them, he could do so.  It was up to the customer, and the plain English==
12  ==language at the checkbox unambiguously indicates what results would ensue from an==
13  ==application processed with a check placed in the box, to wit: that e-mails would be sent.==
14  ==Ms. Vivas establishes that the recipients of the Cyberheat E-Mails actually went through==
15  ==one of the three processes prior to Cyberheat sending any of the e-mails contained in the==
16  ==Cyberheat E-Mails.  These actions certainly constitute (1) express consent and are (2) at==
17  ==the recipient's own initiative.==
18        However, the nature of the facts surrounding the transaction further establishes
19  the voluntary consciousness of the consent. The subscriber was not prohibited from
20  using the services of Defendant if he elected **not** to receive e-mail.  Therefore, receiving
21  e-mails, under the way Defendant's Web sites worked, was clearly an act of a conscious
22  and volitional decision by the recipient.  Accordingly, under the circumstances, there is
23  no question but that the e-mails were sent to persons who had given prior affirmative
24  consent under the definition of the Act and Regulation.  ==As such, the e-mails were==
25  ==exempt from the mandates of the requirements of 15 U.S.C. § 7704(d)(1) and 16 C.F.R.==
26  ==§ 316.4(a).==
27        Therefore, assuming, *arguendo,* that paragraph 29 of the Plaintiff's Complaint
28  accurately describes the condition of the e-mails in the Cyberheat E-Mails, there is no

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT  - 10

**CARPELAW** PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

offense or violation of either the statute or the regulation because, as a result of the exemptions referenced above, Defendant was simply not required to comply with 15 U.S.C. § 7704(d)(1) and 16 C.F.R. § 316.4(a).  Consequently, on the facts as established in this case, Defendant is entitled to partial summary judgment as a matter of law dismissing Count I as to the Cyberheat E-Mails.

**2.    The Defendant Is Not Responsible For The Acts Of Third Parties Who Sent E-Mails Against Defendant's Wishes And Directives And Without Defendant's Consent, And Defendant Is Entitled To Judgment As A Matter Of Law On These E-Mails As To All Counts Of The Complaint**

This portion of the motion deals with the remaining hundreds of e-mails (all *excluding* the Cyberheat E-Mails) submitted by Plaintiff as evidence of and in support of its three claims against Defendant in the Complaint.

In this case, the Statement of Facts as supported by the Declaration of Allison Vivas, *supra,* demonstrates that the Defendant did not actually send these e-mails. Rather, third parties sent the e-mails.  Defendant candidly admits to the Court that Defendant had entered into agreements with the third parties whereby it paid those third parties a commission, or "finders fee," for sales resulting from referrals by those third parties to Defendants Web sites.  Facts ¶¶ 61-63 at 10.  However, Defendant does not pay these third parties to market or advertise Defendant's Web sites.  Facts ¶ 61 at 10. Rather, it pays them a finders fee if, and only if, someone whom the third party had referred to one of Defendant's Web sites subsequently subscribes to that Web site.  Facts ¶ 63 at 10.

The critical point that the Court must understand is that Defendant never expressly, implicitly or otherwise authorized such persons to violate the CAN-SPAM Act.  Facts ¶¶ 59 at 10.  In fact, Cyberheat's Terms and Conditions for the third parties expressly forbade violations of its terms encompassing violations of the CAN-SPAM Act and the Adult Labeling Rule. *Id.*  It did not expressly, implicitly or otherwise suffer such persons to violate the CAN-SPAM Act, and when it discovered that such third

DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT  - 11

**CARPELAW** PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)