**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>  Plaintiff,<br><br>  v.<br><br>**IMPULSE MEDIA GROUP, INC.,**<br><br>a Washington corporation,<br><br>  Defendant. | No. CV05-1285L<br><br>**UNITED STATES' REPLY IN SUPPORT OF SUMMARY JUDGMENT** |

## I.   Introduction

IMG violated the law by initiating the transmission of hundreds of unsolicited commercial email messages ("spam") that contained sexually explicit material and lacked the required warnings, disclosures, and opt-out mechanisms. Because there are no genuine issues of material fact as to whether IMG initiated the transmission of these emails, and the United States is entitled to a judgment as a matter of law, summary judgment in favor of the Government is appropriate.

Congress explicitly prohibited initiating the transmission of the sexually explicit email messages at issue in order to protect recipients of this spam from viewing material that they may find offensive and to provide recipients an opportunity to opt-out from receiving further messages from the sender. In doing so, Congress intended to hold liable both the button-pushers of spam and those who induced the button-pushers. IMG's efforts to contest material facts and add legal burdens are without merit. Therefore, summary judgment in favor of the United States is appropriate.

United States' Reply
in Support of Summary Judgment
CV05-1285L

U.S. Department of Justice
P.O. Box 386
Washington, DC  20044
(202) 353-1991

## II. Legal Standard

To defeat summary judgment under Fed. R. Civ. P. 56, IMG must demonstrate that there is a genuine issue of material fact or that the Plaintiff is not entitled to a judgment as a matter of law. IMG has done neither. Summary judgment is not precluded by disputes over facts that would not affect the outcome of the suit or by evidence that is merely colorable or not significantly probative. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001). IMG has not demonstrated a genuine issue of material fact.

In the absence of disputed facts, IMG may defeat summary judgment only by establishing that the Government has failed to make a sufficient showing on an essential element of the Government's case with respect to which the Government has the burden of proof. Celotex Corp.v. Catrett, 477 U.S. 317, 324 (1986). IMG has made no such showing; therefore, summary judgment for the United States is appropriate.

## III. IMG Has Produced No Evidence Demonstrating a Genuine Issue of Material Fact

### A. Declaration of Allyson Himelfarb Creates No Issues of Material Fact

The Defendant asserts that much of the evidence in Allyson Himelfarb's Declaration ("Himelfarb Declaration") is inadmissible and therefore there remain many issues of material fact. Def. Response at pp. 2-6. IMG's main objections to the Himelfarb Declaration fall into two categories. First, IMG asserts that no foundation has been established showing that Himelfarb has personal knowledge of the actions that Microsoft took in gathering the emails at issue. Second, IMG asserts that Himelfarb has not been qualified as a "legal expert," and therefore her observations about the content of the emails at issue are inadmissible. IMG's objections are without merit.

As to IMG's first objection, the Himelfarb Declaration notes evidence set forth in the Declarations of David Vetter and Chad Bundy. Himelfarb's Declaration uses Microsoft's actions as background to put the actions that she personally took into context. The Declarations of Vetter and Bundy specifically detail the actions that Microsoft took. The references to Microsoft

United States' Reply  
in Support of Summary Judgment  
CV05-1285L

Page 2 of 13

U.S. Department of Justice  
P.O. Box 386  
Washington, DC 20044  
(202) 353-1991

in the Himelfarb Declaration are fully supported by the Vetter and Bundy Declarations, and are simply used by Himelfarb to add context to her Declaration. There can be no serious question but that Microsoft's trap accounts received the emails which Himelfarb describes for the Court.

As to IMG's second objection, the Himelfarb Declaration sets forth Himelfarb's observations of the facts and evidence. None of the Himelfarb Declaration paragraphs that IMG objects to, ¶¶ 10, 11, 15, 16, 17, 18, 25, 26, 27, 28, 29, 30, 31, 34, 37, and 40, include a legal conclusion. Def. Response at p. 4. A review of the attachments to the Himelfarb Declaration reveal that such emails do in fact fail to include the "Sexually-Explicit: " label within the subject line or initially-viewable area of the message. The Himelfarb Declaration includes factual observations about the evidence in this matter, not legal conclusions. IMG does not dispute the accuracy of these observations.

