Jeffrey Steger
Lauren E. Hash
U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
Tel: (202) 353-1991
Fax: (202) 514-8742
Lauren.Hash@usdoj.gov
Texas Bar No. 24050728
Attorneys for Plaintiff United States of America

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CIV 05-457-TUC-DCB |
| Plaintiff, | |
| vs. | UNITED STATES' REPLY IN SUPPORT OF SUMMARY JUDGMENT |
| Cyberheat, Inc., an Arizona corporation, | |
| Defendant. | |

## I. Introduction

Cyberheat violated the law by initiating the transmission of hundreds of unsolicited commercial email messages ("spam") that contained sexually explicit material and lacked the required warnings, disclosures, and opt-out mechanisms. Because there are no genuine issues of material fact as to whether Cyberheat initiated the transmission of these emails, and the United States is entitled to a judgment as a matter of law, summary judgment in favor of the Government is appropriate.

Congress explicitly prohibited initiating the transmission of the sexually explicit email messages at issue in order to protect recipients of this spam from viewing material that they may find offensive and to provide recipients an opportunity to opt-out from receiving further messages from the sender. In doing so, Congress intended to hold liable both the button-pushers of spam and those who induced the button-pushers. Cyberheat's efforts to contest material facts and add legal burdens are without merit. Therefore, summary judgment in favor of the United States is appropriate.

"chain of custody" question about those messages given the Declarations that are part of the Government's Motion.

Lastly, Cyberheat also asserts that Attachments Q to Y to the Himelfarb Declaration "do not substantiate her averments" regarding "[t]he actual Web sites to which the message recipients are directed." Def. Response at p. 15 lines 5-7. In her First Declaration at ¶¶ 45-53, Himelfarb explains that recipients of Attachments Q to Y are directed to Cyberheat websites. See Plaintiff's Ex. 1. The Second Himelfarb Declaration at ¶¶ 4-12, attached as Plaintiff's Ex. 32, further details how despite the fact that the URLs for these messages do include the domain names Defendant cites, the message recipients are directed to Cyberheat websites. The Defendant offers no evidence that the emails do not direct recipients to domains owned by Cyberheat. Cyberheat merely points out that the URLs in the messages contain references to websites not owned by Cyberheat. However, as Himelfarb explains, the message recipients in Attachments Q through Y are ultimately directed to domains owned by Cyberheat.[6]

### F.    Alleged Affirmative Consent Creates No Issue of Material Fact

Cyberheat belatedly proffers new evidence of alleged affirmative consent from eleven email recipients.[7] These email recipients received twenty-one of the emails used by

---

[6] Cyberheat objects to representations made by Himelfarb in her Declaration. Cyberheat asserts that ¶¶ 43, 44, and 61 of the Himelfarb Declaration are inconsistent. In ¶ 43 Ms. Himelfarb states that "approximately 540" messages sent by affiliates 36828, 31619, 31437, and 29111 were identified in the spam database. This assertion is consistent with ¶ 44 where Ms. Himelfarb attributes 540 emails to affiliate 36828 because while Ms. Himelfarb stated in ¶ 43 stated that **approximately** 540 emails from the spam database were associated with the four affiliates, the precise number of emails associated with the four affiliates is 557. These statements are also consistent with ¶ 61 where Ms. Himelfarb references the total 642 email messages dicussed in her Declaration which are email messages sent by ten Cyberheat affiliates and identified by either Microsoft or the FTC spam database.

[7] The Government does not dispute that Cyberheat originally produced two documents in response to the United States' First Request for Production of Documents No. 16 for "documents that demonstrate affirmative consent by a person to receive commercial electronic mail message containing sexually oriented material." However, the two documents Cyberheat produced in response to Document Request No. 16 were Cyberheat's Terms and Conditions of Subscription and a list of domain names owned by Cyberheat, neither of which shows any evidence of affirmative consent by any person. Defendant's Response Ex. 3, 4.

Plaintiff in support of Summary Judgment. Cyberheat's assertion that this affirmative consent creates an issue of material fact is without merit. First, the alleged affirmative consent to twenty-one emails is meaningless in the context of the more than 600 violative emails Plaintiff submitted as evidence in support of Summary Judgment. See Plaintiff's Ex. 30. Second, Cyberheat's belated production of this alleged affirmative consent comes long after the close of discovery, despite Cyberheat's apparent knowledge that such evidence existed. The sanction for such litigation tactics should be the exclusion of the proffered evidence. Third, even if the Court finds that the evidence should be considered, the value of such evidence is nil. The document itself is difficult to understand and Cyberheat's self-serving description does not constitute specific facts sufficient to establish a genuine issue of material fact.

First, the alleged affirmative consent to twenty-one emails is meaningless in the context of the more than 600 violative emails Plaintiff submitted. There is no dispute that these 600 emails violate the law. The only dispute is whether Cyberheat can be held liable for the emails. Even if one assumes that affirmative consent from the eleven email recipients existed, this affirmative consent would account for less than 4% of the total emails Plaintiff submitted. There are still more than 600 emails without any affirmative consent. The fact that there are still more than 600 emails that lack affirmative consent is undisputed.

