Jeffrey Steger
Lauren Hash
U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
Tel: (202) 307-0047
Fax: (202) 514-8742
Jeffrey.Steger@usdoj.gov
PA Bar 74854
Attorneys for Plaintiff United States of America

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | No. CIV 05-457-TUC-DCB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | UNITED STATES' SUBMISSION |
| | ) | REGARDING PROPOSED ORDER |
| Cyberheat, Inc., an Arizona corporation, | ) | FOR PERMANENT INJUNCTION |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      The United States submits this memorandum to explain the proposed order for permanent injunction. The proposed order focuses on specific actions Defendant must take to comply with the law and to prevent continuing violations. The affirmative steps Defendant would be required to take are reasonable ones given that Defendant has violated a law that Congress designed to protect the public welfare, with emphasis on the welfare of children.

      The proposed order includes findings and definitions, followed by specific injunctive relief. Many of the terms defined in the proposed order mirror the definitions set forth in the

1  CAN-SPAM Act, such as "affirmative consent," "commercial electronic mail message,"
2  "initiate," "procure," "recipient" and "sender."  "Defendant" is defined as Cyberheat, Inc., and its
3  successors and assigns.  "Defendant's Representatives" is defined as "defendant's officers,
4  agents, servants, employees, and attorneys, and those persons in active concert or participation
5  with them or defendant who receive actual notice of this Order by person service or otherwise."
6  This latter definition mirrors the language of Federal Rule of Civil Procedure 65(d).
7       Paragraphs I and II prohibit Defendant and Defendant's Representatives from violating
8  the CAN-SPAM Act and the Adult Labeling Rule, respectively.  Such a command comports with
9  Ninth Circuit teaching:

10       The sole ground on which Miller contends the injunction is too vague is that it
11       repeats language contained in the Interstate Commerce Act, s 222(b).  This, he
12       contends, makes it a general "obey the law" injunction.  But the mere fact that the
13       injunction is framed in language almost identical to the statutory mandate does not
14       make the language vague.  In this situation the statutory terms adequately describe
15       the impermissible conduct.
16
17  United States v. Miller, 588 F.2d 1256, 1261 (9th Cir. 1978).

18       In addition to these general prohibitions, Paragraphs I and II enjoin the Defendant from
19  engaging in the specific type of conduct Defendant previously used when it initiated commercial
20  email in violation of the law.  For example, the proposed order requires that all commercial email
21  initiated by Defendant contain the "SEXUALLY EXPLICIT" label in the subject line and the
22  initially viewable area.
23       Paragraph III requires Defendant to implement safeguards to verify and monitor its
24  affiliates.  Specifically, Defendant is required to verify the name, physical address, and a working
25  telephone number of participants in its affiliate program.  This is a step Defendant currently does

1  not take. However, this requirement would ensure that Defendant actually knows and can

2  monitor affiliates marketing on Defendant's behalf. In addition, Defendant is required to provide

3  a copy of the permanent injunction to its affiliates, and obtain from them an express written

4  agreement to comply with the law and the order. If an affiliate decides to engage in an email

5  campaign to promote Defendant's web sites, the proposed order requires Defendant to review the

6  email campaign for compliance with the law.

7  Paragraph III also requires Defendant to ask each consumer who registers or enrolls in

8  Defendant's web sites to identify the manner in which the consumer was directed to Defendant's

9  web site. If a consumer indicates that he or she was referred to Defendant's web sites through a

10  commercial email, Defendant is required to monitor the affiliate to ensure compliance with the

11  law. Not only is it technically feasible to ask consumers to identify the manner in which they

12  were directed to Defendant's web sites, it is a reasonable step for Defendant to take in monitoring

13  its affiliates' compliance with the law. Defendant will also be required to immediately terminate

14  any affiliate who violates the law or the order, and may not reinstate such affiliate. This

15  provision is designed to ensure that Defendant implements a true "zero tolerance" policy for

16  affiliates who violate the law.

17  Paragraph IV provides that Defendant shall pay a civil penalty in an amount to be

18  determined by further proceedings of this Court. As detailed in the government's submissions on

19  the motions for summary judgment, Defendant's liability for civil penalties follows from its

20  actual and implied knowledge of its affiliates' activities and of CAN-SPAM. Paragraph V would

21  permit standard methods of investigating potential order violations.

22  Paragraph VI provides, *inter alia*, that the Defendant provide a written report to the

1   Commission setting forth the manner in which it has complied and is complying with the order.

2   Paragraph VII requires that the Defendant create and maintain records in connection with the

3   marketing and promotion of Defendant's web sites.  Paragraph VIII requires that Defendant

4   provide a copy of the order to all of Defendant's Representatives and obtain a signed statement

5   acknowledging receipt of the order.  These Paragraphs are necessary to ensure Defendant's

6   ongoing compliance with this Court's order.

