1
2
3
4
5

Robert S. Apgood
CARPELAW PLLC
2400 NW 80th Street #130
Seattle, WA 98117-4449
Telephone: 206-624-2379
Fax: 206-784-6305
rob@carpelaw.com

6
7
8

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
TUCSON DIVISION

9

UNITED STATES OF AMERICA,

10

Plaintiff,

11

v.

12

CYBERHEAT, INC., an Arizona corporation

13

14

Defendant.

No. CIV 05-0457-TUC-DCB

DEFENDANT'S MEMORANDUM IN RESPONSE TO PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF

15

16      COMES NOW the defendant, Cyberheat, Inc., and pursuant to the Order of this

17 Honorable Court on December 15, 2006, by and through its counsel, submits its

18 Opposition to Plaintiff's proposed injunctive relief.

19                 **I.**      **ARGUMENT**

20    **A.**     **Cyberheat Cannot Be Held Vicariously Strictly Liable For The**

21         **Unknown And Unforeseeable Acts Of Non-Agent, Independent**

22         **Contractors.**

23      In the parties cross-motions for summary judgment, Defendant Cyberheat argues

24 that the CAN-SPAM Act contains a *mens rea* element. In order to be held liable as an

25 "initiator" of violative emails sent by third-parties, Cyberheat must have necessarily paid

26 some form of consideration to or persuaded or prevailed upon those parties specifically to

27

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF - 1

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

Dockets.Justia.com

1    send emails on Cyberheat's behalf.  The Plaintiff argues that CAN-SPAM is a strict-

2    liability statute and that Cyberheat must be held vicariously liable for the acts of its

3    affiliates, regardless of whether Cyberheat knew of the sending of emails by the third

4    parties.  Plaintiff candidly admits that none of the emails upon which it makes its claims

5    were sent by Defendant Cyberheat, but instead were sent by third-party affiliates of

6    Cyberheat.  Assuming, *arguendo*, that Plaintiff's interpretation of the law is correct, this

7    Honorable Court must necessarily find an accepted rule of law that will allow it to

8    impose this strict liability upon Defendant Cyberheat.

9        The Third Circuit Court of Appeals provides a concise discussion on the reach of

10   liability to principals for wrongful acts by third parties in *AT&T v. Winback, et al.*

11   wherein it held:

12       An agency relationship is created when one party consents to have another
         act on its behalf, with the principal controlling and directing the acts of the
13       agent.  Depending upon the right of control capable of being exercised by
         the principal over the agent, agents are characterized either as servants or
14       independent contractors.

15
16       Servants generally are employees of the principal, and are subject to
         physical control by the principal.  An agent is a person who represents
17       another in contractual negotiations or transactions akin thereto.   A servant
         is a person who is employed to perform personal services for another in his
18       affairs, and who, in respect to his physical movements in the performance
         of the service, is subject to the other's control or right of control.   Persons
19       who render service but retain control over the manner of doing it are not
         servants.  Thus, if the employer assumes the right to control the time,
20       manner, and method of executing the work, as distinguished from the right
         merely to require certain definite results in conformity to the contract, a
21       master-servant agency relationship has been created.
22
23       If, however, the agent is not subject to that degree of physical control, but is
         only subject to the general control and direction by the principal, the agent
24       is termed an independent contractor.  Thus, all agents who are not servants
         are "independent contractors."  Moreover, all non-agents who contract to
25       do work for another are also termed "independent contractors".   For
         example, a person who contracts to build a swimming pool for another is
26
27

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF - 2

**CARPELAW** PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 · (206) 784-6305 (fax)

Case 4:05-cv-00457-DCB    Document 55    Filed 01/11/2007    Page 2 of 27

the latter's independent contractor.    There are, then, agent independent contractors and non-agent independent contractors.

Such distinctions matter because the scope of the employer's liability for the torts of its representatives depends almost exclusively on how the relationship is characterized.  If the principal is the master of an agent who is his *servant,* the fault of the agent, if acting within the scope of his employment, will be imputed to the principal by reason of *respondeat superior.*  On the other hand, the principal [generally] is not vicariously liable for the torts of the *independent contractor* if the principal did not direct or participate in them.

[W]here the agent is not a servant, the principal is not liable for the agent's negligent conduct unless the act was done in the manner authorized or directed by the principal, or the result was one authorized or intended by the principal.  The general rule ... is that an owner, employer, or contractee will not be held liable for the torts of an independent contractor or of the latter's employees committed in the performance of the contracted work.

As the New Jersey Supreme Court has explained, the independent contractor is "characterized by the attributes of self-employment and self-determination in the economic and professional sense."  Since the employer "has no right of control over the manner in which the work is to be done, it is to be regarded as the contractor's own enterprise, and he, rather than the employer is the proper party to be charged with the responsibility for preventing the risk, and administering and distributing it."

42 F.3d 1421, 1435 (1994) (citations and footnotes omitted).

Applying this sound reasoning to the facts of this case, it is abundantly clear that no master-servant relationship exists between Defendant Cyberheat and its affiliates. Cyberheat does not, and indeed cannot, subject any of its affiliates to physical control. Neither is any affiliate employed to perform personal services for Cyberheat in its affairs, nor, in respect to his physical movements in the performance of the services anticipated by the contractual relationship between Cyberheat and the affiliate, be subject to Cyberheat's control or right of control.  As such, Cyberheat cannot be held liable for the acts of its affiliates under a theory of *respondeat superior.*

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF - 3

CARPELAW PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1        The relationship between Cyberheat and its affiliates is a relationship of

2   contractor-independent contractor.  This undisputed fact is unambiguously evidenced by

3   the Topbucks' Affiliate Terms and Conditions (Exhibit I to Declaration Of Allison Vivas

4   In Support Of Defendant's First Motion For Partial Summary Judgment).  In order to

5   determine whether liability for the acts of these independent contractors extends to

6   Cyberheat, the nature of the relationship between Cyberheat and the independent

7   contractors must be examined to determine whether the affiliates are "agent independent

8   contractors," or "non-agent independent contractors."

9        Defendant Cyberheat cannot control the acts of its affiliates, nor compel them to

10  promote Cyberheat's goods and services at all.  These independent contractors are not

11  authorized to negotiate contracts for or enter into transactions with others on behalf of

12  Cyberheat.  As the evidence shows, they may not, on behalf of Cyberheat, even enter into

13  Web site subscription agreements with potential customers.  Rather, the only acts that the

14  affiliates are authorized to conduct in interaction with potential subscribers is to refer

15  them to Cyberheat's Web sites, at which time the potential subscriber deals directly with

16  Cyberheat.  Moreover, the contractual Affiliate Terms of Service between Cyberheat and

17  its affiliates *specifically disclaims* an agency relationship between the parties.[1]  Those

18  same Terms and Conditions specifically instruct affiliates that they "shall not use or

19  employ any form of mass unsolicited electronic mailings, newsgroup postings, IRC

20  postings, adware, spyware, malware marketing or any other form of 'spamming' as a

21  means of promoting Affiliate Web sites or for the purpose of directing or referring users

22  to any web sites owned, operated or controlled by CHI."[2]  Further, the affiliates were

23

24  _____

25  [1] Paragraph 10.1 reads, "Nothing contained in this Agreement shall create or be deemed to create a partnership, joint
    venture or other business combination or venture of any kind between Affiliate and CHI, its subsidiaries, affiliated

26  entities, successors or assigns; nor shall any term contained in this Agreement constitute or create any agency or
    employment relationship between Affiliate and CHI, its subsidiaries, affiliated entities, successors or assigns."