In addition, IMG attempts to raise questions about the authenticity or admissibility of the email messages at issue. Def. Response at p. 8. IMG objects that the documents are not properly certified as "business records" (p. 8 at lines 17-18) and are "hearsay" (p. 8 at line 20).[1] However, the emails are not being offered for "the truth of the matter asserted," Fed. R. Evid. 801(c), so they are not hearsay, and there is no need to establish that they are business records. The emails are important for what they are – email sent by IMG affiliates – not for the matters they assert. The Government is not trying to establish the truth of any statement in any of those email messages, but their existence, and their failure to comply with CAN-SPAM.

**B.     Subsequent Remedial Measures**

The Defendant asserts that the evidence in Plaintiff's SOF No. 35 is inadmissible under Fed. R. Evid. 407 because it is evidence of subsequent remedial measures taken by the

---

[1] The Defendant erroneously asserts that the Declarations of Bundy and Vetter are inconsistent. Def. Response at p. 8 line 9. The Declarations are not identical in that they each detail the declarants' own personal knowledge. However, the portion of the Bundy Declaration that the Defendant points to as inconsistent with the Vetter Declaration simply offers more detail as to how Mr. Bundy, as Microsoft's legal counsel, obtained the e-mail messages.

United States' Reply
in Support of Summary Judgment
CV05-1285L

Page 3 of 13

U.S. Department of Justice
P.O. Box 386
Washington, DC  20044
(202) 353-1991

Defendant. Def. Response at pp. 6-8. However, Plaintiff's SOF No. 35 was offered in conjunction with another statement of fact, SOF No. 34, to show the feasibility of the monitoring measures. Because the Government has alternative evidence to support the proposition that it was feasible for IMG to take these measures and the Defendant does not dispute this evidence (Fed. R. Evid. 407, by its terms, can only be raised with respect to "feasibility" where feasibility is disputed), the Plaintiff need not rely and does not rely on the evidence in SOF No. 35. Therefore, IMG's assertion is moot. SOF No. 35 is not relied upon, and thus does not raise any dispute of material fact.

### C.     The Emails at Issue Were Unsolicited

Drawing on a dispute from other litigation, IMG presents an inaccurate characterization of events occurring in another case to assert that "there is a genuine issue of material fact as to whether consent was given for the e-mail to be sent to the Microsoft trap accounts." Def. Response at pp. 8-9.[2] The Government has consistently presented evidence that Microsoft never consented to the receipt of any email to its trap accounts. As testified to by David Vetter, a Program Manager for MSN Hotmail who works on spam issues for Microsoft, Microsoft never consented to the receipt of any email to its trap accounts.[3] *See* SOF 62; Vetter Declaration in

---

[2] Defendant's inaccurate characterization concerns *United States v. Cyberheat, Inc.*, No. 05-457 (D. Ariz.). IMG's brief here discusses what boils down to one email that was not a part of the Government's summary judgment case in *Cyberheat*. However, IMG mischaracterizes the Government's position in *Cyberheat*. When Cyberheat offered evidence allegedly showing consent regarding the emails that were at issue in that case, the Government objected to Cyberheat's self-serving interpretation of the evidence and to its use. Specifically, the Government disagreed with Cyberheat's characterization of the evidence and objected to its use because the document allegedly showing consent was provided to the Government *after* the close of discovery, is impossible to interpret on its face, and Cyberheat's discovery violation, withholding the document until after the close of discovery, had denied the Government the opportunity to explore the meaning and significance of the document. *See* Excerpts from United States' Reply in Support of Summary Judgment in *Cyberheat*, attached as Plaintiff's Ex. 24 at pp. 8-11. The Cyberheat court has not ruled on the Government's objection, and those events shed no light on the instant case.

[3] The United States offered identical testimony by Mr. Vetter regarding the consent issue in *United States of America v. Cyberheat, Inc*. *See* Vetter Declaration in *Cyberheat*, attached as Plaintiff's

United States' Reply
in Support of Summary Judgment
CV05-1285L

U.S. Department of Justice
P.O. Box 386
Washington, DC  20044
(202) 353-1991

*Impulse Media Group*, attached as Plaintiff's Ex. 2 at ¶ 7.  IMG has offered no evidence in this case to support its contention that the emails were solicited.  In fact, in response to the Government's Request for Documents "that demonstrate affirmative consent by a person to receive commercial electronic mail message containing sexually oriented material," IMG only produced IMG's Terms and Conditions of Subscription, a document that outlines terms and conditions for IMG's subscribers and does not show any evidence of affirmative consent by any person.  (SOF 61)  Therefore, there is no genuine issue of material fact as to whether the email received at the trap accounts was solicited.