Second, Plaintiff served its Requests for Documents on November 14, 2005, seeking evidence of affirmative consent. See Plaintiff's Ex. 33 (Request No. 16). Pursuant to this Court's Order, discovery ended on June 23, 2006. See Docket #11. Plaintiff's Motion for Summary Judgment was filed on July 28, 2006. On August 8, 2006, Cyberheat emailed the Plaintiff a letter attaching a document allegedly representing affirmative consent by eleven email recipients. See Defendant's Response Ex. 4.[8] As

---

[8] The 11 email recipients are: ads@hotmail.com; adsas@hotmail.com; al1996@hotmail.com; cartoon69@redcard.com; craig@ulmschneiders.com; edwin104@hotmail.com; estrus@hotmail.com; gsgd@hotmail.com; info@hotmail.com; joshuatowle@sbcglobal.net; and white_line_fever@yahoo.com.

Cyberheat admits, Plaintiff "<u>did not know and could not have known</u> of the existence of the additional documents provided to it on August 8, 2006." Def. Response at p. 23 lines 15-16 (emphasis added).

Not only did Cyberheat fail to abide by the Court's discovery deadline, it appears that it did so purposefully. More than three months before disclosing the evidence of affirmative consent to Plaintiff, on May 1, 2006, Cyberheat served Plaintiff with Requests for Admission. <u>See</u> Plaintiff's Ex. 34. Cyberheat's Requests for Admission sought responses relating to hypotheticals involving affirmative consent and the exact eleven email recipients represented in the August 8th letter.[9] The eleven email recipients identified in Cyberheat's August 8, 2006, letter are the same eleven email recipients expressly identified in Cyberheat's May 1, 2006, Requests for Admission. However, Cyberheat never produced any evidence of this alleged affirmative consent until well after discovery closed and well after Plaintiff would have had any opportunity to question Cyberheat's employees and president about the meaning of the inscrutable document Cyberheat has now produced. Plaintiff took the depositions of Cyberheat employees and its president in June. At no point during discovery did Cyberheat produce the evidence it now relies upon to assert issues of material fact. The sanction for such litigation tactics should be the exclusion of the proffered evidence. Fed. R. Evid. 37(b)(2)(B).

Third, even if the Court finds that the evidence should be considered, the evidentiary value of the document is zero. The document is difficult to interpret. While Plaintiff would have asked questions about this document when deposing Cyberheat's employees and president, Cyberheat deprived the Plaintiff of that opportunity. Cyberheat

---

[9] <u>See</u> Request No. 2049 (ads@hotmail.com); Request No. 2050 (adsas@hotmail.com); Request No. 2051 (al1996@hotmail.com); Request No. 2052 (cartoon69@redcard.com); Request No. 2053 (craig@ulmschneiders.com); Request No. 2054 (edwin104@hotmail.com); Request No. 2055 (estrus@hotmail.com); Request No. 2056 (gsgd@hotmail.com); Request No. 2057 ("info@hotmail.com); Request No. 2058 (joshuatowle@sbcglobal.net); and Request No. 2059 (white_line_fever@yahoo.com). On May 31, 2006, Plaintiff responded to Cyberheat's Requests for Admission, asserting among others things that it was unaware of any affirmative consent from these eleven email recipients. Plaintiff's Ex. 35.

can not now provide a self-serving interpretation of the document in an effort to create an issue of material fact. In sum, Cyberheat's assertion that this alleged affirmative consent creates an issue of material fact is without merit.

**IV.    Plaintiff Is Entitled to Judgment As a Matter of Law**

Cyberheat's fundamental legal argument is that Cyberheat did not pay or induce affiliates to send email. While Cyberheat acknowledges that it provided promotional and marketing support to affiliates to advertise Cyberheat's websites, Cyberheat asserts that it is not liable because it did not intentionally pay or induce affiliates to send email.

The facts of Cyberheat's relationship with its affiliates are not in dispute. Cyberheat used an affiliate program to drive traffic and paying customers to Cyberheat's adult oriented websites. Cyberheat provided affiliates with marketing and promotional materials and extensive support. (SOF 26, 35, 36) Cyberheat knew these marketing and promotional materials could be and were used in emails. See SOF 27; Meza deposition, attached as Plaintiff's Ex. 36 at p. 69 line 23 through p. 71 line 22 and p. 72 line 18 through p. 75 line 10. At the same time, Cyberheat paid affiliates who successfully drove customers to Cyberheat's websites. (SOF 17, 52, 64) In addition, Cyberheat knew some of its affiliates were using spam to direct customers to Cyberheat. (SOF 38, 39, 43) Specifically, Cyberheat received complaints regarding spam sent by Cyberheat affiliates. (SOF 43) Cyberheat identified electronic mail and newsletter marketing as a type of marketing affiliates may choose to use in promoting Cyberheat. See Response No. 6 to Interrogatory Requests, Plaintiff's Ex. 4 at p. 15.

Notwithstanding these facts, Cyberheat asks this Court to find that Cyberheat did not induce affiliates "to produce the end result of actually sending an illegal e-mail." Def. Response at p. 5 lines 13-14. Inducement is defined as "the act or process of enticing or persuading another person to take a certain course of action." Black's Law Dictionary 779 (7th ed. 1999). The undisputed facts demonstrate that Cyberheat induced its affiliates to send email. Cyberheat operated in an on-line environment conducive to spamming and was aware that some of its affiliates used email to promote Cyberheat's websites. (SOF