7       All of these provisions are designed to prevent Defendant from engaging in illegal

8   practices in the future.  As the Supreme Court has observed with respect to FTC orders,

> Orders of the Federal Trade Commission are . . . to prevent illegal practices in the future. . . .  If the Commission is to attain the objectives Congress envisioned, it cannot be required to confine its road block to the narrow lane the transgressor has traveled; it must be allowed effectively to close all roads to the prohibited goal, so that its order may not be by-passed with impunity.

F.T.C. v. Ruberoid Co., 343 U.S. 470, 473 (1952).  Accordingly, the Ninth Circuit recognizes that FTC orders should "'fence in' known violators of the Act" and that "Fencing-in provisions serve to 'close all roads to the prohibited goal, so that [the FTC's] order may not be by-passed with impunity.'"  Sterling Drug, Inc. v. F.T.C., 741 F.2d 1146, 1154 (9th Cir. 1984) (citing F.T.C. v. National Lead Co., 352 U.S. 419, 429 (1957) (quoting F.T.C. v. Ruberoid Co., 343 U.S. 470, 473, (1952)).  Similarly, federal courts have power not only to enjoin specific violations, but to fashion orders to prevent the same unlawful ends.  See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 132-33 (1969), and cases cited;  see also United States v. Midwest Pharmaceuticals, Inc., 890 F.2d 1004, 1007 (8th Cir. 1989) (upholding an injunction against violation of the Federal Food, Drug and Cosmetic Act that barred the marketing of legal drugs through otherwise permissible marketing techniques, and required certain customer certifications).

1       The affirmative steps Defendant is required to take under the proposed order are designed

2   to prevent future violations of the law and the order.  As the Supreme Court stated in deciding

3   criminal liability under a provision of the Federal Food, Drug and Cosmetic Act:

4       Thus, Dotterweich and the cases which have followed reveal that in providing
5       sanctions which reach and touch the individuals who execute the corporate mission
6       – and this is by no means necessarily confined to a single corporate agent or
7       employee – the Act imposes not only a positive duty to seek out and remedy
8       violations when they occur but also, and primarily, a duty to implement measures
9       that will insure that violations will not occur.

10  United States v. Park, 421 U.S. 658, 672 (1975) (referencing United States v. Dotterweich, 320

11  U.S. 277 (1943)).  The Court's opinion in Park is instructive.  Where Congress seeks to protect

12  the public welfare and the legal standard for imposing liability is modest, the law requires entities

13  to implement measures that insure the law will not be violated.  See Morisette v. United States,

14  342 U.S. 246, 256 (1952) (referring to "public welfare offenses," the Court observed:  "The

15  accused, if he does not will the violation, usually is in a position to prevent it with no more care

16  than society might reasonably expect and no more exertion than it might reasonably exact from

17  one who assumed his responsibilities.").

18      Defendant made the business decision to promote its pornographic web sites through an

19  affiliate program.  Defendant is in a position to prevent violations of the law with no more care

20  than society might reasonably expect and no more exertion than society might reasonably exact

21  from a Defendant seeking to benefit from the marketing and promotional efforts of its affiliates in

22  an area that Congress has determined is being abused.  The public interest must weigh heavily in

23  the Court's exercise of equitable discretion in fashioning relief for Defendant's violations.  See

24  United States v. Laerdal Mfg. Corp., 73 F.3d 852, 857 (9th Cir. 1995); F.T.C. v. World Wide

25  Factors, Ltd., 882 F.2d 344, 347 (9th Cir. 1989).

1  The steps required in the proposed order are necessary to prevent Defendant from future
2  violations of the law, and are reasonable, especially in the context of a law designed to protect the
3  public, particularly children, from being exposed to unsolicited commercial email containing
4  vulgar and pornographic images.

5  DATED: December 27, 2006                   Respectfully submitted,
6
7                                             FOR PLAINTIFF UNITED STATES:
8
9                                             PETER D. KEISLER
10                                            Assistant Attorney General,
11                                            Civil Division
12                                            U.S. DEPARTMENT OF JUSTICE
13
14                                            PAUL K. CHARLTON
15                                            United States Attorney
16
17                                            JANET MARTIN
18                                            Assistant U. S. Attorney for the
19                                            District of Arizona
20                                            Bar Number 006014
21                                            405 W. Congress, Suite 4800
22                                            Tucson, AZ  85701-5040
23                                            Telephone: (520) 620-7300
24                                            Facsimile: (520) 620-7320
25
26                                            EUGENE M. THIROLF
27                                            Director
28                                            Office of Consumer Litigation
29
30                                            KENNETH L. JOST
31                                            Assistant Director
32                                            Office of Consumer Litigation
33
34                                            By:    /s/ Jeffrey Steger
35                                            Jeffrey Steger
36                                            Trial Attorney
37                                            Office of Consumer Litigation
38                                            U.S. Department of Justice
39                                            P.O. Box 386
40                                            Washington, DC  20044
41                                            Telephone: (202) 307-0047

6

1
2

Facsimile: (202) 514-8742
Jeffrey.Steger@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2006, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

    Robert S. Apgood
    CarpeLaw PLLC
    2400 NW 80th Street #130
    Seattle, WA 98117-4449

    /s/ Elizabeth Higgins