27  [2] Terms and Conditions at ¶ 6.1.

DEFENDANT'S MEMORANDUM IN RESPONSE TO              **CARPELAW PLLC**
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF  - 4        2400 NW 80th Street  #130
                                                   Seattle, Washington 98117

                                                   (206) 624-2379 (206) 784-6305 (fax)

1  authorized by Cyberheat to use its advertising banners, links, and other promotional

2  materials only on their Web sites.[3]

3

4       "A principal is subject to liability for loss caused to another by the other's reliance

5  upon a tortious representation of a servant *or other agent,* if the representation is:

6       (a) authorized;

7       (b) apparently authorized;  or

8       (c) within the power of the agent to make for the principal."

9  Restatement (Second) of Agency §  257 at 558 (cited in Prosser and Keeton, §  70, n. 70).

10      Since Cyberheat did not authorize its affiliates to use its promotional materials in

11 emails, and since Cyberheat did not authorize its affiliates to send emails on Cyberheat's

12 behalf, and since nothing in the contractual relationship provided the affiliates the power

13 to do either on behalf of Cyberheat, the only remaining possibility for extending liability

14 to Cyberheat for the acts of the affiliates is if the affiliates had the "apparent authority" to

15 send the emails on Cyberheats behalf.

16      "Apparent authority arises in those situations where the principal causes persons

17 with whom the agent deals to reasonably believe that the agent has authority" despite the

18 absence of an actual agency relationship.  *AT&T v. Winback,* 42 F.3d at 1439 (citing

19 *Barticheck v. Fidelity Union Bank/First Nat'l State,* 680 F.Supp. 144, 148-49

20 (D.N.J.1988) (applying New Jersey law)).  If the principal is responsible for the third

21 person believing that the person with whom she deals is an agent, or if the principal

22 should realize that his conduct is likely to induce such belief, then there is an agency

23 created by apparent authority and the principal will be held responsible for the torts of his

24

25 _____

26 [3] Paragraph 6.1 reads, "Affiliate shall only use and promote on Affiliate Web sites CHI approved advertising banners, links, and other promotional materials."

27

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF  - 5

**CARPELAW** **PLLC**
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379  (206) 784-6305 (fax)

1    agent.  *Roberts v. Montgomery Ward and Co., Inc.,* 729 F.2d 1462 at *3 (6th Cir.1984).

2            In this case, no evidence whatsoever indicates that Cyberheat said or did anything

3    that would reasonably cause the recipients of the emails to believe that the affiliates were

4    authorized to send emails on Cyberheat's behalf or to otherwise believe that the senders

5    of the emails would or could transact on behalf of Cyberheat..

6            The evidence in this case is clear that the relationship of Cyberheat affiliates to

7    Cyberheat is as non-agent, independent contractors.  As such, the Plaintiff's theory that

8    Cyberheat is liable for the wrongful acts of those affiliates is not supported by well-

9    established laws of agency.

10           **B.    Plaintiff's Proposed Definitions Overreach The Grasp Of The Law.**

11           Defendant Cyberheat OBJECTS to Plaintiff's Definitions to the extent that, as

12   shall be discussed more fully *infra*, they seek to expand the reach of the injunctive relief

13   sought by Plaintiff beyond the scope of existing law and to impose duties on entities not

14   parties to this lawsuit.  Generally, Cyberheat OBJECTS to Plaintiff's restatement of the

15   law *as it exists today*, without reference to the statutory codification of that law and

16   without provision for amendment to those definitions as the underlying statutory law may

17   be amended from time-to-time.  Without any such amendment provision, Defendant

18   Cyberheat could well be required to abide by an injunctive provision that has been

19   subsequently ruled unconstitutional and would be left to a Hobson's choice of either

20   abiding by the law and thereby be held in contempt for violation of an injunction, or

21   conversely, abiding by the language of the injunction, and thereby be forced to violate a

22   third-party's constitutional rights pursuant to court order.

23           Cyberheat's specific objections address Plaintiff's definitions by alphabetical

24   designation and phrase:

25           A.    "Affiliate Program" – Plaintiff's use of the phrase "or any other Internet-

26   based mechanism," as used in Plaintiff's Injunctive Provisions overly broadens the scope

27

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF - 6

**CARPELAW** PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

Case 4:05-cv-00457-DCB    Document 55    Filed 01/11/2007    Page 6 of 27

1  of Plaintiff's proposed Monitoring For Compliance injunctions, and as more fully

2  discussed *infra*, thereby violates Cyberheat's affiliates of their fundamental right to

3  privacy and procedural and substantive due process rights.

4         E.     "Defendant's Representatives" – Plaintiff's use of this definition in its

5  Prohibition Against Violating the CAN-SPAM Act, Prohibition Against Violating the

6  Adult Labeling Rule, and Record Keeping Provisions injunctions imposes injunctions on

7  entities who are not parties to this lawsuit, and as more fully discussed *infra*, thereby

8  violates those parties' of their fundamental rights to privacy and procedural and

9  substantive due process rights.

10        F.     "Document" – Plaintiff improperly attempts to redefine the plain-language

11  of Fed. R. Civ. P. 34(a) by adding the undefined and therefore ambiguous term "other

12  data compilations" to the list of inclusions and/or by misstating the language of the rule.

13        I.     "Email Campaign" – Plaintiff's definition is overly broad and thereby

14  vague for voidness.  Because Plaintiff has not defined the term "commercial email

15  message," the plain meaning of the word "commercial" in that term must be applied in

16  conjunction with Plaintiff's definition of the term "email message."[4]  Consequently,

17  Plaintiff's definition would unnecessarily include commercial correspondence in the

18  normal course of business between any "natural person or a corporation, partnership,

19  proprietorship, limited liability company, or other organization or legal entity, including

20  and association, cooperative, or agency, or other group or combination acting as an

21  entity" who may coincidentally "participate[] in Defendant's affiliate program to promote

22  Defendant's products, services, or Internet web *[sic]* sites" regardless of the method used

23  by that  "natural person or a corporation, partnership, proprietorship, limited liability

---

25  [4] Defendant Cyberheat notes that Plaintiff's Definition "H" specifically describes "Electronic mail message" and its
   synonymous term "email message," but makes no similar synonymous designation for Definition "C" describing
26  "Commercial electronic mail message."  Consequently, Defendant Cyberheat reasonably concludes that
   "commercial email message" is not synonymous to "Commercial electronic mail message" and is purposefully not
27  made so by Plaintiff.