### D. The Emails at Issue Are Commercial

The Defendant asserts that an issue of material fact exists as to whether "the e-mail at issue is 'commercial.'" Def. Response at p. 9.  To support its assertion, the Defendant states that "there is absolutely no evidence on the record disclosing the reasons as to why the e-mail was sent, and certainly no evidence to support the premise that the purpose of the e-mail was to induce subscriptions by recipients to IMG Web sites." *Id*. at lines 22-25.  However, CAN-SPAM defines "commercial electronic mail message" as "any electronic mail message the primary purpose of which is the commercial advertisement or promotion of a commercial product or service (including content on an Internet website operated for a commercial purpose)." 15 U.S.C. § 7702(2)(A).  In its Answer to the Amended Complaint at ¶ 6, IMG admitted that it owns and operates dozens of commercial websites that display a vast collection of sexually oriented videos and pictures.  (SOF 1)  As is evident from the face of the emails, the purpose of the emails at issue is the promotion of IMG's commercial websites.  Therefore, there is no genuine issue of material fact as to whether the relevant emails are commercial.

### E. IMG Has Failed to Monitor Its Affiliates

The Defendant asserts that the Plaintiff "improperly offers pure argument under the guise

---

Ex. 25 at ¶ 7.

United States' Reply
in Support of Summary Judgment
CV05-1285L

Page 5 of 13

U.S. Department of Justice
P.O. Box 386
Washington, DC  20044
(202) 353-1991

of an 'undisputed statement of fact' in Plaintiff's SOF No. 34." Def. Response at p. 17. SOF 34 deals with the feasibility of IMG taking steps to prevent CAN-SPAM violations. Plaintiff questioned IMG's employees if it would have been feasible for IMG to: (a) ask subscribers, as part of the membership sign-up process, how they learned of IMG; (b) ask affiliates what promotional means they use to advertise IMG's websites; and (c) create a textlink on the first page of IMG's adult websites directing people who arrived there unwillingly to a complaint form. The employees testified that it would have been feasible for IMG to undertake these monitoring methods. (SOF 34)  As such, Plaintiff's SOF 34 is a statement of fact, not "pure argument."  Further, SOF 34 is an undisputed statement of fact because the Defendant has not produced any evidence to rebut the Government's evidence that it would have been feasible for IMG to undertake these monitoring methods to prevent the very CAN-SPAM for which the United States seeks redress here.

IMG objects to SOF 36 to the extent that it implies that a legal duty to monitor its affiliates exists on the Defendant. Def. Response at p. 17 lines 18-21. SOF 36 simply shows that IMG did not undertake the monitoring methods identified in SOF 34. The evidence in SOF 36 supports the fact that while IMG claims that it did not hire affiliates to send emails, IMG turned a blind-eye toward its affiliates' practices.

### F. IMG Does Not Interview, Ask for References, or Conduct a Detailed Review of Affiliate Applicants

The Defendant asserts that "[w]hether IMG's affiliate sign-up process demonstrated 'little caution' is an issue of material fact in dispute." Def. Response at p. 18 lines 10-11. To support its assertion, the Defendant claims that after completing IMG's on-line application, "an agreement exists between IMG and the affiliate wherein the affiliate agrees to be bound by the affiliate terms of service." Def. Response at p. 18 lines 6-7. The Government does not dispute the fact that affiliates have to check a box to agree to IMG's affiliate terms of service to become an affiliate. However, the undisputed facts are that even though affiliates are provided with the

United States' Reply
in Support of Summary Judgment
CV05-1285L

Page 6 of 13

U.S. Department of Justice
P.O. Box 386
Washington, DC  20044
(202) 353-1991

marketing and promotional tools to introduce IMG to the public, IMG does not interview affiliate applicants, ask for references, or conduct any detailed review of affiliates as a part of the affiliate sign-up process. (SOF 11-13)  Further, IMG approves applicants even when the answers they provide on the affiliate sign-up questionnaire are senseless, for example, approving applicants with the names "hjgjhgj," "ccc xzc," and "sfdsfd dsfsdfsd." (SOF 14)  IMG has offered no evidence to the contrary; therefore, no issue of material fact exists as to whether IMG's affiliate sign-up process demonstrated "little caution."