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF - 7

**CARPELAW** PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 (206) 784-6305 (fax)

1    company, or other organization or legal entity, including and association, cooperative, or

2    agency, or other group or combination acting as an entity" to perform the promotion.  As

3    more fully described *infra*, Plaintiff's use of this definition in its Monitoring For

4    Compliance injunctions imposes injunctions on entities who are not parties to this

5    lawsuit, and as more fully discussed *infra*, thereby violating those parties' of their

6    fundamental rights to privacy and procedural and substantive due process rights.

7           J.      "Initiate" - Plaintiff's definition is overly broad and thereby vague for

8    voidness.  Because Plaintiff has not defined the term "commercial email message," the

9    plain meaning of the word "commercial" in that term must be applied in conjunction with

10   Plaintiff's definition of the term "email message."  Consequently, Plaintiff's definition

11   would unnecessarily include commercial correspondence in the normal course of

12   business between any "natural person or a corporation, partnership, proprietorship,

13   limited liability company, or other organization or legal entity, including and association,

14   cooperative, or agency, or other group or combination acting as an entity" who may

15   coincidentally "participate[] in Defendant's affiliate program to promote Defendant's

16   products, services, or Internet web *[sic]* sites" regardless of the method used by that

17   "natural person or a corporation, partnership, proprietorship, limited liability company, or

18   other organization or legal entity, including and association, cooperative, or agency, or

19   other group or combination acting as an entity" to perform the promotion.  As more fully

20   described *infra*, Plaintiff's use of this definition in its Monitoring For Compliance

21   injunctions imposes injunctions on entities who are not parties to this lawsuit, thereby

22   violating those parties' of their fundamental rights to privacy and procedural and

23   substantive due process rights.  Moreover, Plaintiff's definition is merely a *partial*

24   restatement of portions of 15 U.S.C. § 7702(9), but fails to include Congress' well-

25   reasoned exclusions stated in 15 U.S.C. § 7702(9) and enumerated in 15 U.S.C.

26   § 7702(17), and the Federal Trade Commission's ("FTC") rule for such exclusions

27

DEFENDANT'S MEMORANDUM IN RESPONSE TO                    **CARPELAW PLLC**
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF - 8              2400 NW 80th Street  #130
                                                        Seattle, Washington 98117
                                                        (206) 624-2379 · (206) 784-6305 (fax)

1    codified in 16 CFR 316.3(b)-(c). As such, Cyberheat restates its general objection to the

2    inclusion of definitions already defined by statute.

3         K.    "Person" - Plaintiff's use of this definition in other Definitions, Monitoring

4    For Compliance, Compliance Monitoring, and Compliance Reporting By Defendant

5    injunctions imposes injunctions on entities who are not parties to this lawsuit and, as

6    more fully discussed *infra*, thereby violates those parties' of their fundamental rights to

7    privacy and procedural and substantive due process rights.

8         L.    "Procure" - Plaintiff's definition is overly broad and thereby vague for

9    voidness. Because Plaintiff has not defined the term "commercial email message," the

10    plain meaning of the word "commercial" in that term must be applied in conjunction with

11    Plaintiff's definition of the term "email message." Consequently, Plaintiff's definition

12    would unnecessarily include commercial correspondence in the normal course of

13    business between any "natural person or a corporation, partnership, proprietorship,

14    limited liability company, or other organization or legal entity, including and association,

15    cooperative, or agency, or other group or combination acting as an entity" who may

16    coincidentally "participate[] in Defendant's affiliate program to promote Defendant's

17    products, services, or Internet web *[sic]* sites" regardless of the method used by that

18    "natural person or a corporation, partnership, proprietorship, limited liability company, or

19    other organization or legal entity, including and association, cooperative, or agency, or

20    other group or combination acting as an entity" to perform the promotion. As more fully

21    described *infra*, Plaintiff's use of this definition in its Monitoring For Compliance

22    injunctions imposes injunctions on entities who are not parties to this lawsuit, thereby

23    violating those parties' of their fundamental rights to privacy and procedural and

24    substantive due process rights. Moreover, Plaintiff's definition is merely a *partial*

25    restatement of portions of 15 U.S.C. § 7702(12), and Cyberheat restates its general

26    objection to the inclusion of terms already defined by statute.

27

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF - 9

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 · (206) 784-6305 (fax)

1    M.    "Recipient" - Plaintiff's definition is overly broad and thereby vague for

2  voidness.  Because Plaintiff has not defined the term "commercial email message," the

3  plain meaning of the word "commercial" in that term must be applied in conjunction with

4  Plaintiff's definition of the term "email message."  To the extent that Plaintiff's definition

5  is merely a restatement of portions of 15 U.S.C. § 7702(14), Cyberheat restates its

6  general objection to the inclusion of terms already defined by statute.

7    N.    "Sender" - Plaintiff's definition is overly broad and thereby vague for

8  voidness.  Because Plaintiff has not defined the term "commercial email message," the

9  plain meaning of the word "commercial" in that term must be applied in conjunction with

10  Plaintiff's definition of the term "email message."  To the extent that Plaintiff's definition

11  is merely a restatement of portions of 15 U.S.C. § 7702(16), Cyberheat restates its

12  general objection to the inclusion of terms already defined by statute.

13    O.    "Sexually Explicit Conduct" – Plaintiff's definition is an apparent

14  restatement of the definition of that term as it is *currently* codified in 28 U.S.C. § 2256 as

15  provided in 15 U.S.C. 7704(d)(4).  To the extent that Plaintiff's definition is merely a

16  restatement of portions of 18 U.S.C. § 2256, Cyberheat restates its general objection to

17  the inclusion of terms already defined by statute.

18    P.    "Sexually Oriented Material" - Plaintiff's definition is an apparent

19  restatement of the definition of that term as it is *currently* codified in 15 U.S.C.

20  § 7704(d)(4).  To the extent that Plaintiff's definition is merely a restatement of portions

21  of 15 U.S.C. § 7704(d)(4), Cyberheat restates its general objection to the inclusion of

22  terms already defined by statute.

23    Q.    "Valid Physical Postal Address" - Plaintiff's definition is a modification of

24  15 U.S.C. § 7704(a)(5)(A)(iii) and Plaintiff asks this Honorable Court to "legislate from

25  the bench" by imposing a limitation not authorized by Congress, to wit: limiting

26  Cyberheat's ability to contract with affiliates who serendipitously do not have a "street

27

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF - 10

CARPELAW PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 – (206) 784-6305 (fax)

1   address" (but may have a "valid physical postal address") and who are not situated in the

2   United States or one of its territories .  To the extent that Plaintiff's definition is merely a

3   restatement of portions of 15 U.S.C. § 7704(a)(5)(A)(iii), Cyberheat restates its general

4   objection to the inclusion of terms already defined by statute.  Cyberheat further

5   OBJECTS to the limitation imposed by Plaintiff's definition on the basis that it violates

6   Cyberheat's substantive due process rights and imposes injunctions on entities who are

7   not parties to this lawsuit and, as more fully discussed *infra*, thereby violates those

8   parties' of their fundamental rights to privacy and procedural and substantive due process

9   rights.