### G. IMG Had Knowledge or Implied Knowledge of CAN-SPAM Violations

The Defendant asserts that "a genuine issue of material fact exists concerning whether IMG had knowledge or implied knowledge of CAN-SPAM violations." Def. Response at pp. 13-16.  IMG argues that "the record fails to disclose, and Plaintiff fails to substantiate, whether the

e-mail [the Defendant received complaints about] was in fact sent by affiliates." Def. Response at p. 15 lines 25-26.  In his deposition at page 32 lines 5-18, Mr. Schermerhorn, President of IMG, answered "Yes" to the question "[h]as IMG ever received complaints from individuals who were the recipients of spam sent by IMG affiliates?" (SOF 32)  The portions of the Schermerhorn deposition cited to by the Defendant support the fact that IMG received complaints regarding spam sent by IMG affiliates. *See* Schermerhorn Deposition at p. 33 lines 3-17 and p. 34 lines 12-19.  In this testimony, Mr. Schermerhorn is testifying that IMG received complaints about IMG affiliates sending spam promoting IMG's websites, but that he was not able to determine which affiliate sent the spam.

The Defendant further asserts that "an issue of material fact exists as to whether IMG terminated affiliates." Def. Response at p. 18.  For purposes of this motion, the Government does not dispute that IMG terminated twelve affiliates.  However, this does not immunize IMG from liability for the violations it committed, and proves that IMG had knowledge that IMG affiliates were using spam to promote IMG's websites.  In addition, IMG did not always

United States' Reply
in Support of Summary Judgment
CV05-1285L

Page 7 of 13

U.S. Department of Justice
P.O. Box 386
Washington, DC  20044
(202) 353-1991

terminate all of an affiliate's accounts when one of the affiliate's accounts was terminated for sending spam. (SOF 65, 66)

IMG also asserts that there is a genuine issue of material fact "as to whether IMG was aware that it was operating in an environment conducive to spamming and as to whether the presence of spam on the Internet and Soulcash's incentives and tools to affiliates makes [sic] spam inevitable rather than surprising."[4] Def. Response at p. 16 lines 21-24. The evidence demonstrates that IMG operates in an on-line world, pays affiliates who successfully bring customers to its websites through online advertising, and provides marketing and promotional tools to affiliates that can be used in e-mails. (SOF 11, 22) IMG does not dispute these facts and has offered no evidence to the contrary. What IMG disputes is whether IMG "maintains or supports an environment that has been or is conducive to spamming." Schermerhorn Response Decl. at ¶ 16. However, the Government does not assert that IMG maintains or supports such an environment. Rather, IMG operates in an environment conducive to spamming because it operated in an online environment and paid affiliates to bring customers to its websites through online advertising and provided marketing and promotional tools to affiliates that can be used in e-mails – the logical extension of these facts is that IMG affiliates were likely to use spam to promote IMG's websites.

**IV.    Plaintiff Is Entitled to Judgment As a Matter of Law**

IMG's fundamental legal argument is presented under the guise of a genuine issue of material fact as to whether IMG induced affiliates to send illegal email. Def. Response at pp. 10-13. However, whether IMG induced affiliates to send email is not an issue of fact because IMG has offered no proof to rebut the evidence of inducement and resulting liability the Government provided. What the parties do disagree on is a legal issue appropriate for summary judgment, whether the undisputed facts presented by the Government concerning inducement constitute

---

[4] Counsel is reminded of a quote from Casablanca. Captain Renault: "I'm shocked, shocked to find that gambling is going on in here!" Croupier: "Your winnings, sir." *See* http://home5.swipnet.se/~w-55183/casablanca/casablancasounds.htm at gambling.wav.

United States' Reply
in Support of Summary Judgment
CV05-1285L

Page 8 of 13

U.S. Department of Justice
P.O. Box 386
Washington, DC  20044
(202) 353-1991

liability under the statute.