10          **C.**      **The Balancing Of Equities And Costs.**

11          Defendant Cyberheat has approximately 50,000 webmaster/affiliates that belong

12  to its affiliate program.  Deposition of Allison Vivas at 13:11-12 (Relevant pages

13  attached hereto as Exhibit "A" and by this reference thereby made a part hereof).  On any

14  given month, approximately 10,000 of those webmasters refer potential subscribers to

15  Cyberheat Web sites. *Id.* at 13:20 – 14:1.  However, in all of the 280 electronic mail

16  messages produced by Plaintiff in discovery, the revenue identification numbers in those

17  messages revealed that they contained only fourteen (14) unique "revid" codes,[5] two of

18  which were internal codes used exclusively by Defendant Cyberheat.  Consequently, all

19  of the other messages resulted from transmissions by ***only twelve (12)*** of Defendant

20  Cyberheat's webmasters.  As such, the relevant percentage of Cyberheat's webmasters

21  who were promoting Cyberheat Web sites by use of electronic mail messages was an

22  ***infinitesimal 2/100 of one-percent*** of the registered affiliates (12/50000 = .0002).

23          Nevertheless, Plaintiff asks this Honorable Court to compel "each and every

24  person who participates in Defendant's affiliate program to provide information to

25  Defendant" as enumerated in Plaintiff's proposed injunctions in section III, *regardless of*

26  ───────────────

27  [5] A "revid" code is a unique number assigned to a Cyberheat webmaster when he registers as a Cyberheat affiliate.

DEFENDANT'S MEMORANDUM IN RESPONSE TO          **CARPELAW** ᴾᴸᴸᶜ
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF  - 11          2400 NW 80ᵗʰ Street  #130
                                                    Seattle, Washington 98117

                                                    (206) 624-2379 • (206) 784-6305 (fax)

1    *whether those affiliates' activities implicate the CAN-SPAM Act or the Adult Labeling*

2    *Rule.*

3         Injunctive relief is available to a party who demonstrates "(1) that it has suffered

4    an irreparable injury; (2) that remedies available at law, such as monetary damages, are

5    inadequate to compensate for that injury; (3) that, considering the balance of hardships

6    between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the

7    public interest would not be disserved by a permanent injunction." *eBay, Inc. v.*

8    *MercExchange, LLC*., 126 U.S. 1837, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006).

9         In the case at bar, although Plaintiff *may* have demonstrated that it has suffered an

10   irreparable injury, it has *not* demonstrated that the irreparable injury was caused by

11   Defendant Cyberheat.  In fact, as observed *supra*, Plaintiff has candidly admitted that

12   none of the electronic mail messages sent by Defendant Cyberheat violated the CAN-

13   SPAM Act or the Adult Labeling Rule.

14        Even if assuming *arguendo* that Cyberheat *had* sent the violative messages, an

15   adequate remedy at law exists to Plaintiff, to wit: monetary damages of no insignificant

16   amount as provided by the Federal Trade Commission Act.  15 U.S.C. § 45(m).

17        As discussed more fully *infra* in section E, the burden and cost to Cyberheat to

18   comply with the proposed injunctions is onerous.  The proposed injunctions would

19   require Cyberheat to significantly change its business model in order to conduct detailed

20   monitoring of the webmasters' activities, gather and record detailed personal information

21   on those webmasters and their internal business conduct and structure, gather and record

22   detailed information from its consumers, perform the investigatory functions otherwise

23   relegated by Congress to the Federal Trade Commission, create detailed records and

24   supply detailed reports on each and every business transaction between Cyberheat and

25   each of its webmasters to the Federal Trade Commission.

26

27

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF - 12

CARPELAW PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1    Defendant Cyberheat can ascertain no purpose (and Plaintiff offers no justification

2  for) these costly and burdensome activities that furthers the stated goal of the CAN-

3  SPAM Act to ease the burden of e-mail servers.  Rather, the only benefit to Plaintiff that

4  Defendant Cyberheat can envision is that these costly and burdensome impositions on

5  Defendant Cyberheat will facilitate Plaintiff's efforts in legal pursuit of Cyberheat's

6  webmasters should Plaintiff determine that a webmaster has violated CAN-SPAM or the

7  Adult Labeling Rule at some future time.  Here, the hardships fall strongly on Defendant

8  Cyberheat and the little to no benefit afforded Plaintiff by the injunctions does not in any

9  fashion support the imposition of the proposed injunctions.

10    Moreover, the public interest will be significantly disserved by the burden that

11  Plaintiff's proposed injunctions impose on the fully protected free speech afforded by the

12  First Amendment to the U.S. Constitution.  The true public interest is in the continuation

13  of relatively unfettered freedom of speech and expression.  Plaintiff offers no argument

14  of, and Defendant Cyberheat can envision no for, a compelling government interest that

15  would be served by the imposition of Plaintiff's proposed injunctions.  As is more fully

16  discussed *infra*, Plaintiff's requested injunctive relief inordinately burdens free speech

17  and expression by inhibiting the lawful expression of that speech.

18    "Permanent injunctive relief is warranted where . . . defendant's past and present

19  misconduct indicates a strong likelihood of future violations." *Orantes-Hernandez v.*

20  *Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990) (citations omitted). "In seeking a

21  permanent injunction, the moving party must convince the court that relief is needed:

22  'The necessary determination is that there exists some cognizable danger of recurrent

23  violation, something more than the mere possibility which serves to keep the case alive.'"

24  *Cummings v. Connell*, 316 F.3d 886, 898 (9th Cir. 2003) (quoting *United States v. W.T.*

25  *Grant Co.*, 345 U.S. 629, 633, 73 S. Ct. 894, 97 L. Ed. 1303 (1953)). In making this

26  determination, the court may consider "the degree of scienter involved; the isolated or

27

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF  - 13

**CARPELAW** PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 · (206) 784-6305 (fax)

1  recurrent nature of the infraction; the defendant's recognition of the wrongful nature of

2  his conduct; the extent to which the defendant's professional and personal characteristics

3  might enable or tempt him to commit future violations; and the sincerity of any

4  assurances against future violations." *United States v. Laerdal Mfg. Corp.*, 73 F.3d 852,

5  854-855 (9th Cir. 1995).