IMG sets forth a standard of liability that is not in the statute, that IMG "must have paid them [affiliates] or promised payment to *produce the end result of actually sending an illegal e-mail*." Def. Response at p. 10 line 28 to p. 11 line 1 (emphasis in original). However, whether IMG paid affiliates to send email or promised payment to produce the end result of sending email is not a required element to prove liability. The Government is only required to prove that IMG induced affiliates to send email that were in violation of the law. The facts that IMG promised to pay affiliates for sales they referred to IMG, and many of the affiliates who sent violative emails received payment for sales they referred to IMG, are pieces of evidence the Government offered, and to which IMG agreed, that prove that these affiliates were induced to send the emails at issue. What the Government must prove, and what the undisputed facts show, is that IMG induced its affiliates to send violative email.

The Government has met its burden. The parties agree on the fundamental facts of IMG's relationship with its affiliates. IMG used an affiliate program to drive traffic and paying customers to IMG's adult oriented websites. IMG "admits that it induced affiliates to bring potential subscribers to IMG's Web sites." *See* Def. Response at p. 13 line 9. IMG provided affiliates with marketing and promotional materials and extensive support. (SOF 18, 19, 23, 24, and 25) IMG knew these marketing and promotional materials could be used, and were used, in emails. *See* SOF 22; Schermerhorn deposition, attached as Plaintiff's Ex. 26 at p. 59 line 15 through p. 63 line 3.[5] At the same time, IMG paid affiliates who successfully drove customers to IMG's websites. *See* Def. Response at p. 11 lines 24-25; SOF 10, 49, 51, 55, 56, and 58. All of these inducements were offered to affiliates while IMG operated in an on-line environment conducive to spamming and while IMG was aware that some of its affiliates used email to

---

[5] The deposition testimony of Seth Schermerhorn, the President and sole owner of IMG (SOF 2, 3), affirmatively shows that not only could IMG affiliates use promotional materials provided by IMG in emails to promote IMG's websites, IMG content and graphics were used in emails sent by affiliates to promote IMG's websites. The Deposition Exhibits referenced in the deposition were provided to the court on CD-ROM Ex. 15. Dep. Ex. 23 is file #0064188041, Dep. Ex. 24 is file #0067685998, and Dep. Ex. 29 is file #0065253072.

United States' Reply
in Support of Summary Judgment
CV05-1285L

Page 9 of 13

U.S. Department of Justice
P.O. Box 386
Washington, DC  20044
(202) 353-1991

promote IMG's websites. (SOF 11, 32)

Notwithstanding these facts, IMG asks this Court to find that IMG did not induce affiliates to send illegal emails. Inducement is defined as "the act or process of enticing or persuading another person to take a certain course of action." Black's Law Dictionary 779 (7th ed. 1999). The inescapable inference of the undisputed facts is that IMG enticements and persuasions resulted in IMG affiliates sending the more than 400 violative emails, and that IMG closed its eyes to violative practices by affiliates. (SOF 34, 36, 37, 38, 40) It defies logic and common sense to suggest that IMG did not induce the violative spam at issue. Why else were those emails sent?

**V.     IMG is Liable for Injunctive Relief and Civil Penalties**

As discussed in Plaintiff's Motion and Response to Defendant's Motion for Summary Judgment, Congress, motivated in large measure by a desire to prevent pornographic email from being delivered to children, deliberately excluded a "knowledge" requirement from the pertinent provision of CAN-SPAM to expressly impose liability for injunctive relief on both "button pushers" and those who induce the "button-pushers," thus reaching firms like IMG that motivate and provide consideration to others to send sexually explicit email to non-consenting recipients. As discussed in Plaintiff's Motion and Memorandum in Support of Summary Judgment at pp. 24-26, the text, structure, and legislative history of the Act unequivocally show that IMG is liable for injunctive relief regardless of IMG's knowledge of its affiliate's activities. The legislative history of the Act demonstrates that Congress specifically rejected a knowledge requirement in the relevant section of CAN-SPAM. Congress demonstrated its intent to impose a lower burden of proof for injunctive relief against entities such as IMG in a civil government enforcement action by placing a "knowledge" element in other CAN-SPAM provisions, such as the criminal provision and the section allowing enforcement by Internet Service Providers, even as it deleted "knowledge" as an element in cases such as this one. As Congress made clear, the Government is not required to show specific intent for a civil violation to attach. Rather, the statute requires that IMG did not accidentally pay or accidentally induce its affiliates to send