6       Plaintiff's tortured readings of the terms "procure" and "initiate" as defined in the

7  CAN-SPAM Act are the only vehicles that lead it down its circuitous path in its attempt

8  to hold Defendant Cyberheat liable for the unknown and unauthorized acts of non-agent

9  independent contractors.  Plaintiff enthusiastically admits that Cyberheat's "past and

10  present" direct conduct do not violate the CAN-SPAM Act or the Adult Labeling Rule.

11  Neither does Plaintiff offer anything other than a supposition of the "mere possibility"

12  that Cyberheat *may* commit some offense in the future.  Rather, Cyberheat's *actual*

13  conduct in the past shows that it *did* terminate affiliates who violated the CAN-SPAM

14  Act.  Moreover, as evidenced by Cyberheat's express Terms and Conditions *forbidding*

15  violation of the CAN-SPAM Act and the Adult Labeling Rule by its affiliates, and by

16  Cyberheat's own termination of sending even the *lawful and conforming* electronic mail

17  messages it did send, Defendant Cyberheat shows that, not only was it *not* tempted in the

18  past to commit a violation of the Act or the Rule, but further that it will not somehow

19  decide to do so in the future.

20       Consequently, it is abundantly clear that permanent injunctive relief is not

21  warranted in this case.

22       **D.**    **The Nature Of Plaintiff's Injunctions.**

23       Plaintiff's proposed injunctions are of two types: "prohibitory"; and "mandatory."

24  Whereas a "prohibitory" injunction simply proscribes an act by the enjoined party, a

25  "mandatory" injunction compels the enjoined party to affirmative perform the act.

26  Although both mandatory and prohibitory injunctions are governed by the same criteria,

27

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF - 14

**CARPELAW** PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1    courts are generally more cautious about issuing mandatory injunctions that would *alter*

2    *the status quo* by commanding some positive act.  Such relief is "subject to heightened

3    scrutiny and should not be issued unless the facts and law *clearly favor the moving*

4    *party.*"  *Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993)

5    (emphasis added).

6         Plaintiff's proposed "injunction" for a Civil Penalty is a legal remedy, and

7    Plaintiff's proposed "injunctions" for Severability and Retention of Jurisdiction are not

8    equitable remedies.

9         Plaintiff's proposed prohibitory injunctions (Prohibition Against Violating the

10   CAN-SPAM Act and Prohibition Against Violating the Adult Labeling Rule) are nothing

11   more that restatements of statutory proscriptions.  Further, Plaintiff's proposed mandatory

12   injunctions (Monitoring For Compliance, Compliance Monitoring, Compliance

13   Reporting by Defendant, Record Keeping Provisions[6], Distribution of Order By

14   Defendant, and Acknowledgement of Receipt of Order by Defendant) do not work to

15   preserve a state *in statu quo*, nor restore conditions to a state *in statu quo ante*.  Rather,

16   the seek to compel Defendant Cyberheat to conduct onerous tasks and to take complex

17   affirmative steps to create an entirely new state of conditions and conduct that are not, in

18   most part, provided by the CAN-SPAM Act nor the Adult Labeling Rule.

19        In actuality, the net effect of Plaintiff's proposed injunctions results in another

20   type of injunction known as a "structural" injunction.  Generally, a structural injunction

21   attempts to remodel an existing social or political institution to bring it into conformity

22   with constitutional demands.  Structural injunctions differ from traditional injunctions,

23   which focus on the rights of two parties vis-à-vis each other, and tend to involve wider

24   interests of society, not only in the sense that the court may consider those interests in

25

26   ─────────────────────

27   [6] While seemingly offered as prohibitory injunctions, Plaintiff's "Monitoring For Compliance" and "Record Keeping Provisions" are phrased in the double-negative and are, in fact, mandatory injunctions.

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF  - 15

**CARPELAW** PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 • (206) 784-6305 (fax)

1    fashioning remedies, but also in the sense that the interests of third parties will be

2    affected in substantial ways by affirmative injunctive relief.

3         While traditional litigation attempts to provide a remedy that correlates to the right

4    asserted and enforce that right, structural injunctions go beyond this kind of right-remedy

5    correlation.  Indeed, remedial orders of a structural nature typically provide a remedy that

6    goes beyond the right in question.  Consequently, restructuring injunctions are typically

7    complex and invasive.  They are likely to involve the court in tasks less traditionally

8    considered to be non-judicial, e.g., less about rights and duties and more about

9    management    For this reason, structural injunctions should be limited in application as

10   they are now, to wit: only as public law remedies for serious and pervasive rights

11   violations.  *See generally,* Chayes, *The Role of the Judge in Public Law Litigation*, 89

12   Harv.L.Rev. 1281 (1976).   Where the discrepancy between the scope of the right and the

13   scope of the wrong is relatively small, so too must the intrusion upon the defendant be

14   small for a court to consider the imposition of structural injunctive relief.  Consequently,

15   when the remedy is so different that it does not address the wrong done by the defendant,

16   but rather reaches to the point where the remedy reaches a wrong that was not done by

17   the defendant at all, the injunctive relief sought becomes unacceptable, party because it is

18   too intrusive [*Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)], partly

19   because it opens up too much discretion [Schoenbrod, *The Measure of the Injunction: A*

20   *Principle to Replace Balancing the Equities and Tailoring the Remedy*, 72 Minn.L.Rev.

21   627 (1988); Fletcher, *The Discretionary Constitution: Institutional Remedies and Judicial*

22   *Legitimacy*, 91 Yale L.J. 635, 679-83 (1982)], and partly because it is unacceptable in

23   principle to force a defendant to do more than rectify his wrong [*Swann v. Charlotte-*

24   *Mecklenberg Bd. Of Educ.*, 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554, 566

25   (1971)].  Moreover, by asking for issuance of structural injunctive relief, Plaintiff ignores

26   the separation of powers doctrine and asks this Honorable Court to inject itself too much

27

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF  - 16

**CARPELAW** PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 · (206) 784-6305 (fax)

1  into political or policy decisions that should be left to the legislative branch.  *See*,

2  Mishkin, *Federal Courts as State Reformers*, 23 Wash. & L.L.Rev. 949, 966 (1978).

3       The Plaintiff candidly admits that *none* of the electronic mail messages that

4  originated or were transmitted by Defendant Cyberheat violated the CAN-SPAM Act or

5  the Adult Labeling Rule.  United States Response to Defendant's Motion For Partial

6  Summary Judgment (Dkt. #39), ¶ V at 10:1-6.  Nevertheless, Plaintiff doggedly pursues a

7  course of litigation that improperly attempts not only to hold the Defendant liable for the

8  wrongful and unauthorized acts of non-agent independent contractors, but additionally

9  seeks to compel Defendant Cyberheat to, in essence, police the actions of those parties at

10  the significant burden of time and expense to Cyberheat, and all without authority or

11  compulsion of statutory law or regulation.  Moreover, even if Cyberheat *had* committed

12  *past* wrongs, Plaintiff must nevertheless show that there is a real and immediate threat

13  that Cyberheat will commit *future* wrongs.  *City of Los Angeles v. Lyons*, 461 U.S. 95,

14  102, 103 S.Ct. 1660, 1665 (1983)("Past exposure to illegal conduct does not in itself

15  show a present case or controversy regarding injunctive relief").  Some irreparable injury

16  must be threatened; otherwise, injunctive relief must be denied.  *Local Union No. 884 v.*

17  *Bridgestone/Firestone, Inc.*, 61 F.3d 1347, 1355 (8th Cir. 1995).