United States' Reply
in Support of Summary Judgment
CV05-1285L

U.S. Department of Justice
P.O. Box 386
Washington, DC  20044
(202) 353-1991

commercial email on its behalf.  *See* Plaintiff's Response to Defendant's Motion for Summary Judgment at pp. 12-14.

IMG is also liable for civil penalties.  IMG's liability for injunctive relief rests on its having induced affiliates to initiate violative emails.  And while there is no knowledge requirement for injunctive relief, there is such an element in the civil penalty calculus.  IMG's liability for civil penalties follows from its actual and implied knowledge,  15 U.S.C. § 45(m)(1)(A), of its affiliates' activities and of CAN-SPAM.  *See, e.g.*, Plaintiff's Response to Defendant's Motion for Summary Judgment at pp. 14-15.  IMG's agreement with affiliates to drive customers to IMG's websites foreseeably involved the affiliates' use of on-line advertising including email.  IMG knew that some of its affiliates were using spam to promote IMG's websites.  IMG cannot avoid liability by putting empty rhetoric in its contracts, claiming that it had no knowledge of the obvious results of its actions, when affiliates like "hjgjhgj," "ccc xzc," and "sfdsfd dsfsdfsd" were trusted to comply with the law and IMG had actual or implied knowledge that they did not.

**VI.   Conclusion**

IMG attempts to evade liability by claiming that it did not induce affiliates to send email.  However, IMG has presented no facts that create a genuine issue of material fact regarding this or any issue in the case.  In the absence of disputed facts, IMG may defeat summary judgment only by establishing that the Government has failed to make a sufficient showing on an essential element of the Government's case with respect to which the Government has the burden of proof.  Because IMG has made no such showing, summary judgment for the United States should be granted.

DATED: September 29, 2006          Respectfully submitted,

FOR PLAINTIFF UNITED STATES:
PETER D. KEISLER
Assistant Attorney General,
Civil Division
U.S. DEPARTMENT OF JUSTICE

United States' Reply
in Support of Summary Judgment
CV05-1285L

Page 11 of 13

U.S. Department of Justice
P.O. Box 386
Washington, DC  20044
(202) 353-1991

```
                    JOHN McKAY
                    United States Attorney

                    BRIAN KIPNIS
                    Assistant U. S. Attorney for the
                    Western District of Washington
                    700 Stewart Street
                    PHONE: (206) 553-7970
                    FAX: (206) 553-0882

                    EUGENE M. THIROLF
                    Director
                    Office of Consumer Litigation

                    KENNETH L. JOST
                    Assistant Director
                    Office of Consumer Litigation

                    JEFFREY STEGER
                    Trial Attorney
                    Office of Consumer Litigation

            By:     /s/ Lauren E. Hash
                    LAUREN E. HASH
                    Trial Attorney
                    Office of Consumer Litigation
                    U.S. Department of Justice
                    P.O. Box 386
                    Washington, DC  20044
                    Telephone: (202) 353-1991
                    Facsimile: (202) 514-8742
                    Lauren.Hash@usdoj.gov
```

United States' Reply
in Support of Summary Judgment
CV05-1285L

Page 12 of 13

U.S. Department of Justice
P.O. Box 386
Washington, DC  20044
(202) 353-1991

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such to the following CM/ECF registrant:

>Robert S. Apgood
>CarpeLaw PLLC
>2400 NW 80th Street #130
>Seattle, WA 98117-4449

>By: /s/ Lauren E. Hash
>Lauren E. Hash
>Trial Attorney
>Office of Consumer Litigation
>U.S. Department of Justice
>P.O. Box 386
>Washington, DC 20044
>Telephone: (202) 353-1991
>Facsimile: (202) 514-8742
>Lauren.Hash@usdoj.gov

United States' Reply
in Support of Summary Judgment
CV05-1285L

Page 13 of 13

U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
(202) 353-1991