18      **E.**    **The Proposed Injunctions Violate The U.S. Constitution And The First**

19             **And Fifth Amendments Thereto.**

20      **1.**    **Procedural Due Process**

21       The Due Process Clause of the Fifth Amendment of the United States Constitution

22  requires that parties in interest be given an opportunity to be heard after due notice before

23  they may be bound by a court order.  *Snow v. Great Western Bank*, 201 B.R. 968, 971-72,

24  29 Bankr.Ct.Dec. 1174 (1996), citing *Fuentes v. Shevin*, 407 U.S. 67, 81-82, 97 S.Ct.

25  1983, 32 L.Ed.2d 556 (1972).  For more than a century, the central meaning of procedural

26  due process has been clear: parties whose rights are to be affected are entitled to be heard;

27

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF  - 17

**CARPELAW** PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 · (206) 784-6305 (fax)

Case 4:05-cv-00457-DCB   Document 55   Filed 01/11/2007   Page 17 of 27

1  and in order that they may enjoy that right they must first be notified. *Fuentes* at 80,

2  citing *Baldwin v. Hale*, 1 Wall. 223, 233, 17 L.Ed. 531; *Winsdor v. McVeigh*, 93 U.S.

3  274, 23 L.Ed. 914; *Hovey v. Elliot*, 167 U.S. 4098, 17 S.Ct. 841, 42 L.Ed. 215; *Grannis v.*

4  *Oredeam*, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363.

5         Adequate notice, the heart of due process, must be reasonably calculated to apprise

6  the parties of a pending action and afford them an opportunity to present their objections.

7  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed.

8  865 (1950).  Specific notice requirements of due process may vary with the

9  circumstances and entail the weighing of competing interests, including the private

10  interest affected, the risk of erroneous deprivation through current practices, and the

11  government's interests.  *Mathews v. Eldridge*, 424 U.S. 319, 334-35, 96 S.Ct. 893, 47

12  L.Ed.2d 18 (1976).

13         In the case at hand, the Court does not need to analyze any competing interests in

14  determining that the government's proposed injunctions violate the Due Process Clause

15  of the United States Constitution.  The government's proposed injunctions necessarily

16  enjoin persons and entities that are not parties to this lawsuit (primarily

17  webmasters/affiliates) and have not been provided any notice of being subject to a court

18  order.

19         **2.    Substantive Due Process**

20         The substantive component of the Due Process Clause of the United States

21  Constitution protects individual liberty against certain government actions regardless of

22  the fairness of the procedures used to implement them, providing heightened protection

23  against government interference with fundamental rights and liberty interests.  *See Troxel*

24  *v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); and *Collins v.*

25  *Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

26

27

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF - 18

CARPELAW PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 · (206) 784-6305 (fax)

1    If governmental action burdens a person's exercise of a fundamental right, the

2  government's justification for the action is subject to a "strict scrutiny" review, requiring

3  governmental action to be narrowly tailored to the achievement of a compelling

4  government interest.  *See Williams v. King*, 420 F. Supp.2d 1224, 1232 (N.D. Ala 2006),

5  *citing Roe v. Wade*, 410 U.S. 113, 155, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

6    In determining whether the right implicated by the government action is

7  fundamental, the Court performs an analysis requiring careful description of the asserted

8  fundamental right and determines whether the right as described is among those

9  fundamental interests which are objectively deeply rooted in the "Nation's history and

10  tradition, and implicit in the concept of ordered liberty, such that neither liberty nor

11  justice would exist if they were sacrificed."  *Washington v. Gluckaberg*, 521 U.S. 702,

12  720-21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997).  If the initial inquiry is answered

13  affirmatively, the government action is subjected to strict scrutiny, requiring (1) the

14  action to promote a compelling and legitimate governmental interest or purpose and (2)

15  the action to be narrowly tailored to the achievement of that interest.  *Id.*

16    Squarely at issue in the case at hand is the long protected First Amendment right

17  to free speech.  The injunctions proposed by the United States unequivocally infringe

18  Cyberheat's First Amendment right to free speech.  The proposed injunctions' main

19  effect is to create and maintain a severe burden on Cyberheat's ability to present First

20  Amendment protected material to adults throughout the country and the world.  This

21  limitation is not imposed by law on Cyberheat's competitors.

22    Virtually all persons that observe and read Cyberheat's constitutionally protected

23  material do so at the urging of Cyberheat's webmasters/affiliates.  These webmasters

24  direct Internet traffic to Cyberheat's Web sites by disseminating, with legal license,

25  Cyberheat's material in the form of banner ads, pop-ups, pop-unders, hyperlinks, and in

26  the very rare historical occasion, e-mails.  As the proposed injunctions impose upon *all*

27

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF - 19

**CARPELAW** PLLC
2400 NW 80th Street #130
Seattle, Washington 98117
(206) 624-2379 · (206) 784-6305 (fax)

1   affiliates, regardless of the manner in which the affiliate directs Internet traffic to

2   Cyberheat, the injunctions serve to regulate and burden the dissemination of Cyberheat's

3   materials regardless of the time, place, and manner of the dissemination of the

4   constitutionally protected material.

5          The enormous and burdensome identification data collection of Cyberheat's

6   affiliates likely will result in the severe reduction, if not complete cessation, of the

7   dissemination of Cyberheat's materials over the Internet.  Affiliates would cease to

8   contract with Cyberheat should they be required to provide the identification

9   documentation and business structure and operations infromation to Cyberheat, while

10  Cyberheat's competitors do not require the same.

11         Sexual expression, such as that which is disseminated by Cyberheat, which is

12  indecent, but not obscene, is protected by the First Amendment.  *Reno v. American Civil*

13  *Liberties Union,* 521 U.S. 844, 874-75, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997), *citing*

14  *Sable Communications of Cal., Inc. v. FCC,* 492 U.S. 115, 126, 109 S.Ct. 2829, 106

15  L.Ed.2d 93 (1989).  Even in the context of commercial speech, the government may only

16  regulate that which is false, deceptive, or misleading, or is related to illegal behavior.  *See*

17  *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S.

18  748, 771-72, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Pittsburgh Press Co. v. Human*

19  *Relations Comm'n*, 413 U.S. 376, 388, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973); *and Carey*

20  *v. Population Services International*, 431 U.S. 678, 700-01, 97 S.Ct. 2010, 52 L.Ed.2d

21  675 (1977).

22         When the government requests action that presents limitations on the speech of

23  one particular party or group, as in the context of injunctions, the Court, in deciding

24  whether strict scrutiny of the action is required, must necessarily determine whether the

25  requested action is content neutral.  *Madsen v. Women's Health Center, Inc.*, 512 U.S.

26  753, 762-63, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994).  The principle inquiry in

27

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF - 20

CARPELAW PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1   determining content neutrality is whether the government has regulated speech without

2   reference to its content.  *Id.*, citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109

3   S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989).  In determining whether to examine requested

4   injunctive relief under the strictest standard of scrutiny, the Court must look to the

5   government's purpose as the threshold consideration.  *Madsen* at 763.

6        Government action is "content neutral" only if the regulation is justified without

7   reference to the content of the regulated speech and serves a purpose unrelated the

8   expression's content.  *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 293-

9   95, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984).  The government may not regulate speech

10  based on hostility or favoritism towards the underlying message expressed.  *R.A.V. v. St.*

11  *Paul*, 505 U.S. 377, 386, 112 S.Ct. 2538, 120 L.Ed.2d 881 (1989).

12       Injunctions are remedies imposed when there are violations, or threatened

13  violations, of a legislative or judicial decree and carry greater risks of censorship and

14  discriminatory application than do general ordinances.  As a result, even more stringent

15  application of First Amendment principles should be applied in review of such

16  injunctions.  *Madsen v. Women's Health Center, Inc.,* 512 U.S. 753, 765, 114 S.Ct. 2516,

17  129 L.Ed.2d 593 (1994).

18       The purpose of the government's requested injunctions is unequivocally to limit

19  the expression of sexually oriented materials.  This purpose is evident in the claims

20  asserted by the government, alleging violations of the Controlling the Assault of Non-

21  Solicited Pornography and Marketing Act and the Adult Labeling Rule.  This purpose is

22  further evidenced in the government's proposed injunctions, defining "sexually oriented

23  material" and enjoining the transmissions of certain messages containing sexually

24  oriented material.[7]

25

26  [7] Cyberheat agrees with the assertion that commercial electronic mail sent in violation of the CAN-SPAM Act of

27  2003 should be regulated.  Cyberheat disagrees with the assertion that liability exists in this case, thereby justifying

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF  - 21

**CARPELAW** PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 – (206) 784-6305 (fax)

1    The injunctions proposed by the government are not content-neutral, but rather

2  serve to directly regulate and limit the dissemination of protected speech.  As the

3  injunctions proposed by the government seek to enjoin and limit Cyberheat's protected

4  right of free speech, that being sexual expression, the injunctions must be reviewed with

5  the strictest of scrutiny, determining whether the regulation is necessary to serve a

6  compelling government interest and that the regulation is narrowly drawn to achieve that

7  end.  *See Carey v. Brown*, 447 U.S. 455, 461, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980).

8    Should the proposed injunctions be deemed content-neutral, close attention must

9  still be paid to the fit between the objectives of an injunction and the restrictions it

10  imposes on speech.  The governing standard is whether the challenged provisions burden

11  no more speech than necessary to serve a significant government interest.  *Madsen* at

12  765-66, *citing Calfano v. Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2558, 61 L.Ed.2d 176

13  (1979).

14    The stated government interest in the CAN-SPAM Act is the reduction of costs

15  and burdens spam imposes on the e-mail system.  15 U.S.C. § 7701(a).  The "Adult

16  Labeling Rule" is a federal regulation instituted by the F.C.C. in Part 316, Title 16 Code

17  of Federal Regulations, Rule Implementing the CAN-SPAM Act of 2003.  *See* 16 C.F.R.

18  316.3.  Therefore, the purpose of the Adult Labeling Rule must the same of the CAN-

19  SPAM Act.

20    Assuming *arguendo* that the statutory purpose of the CAN-SPAM Act furthers a

21  *compelling* government interest, [8] the proposed injunctions are hardly tailored to the

22  purpose of the Act to "reduce the costs and burdens of spam on the e-mail system."

23  _____

24  the imposition of any injunctions, and disagrees that the proposed injunctions are narrowly tailored to the purpose of
the CAN-SPAM Act.

25  [8] 15 U.S.C. §7701(b)(1) actually states:
(b) Congressional Determination of Public Policy.  On the basis of the findings in subsection (a), Congress

26  determines that –
    (1) there is a *substantial* government interest in regulation of commercial electronic mail on a nationwide

27    basis.  (Emphasis added.)

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF  - 22

**CARPELAW** ^PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)

1    Cyberheat has 50,000 webmaster/affiliates, with approximately 10,000 active in

2    any given month.  Of these 50,000 affiliates, the government has discovered evidence of

3    *only twelve (12)* that have sent e-mails allegedly in violation of the CAN-SPAM Act.  In

4    fact, e-mail is no longer permitted as a medium by Cyberheat's affiliates to disseminate

5    material or information in order to direct Internet users to Cyberheat's Web sites.

6    The injunctive terms proposed by the government are not specific to the

7    transmission of e-mails, or to contractual relationships with those few affiliates that may

8    utilize e-mails.  Rather, the proposed injunctions govern Cyberheat and all 50,000

9    Cyberheat affiliates regardless of whether e-mails are utilized.  The only purpose of such

10   expansive injunctive terms is to burden the *material* that is disseminated by Cyberheat's

11   affiliates.

12   The gap between the actions by non-agent independent contractors of Cyberheat

13   and the expansive breadth of the proposed injunctions is so wide that any attempt to

14   bridge the gap with a "narrowly tailored" view of the injunctive terms is, at best,

15   intellectually dishonest.

16   The government cannot justify the proposed injunctions by asserting, much less

17   believing, that they are actually tailored to promote the true purpose of the CAN-SPAM

18   Act.  Rather, the government is using the CAN-SPAM Act to change or alter the

19   dissemination of certain and specific constitutionally protected speech over the Internet.

20   The government is attempting to do so absent the checks and balances of legislation and

21   in the hope of "flying under the radar" of constitutional challenge, forcing most parties to

22   cave under the costs of litigation and stipulating to such outrageous and unconstitutional

23   injunctive terms.  To date, many defendants have been economically forced to fall into

24   line.

25   Additionally, the cost and burden imposed upon Cyberheat are not justified by the

26   stated purpose of the injunctions and the requirement that such injunctions be narrowly

27

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF  - 23

**CARPELAW** PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 • (206) 784-6305 (fax)

1    tailored to such purpose.  Such burden and costs include: (1) serving all 50,000 affiliates

2    with a copy of the order; (2) requesting information from all 50,000 affiliates; (3)

3    recording information from all 50,000 affiliates; (4) tracking information from all 50,000

4    affiliates; (5) tracking entity formation information of all 50,000 affiliates; and (6) the

5    loss of affiliate business as a direct result of requiring such information.  Such

6    requirements are quite expensive and burdensome, especially balanced against the 12

7    affiliates the government has identified as sending allegedly violative e-mails.

8                                    **II.    CONCLUSION**

9          The senders of the emails that the Plaintiff claims violate the CAN-SPAM Act and

10   the Adult Labeling Rule are non-agent independent contractors.  Assuming *arguendo* that

11   the emails in fact violate the CAN-SPAM Act and/or the Adult Labeling Rule, by virtue

12   of the fact that those messages were sent without the knowledge or consent of Cyberheat,

13   the well-established laws of agency prohibit Cyberheat from being held liable under any

14   theory.  Consequently, this Honorable Court may dispense with any consideration of

15   whether to impose the injunctive relief sought by the Plaintiff.

16         If, however, this Honorable Court does conclude that Cyberheat may be held liable

17   for the acts of its non-agent independent contractors, Plaintiff offers no explanation of

18   (and Defendant Cyberheat cannot divine) how the injunctive terms proposed by the

19   Plaintiff right a past wrong or assure that no possible future wrong will be committed by

20   Cyberheat.  Rather, the only reasonable conclusion that can be had in considering the

21   proposed terms is that the mandatory injunctions for Monitoring For Compliance,

22   Compliance Monitoring, Compliance Reporting by Defendant, and Record Keeping

23   Provisions are intended to compel Cyberheat to conduct the investigation and policing of

24   third parties solely for the benefit of the Plaintiff should the Plaintiff desire to pursue

25   those third parties for any wrong doing they may commit in the future.

26

27

DEFENDANT'S MEMORANDUM IN RESPONSE TO
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF  - 24

**CARPELAW** PLLC
2400 NW 80th Street  #130
Seattle, Washington 98117
(206) 624-2379 · (206) 784-6305 (fax)

1    Since only twelve out of 50,000 of Cyberheat's affiliates were responsible for the

2    initiation and sending of the emails that the Plaintiff alleges violate the CAN-SPAM Act

3    and the Adult Labeling Rule,[9] there exists no reasonable rationale how the onerous

4    monitoring and reporting of webmasters who do not utilize email to promote Cyberheat's

5    Web sites furthers the legislative goal of Congress to reduce the costs burden of spam on

6    e-mail servers.  Moreover, Plaintiff's proposed injunctions for reporting also do not

7    further Congress' goal.  Rather, they serve only to allow the Plaintiff to pry into the

8    minutia of the private business affairs of Defendant Cyberheat and its affiliates.

9    As previously observed, the minimal benefit that the Plaintiff may derive from

10    obtaining the detailed information it seeks from Cyberheat and its representatives and

11    affiliates is immensely outweighed by the cost and burden that the injunctions would

12    place on Cyberheat.  In particular, the mandatory injunctions Plaintiff seeks, while doing

13    little-to-nothing to further Congress' goal, are extensive in their reach.  As such, the

14    benefit-burden analysis slams the scales down in favor of Cyberheat.

15    As more fully described *supra*, Plaintiff's attempts to impose the injunctive terms

16    upon Cyberheat's webmasters by requiring Cyberheat to serve a copy of the Order on

17    those affiliates violates those third parties' procedural due process rights.  This is

18    particularly apparent where the proposed injunctions impose extensive reporting by those

19    affiliates on their business structures and identities and activities of their principals,

20    employees, sub-affiliates and agents.

21    Plaintiff's proposed injunctions wreak havoc on Cyberheat and its affiliates

22    substantive due process rights.  Plaintiff apparently has little regard for the constitutional

23    rights and protections to which Cyberheat and its affiliates are entitled.  Plaintiff's

24    proposed mandatory injunctions are clearly not aimed at "reduc[ing] the costs and

25

26    _____

27    [9] Cyberheat disputes this allegation and is prepared to rebut at trial with evidence that most, if not all, of the
messages were sent to recipients who had provided prior affirmative consent to the senders to receive them

DEFENDANT'S MEMORANDUM IN RESPONSE TO          **CARPELAW** <sup>PLLC</sup>
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF - 25      2400 NW 80th Street  #130
                                                  Seattle, Washington 98117
                                                  (206) 624-2379 - (206) 784-6305 (fax)

1    burdens of spam on the e-mail system," but inarguably *are* aimed at significantly

2    burdening the lawful dissemination of specific, fully protected speech.  The proposed

3    injunctions are *not* content-neutral and *must* be subjected to the strictest scrutiny.  In

4    doing so, no reasonable conclusion can be had determining that the terms are narrowly

5    tailored to achieve a compelling governmental purpose.

6          For all these reasons, Plaintiff's pursuit of Cyberheat must cease and Plaintiff's

7    proposed injunctive relief must be denied.

8          DATED this 11th day of January 2007.

9                                    Respectfully submitted,

10                                   CARPELAW PLLC
11                                   *s/ Robert S. Apgood*
                                     Pro Hac Vice
12                                   2400 NW 80th Street #130
                                     Seattle, WA 98117-4449
13                                   Telephone: (206) 624-2379
                                     Facsimile: (206) 784-6305
14                                   E-mail: rob@carpelaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT'S MEMORANDUM IN RESPONSE TO           **CARPELAW** PLLC
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF  - 26    2400 NW 80th Street  #130
                                                Seattle, Washington 98117
                                                (206) 624-2379 - (206) 784-6305 (fax)

1

## CERTIFICATE OF SERVICE

2

3    I, Robert S. Apgood, do hereby certify that on the 11th day of January 2007, I

4  caused true and correct copies of the following:

5    1.    Defendant's Memorandum in Response to Plaintiff's Proposed Injunctive

6        Relief; and

7    2.    this Certificate of Service

8  to be served on:

9  Lauren Hash, Esq.
   Department of Justice
10  Office of Consumer Litigation
   P.O. Box 386
11  Washington, D.C. 20044

12

13  Jeffrey E. Steger, Esq.
   Department of Justice
14  Office of Consumer Litigation
   P.O. Box 386
15  Washington, D.C. 20044

16

17  by filing a copy of same with the Clerk of the Court.  In accordance with the Local Rule

    and the attorneys' agreements, the above named attorneys will receive notification of
18
    filing and copies of same using the court's CM-ECF system.
19
       I declare under penalty of perjury under the laws of the United States of America
20
    that the foregoing is true and correct.  Executed at Seattle, Washington,
21
       DATED this 11th day of January 2007.
22

23                    s/ Robert S. Apgood
                      CarpeLaw PLLC
24                    2400 NW 80th Street #130
                      Seattle, WA 98117-4449
25                    Telephone: (206) 624-2379
                      Facsimile: (206) 784-6305
26                    E-mail: rob@carpelaw.com

27

DEFENDANT'S MEMORANDUM IN RESPONSE TO          **CARPELAW** PLLC
PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF - 27    2400 NW 80th Street #130
                                               Seattle, Washington 98117
(206) 624-2379 - (206) 784-6305 (fax)