Jeffrey Steger
Lauren Hash
U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
Tel: (202) 307-0047
Fax: (202) 514-8742
Jeffrey.Steger@usdoj.gov
PA Bar 74854
Attorneys for Plaintiff United States of America

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,  )<br>  )<br>Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>Cyberheat, Inc., an Arizona  )<br>corporation,  )<br>  )<br>Defendant.  ) | No. CIV 05-457-TUC-DCB<br><br>UNITED STATES' REPLY<br>TO DEFENDANT'S<br>RESPONSE TO PROPOSED<br>INJUNCTIVE RELIEF |

        The United States submits this reply to Defendant's Response to Plaintiff's proposed injunctive relief.  The Proposed Order for Permanent Injunction is designed to ensure Defendant's compliance with the CAN-SPAM Act and to prevent future violations of this statute.  As Defendant acknowledged at the December 15, 2006, hearing, it was doing business as usual – in other words, Defendant has not modified its business practices.  Without injunctive relief, there is a reasonable likelihood that violations may recur.

        As discussed in the United States' initial submission regarding the proposed order, the injunction sought is designed to prevent illegal practices in the future.  Court orders in cases such as this should not only be adequate to prohibit the precise violation the court found, but to "close all roads to the prohibited goal" and "fence in" the violator to prevent recurrence.  F.T.C. v. Ruberoid Co., 343 U.S. 470, 473 (1952); Sterling Drug, Inc. v. F.T.C., 741 F.2d 1146, 1154 (9th Cir. 1984).  The need for such relief is made clear by Defendant's strident opposition to the proposed order.

Defendant reargues the merits of the case under an agency theory, but fails to recognize the specific statutory basis for its violations. Congress specifically designed the CAN-SPAM Act to reach entities such as Defendant which initiate violative commercial email. Defendant's argument on the merits is simply incorrect because it fails to consider the text of the statute.

Defendant raises several objections and constitutional arguments in an effort to narrow the scope of the proposed injunctive relief. However, Defendant misstates the legal standard for injunctive relief and ignores one of the primary purposes of the CAN-SPAM Act – protecting the public, particularly children, from being exposed to unsolicited commercial email containing vulgar and pornographic images. Defendant's assertion that the proposed relief violates the due process clause of the Constitution is without merit because the injunction does not bind any person who is not a party to this litigation.

Defendant also challenges the proposed relief on the grounds that it violates substantive due process. But the Defendant does not challenge the statute, and the injunction is intended merely to achieve future compliance with the statute. In addition, Defendant's argument that the proposed injunction's purported limitation on Defendant's free speech rights should be subject to strict scrutiny ignores the fact that the injunction seeks to enjoin aspects of Defendant's commercial enterprise. To the extent Defendant asserts that the proposed injunction burdens speech – an assertion the government does not concede – the appropriate legal standard is set forth in case law regarding commercial speech. Analyzing the proposed injunction under the commercial speech standard, the injunction is permissible.

In light of Defendant's Memorandum, Plaintiff proposes several modifications to clarify the intent or the scope of the proposed relief. With these modifications, and for the reasons set forth in its submissions, Plaintiff requests that the Court enter the Revised Proposed Order for Permanent Injunction.

1  **I.    Standard for Injunctive Relief**

2          Relying on the wrong standard for injunctive relief, Defendant seeks to narrow the

3  scope of the injunction.  See Def. Response at p. 12 lines 3-8 (quoting eBay, Inc. v.

4  MercExchange, L.L.C., 126 S. Ct. 1837 (2006) for the standards governing imposition of

5  injunctions in a case involving private parties).  However, the standard for issuance of an

6  injunction in this case is different from that in cases where private parties seek an

7  injunction.  In government enforcement actions, where a statute is violated, injury is

8  presumed.  See FTC v. World Wide Factors, Ltd., 882 F.2d 344, 346 (9th Cir. 1989);

9  United States v. Odessa Union Warehouse Coop., 833 F.2d 172, 174-75 (9th Cir. 1987).

10  In this statutory injunction proceeding, the requirements of injunctive relief are met when

11  the government establishes that (1) the Defendant has violated the Act and (2) there is

12  some reasonable likelihood that the violations may recur.  United States v. Laerdal Mfg.

13  Corp., 73 F.3d 852, 855 (9th Cir. 1995); see also United States v. W.T. Grant Co., 345

14  U.S. 629, 633 (1953).

15          The first prong of this standard will be met upon entry of an order granting the

16  United States' Motion for Summary Judgment.  Defendant argues that the second prong is

17  not met because it is not likely to violate the law in the future.  See Def. Response at p. 13

18  line 18 through p. 14 line 21.  Defendant agrees on the factors the Court may consider in

19  determining whether there is some likelihood that the violations may recur, but disagrees

20  that Cyberheat is likely to continue to violate the law.  See Def. Response at p. 13 line 25

21  through p. 14 line 5.  However, Defendant's admission in the summary judgment hearing

22  that the company is doing business as usual shows that Cyberheat's unlawful behavior is

23  unlikely to change.  The fact that Defendant's violations were not isolated, that economic

24  incentives remain for Cyberheat to violate the law, and that Cyberheat continues to deny

25  the wrongful nature of its conduct demonstrates that there is a reasonable likelihood that

26  Cyberheat will continue to violate the law.  See Laerdal Mfg. Corp., 73 F.3d at 854-55.

27  Therefore, injunctive relief is appropriate in this case.

28          Relying on the same improper standard for injunctive relief and further attempting

1    to narrow the scope of the injunction, Defendant asserts that the balance of the equities

2    and costs is in favor of Cyberheat because the requirements set forth in the proposed

3    injunctive relief are onerous and burdensome.  See Def. Response at p. 12 line 17 through

4    p. 14 line 21.  However, the proposed injunctive relief simply requires Cyberheat to take

5    the reasonable steps, given Cyberheat's violations of the law, necessary to prevent

6    violations in the future.

7        Defendant specifically asserts that the balance of the equities and the costs is

8    inequitable because the government's case relies on evidence of illegal emails sent by a

9    small number of Cyberheat affiliates.  See Def. Response at p. 11 lines 11–22.  However,

10    the government's evidence does not represent all of the illegal emails initiated by

11    Cyberheat.  The Microsoft hotmail trap accounts that were one source of the

12    government's evidence are analogous to fly paper – they attract spam simply by existing.

13    Trap accounts are a minute portion of all email accounts and represent only a small strip

14    in the incredibly vast Internet.  Similarly, the Federal Trade Commission spam database

15    relied on consumer complaints and contains only a very small portion of the universe of

16    emails.

17        The information Cyberheat is required to collect under the proposed relief is

18    directly tied to preventing recurring violations.  It is necessary for Cyberheat to collect

19    information from all affiliates because the evidence has shown that Cyberheat does not

20    currently monitor its affiliates to determine which ones are promoting Cyberheat's web

21    sites through unlawful spam, and it has no effective system in place to implement its

22    alleged "zero tolerance" policy.  Cyberheat must collect information on who its affiliates

23    are in order to make effective any discipline of affiliates who initiate violative emails on

24    Cyberheat's behalf.  Without adequate identifying information, it would remain possible,

25    as it is today, for a person to sign up as "Affiliate A," violate the law, be terminated, and

26    sign up tomorrow as "Affiliate B" and continue to send illegal spam.

27        Defendant further contends that it would have to significantly change its business

28    model in order to comply with the proposed injunction and that the government offers no

Page 4 of 16

1  justification that furthers the stated goals of CAN-SPAM for these changes.  See Def.

2  Response at p. 12 line 17 through p. 13 line 3.  Defendant ignores the fact that one of the

3  primary goals of the CAN-SPAM Act and Adult Labeling Rule is to protect the public

4  from being exposed to unsolicited commercial email containing vulgar and pornographic

5  images.  The breadth of the proposed injunction is necessary to further the goal of

6  protecting unsuspecting recipients from receiving unwanted pornographic spam and to

7  prevent future violations.

8  **II.   Reply to Defendant's Objections to Definitions**

9  Defendant objects generally to "plaintiff's restatement of the law as it exists today,

10 without provision for amendment to those definitions as the underlying statutory law may

11 be amended from time-to-time."  Def. Response at p. 6 lines 14-17.  Defendant's

12 objection is without merit because the parties could agree to modify the decree, or

13 Cyberheat could petition the Court to amend the injunction if necessary.  See Fed. R. Civ.

14 P. 60(b); United States v. Motor Vehicle Mfrs. Ass'n, 643 F.2d 644, 649 (9th Cir. 1981)

15 (acknowledging power of court to modify injunction in light of change in law).

16 Defendant's specific objections to the government's definitions are addressed

17 below.  See Def. Response at p. 6 line 23 through p. 11 line 9.

18 A**.**    "Affiliate Program" – Omission of the phrase "or any other Internet based

19 mechanism" would create a loophole for Cyberheat to violate the law through promotions

20 by affiliates using landing pages or other Internet based mechanisms to transmit

21 subscribers to Cyberheat.

22 E.    "Defendant's Representatives" – This definition mirrors the definition of

23 Fed. R. Civ. P. 65(d) as to who can be bound by an injunction.  Defendant's assertion that

24 the proposed injunctive relief is overbroad and therefore should be narrowed is similar to

25 the assertion of petitioners in Madsen v. Women's Health Center, 512 U.S. 753 (1994),

26 who challenged a state court order enjoining those acting "in concert" with the named

27 parties from, inter alia, blocking or interfering with public access to an abortion clinic.

28 The Supreme Court rejected petitioners' argument, holding:

1
2
3
4
5
6
7
8
9

      Petitioners also challenge the state court's order as being vague and overbroad.  They object to the portion of the injunction making it applicable to those acting "in concert" with the named parties.  But petitioners themselves are named parties in the order, and they therefore lack standing to challenge a portion of the order applying to persons who are not parties.  Nor is that phrase subject, at the behest of petitioners, to a challenge for "overbreadth";  the phrase itself does not prohibit any conduct, but is simply directed at unnamed parties who might later be found to be acting "in concert" with the named parties.  As such, the case is governed by our holding in <u>Regal Knitwear Co. v. NLRB</u>, 324 U.S. 9, 14, 65 S.Ct. 478, 481, 89 L.Ed. 661 (1945).  There a party subject to an injunction argued that the order was invalid because of a provision that it applied to "successors and assigns" of the enjoined party.  Noting that the party pressing the claim was not a successor or assign, we characterized the matter as "an abstract controversy over the use of these words."  <u>Id.</u>, at 15, 65 S.Ct., at 482.

10

<u>Madsen</u>, 512 U.S. at 775-76.

11
12
13
14
15
16
17

      Likewise, the phrase "in active concert or participation" in the definition of "Defendant's Representatives" does not prohibit any conduct, but is directed at unnamed persons who might later be found to be acting in concert with the Defendant or Defendant's Representatives.  Defendant's challenge to the scope of the proposed injunctive relief based on the assertion that it is overly broad is "an abstract controversy" that should be rejected for the reasons set forth in <u>Madsen</u>.[1]

18
19
20
21

      F.     "Document" – The language of Fed. R. Civ. P. 34(a) is not misstated.  The term "document" is defined in the proposed injunction to specifically include sound recordings and images, categories of documents that, while not listed in Fed. R. Civ. P. 34(a), are contemplated by the rule under "other data or data compilations stored in any

22
23
24
25
26
27
28

   [1] Defendant objects to the use of the term "Defendant's Representatives" in Paragraphs VII and VIII, the record keeping provisions of the injunction.  The references to "Defendant's Representatives" in Paragraph VII have been deleted in the revised proposed order submitted herewith.  The record keeping provisions of Paragraph VII are not intended to require persons who participate in Defendant's affiliate program to create and retain such records.  Rather, the record keeping provisions of Paragraph VII are intended to apply to Defendant.  Lastly, Paragraph VIII has been modified to clarify that Defendant's obligations set forth in Paragraph VIII to provide notice of the injunctive relief to Defendant's Representatives and obtain an acknowledgment of this Court's Order from such recipients is separate and apart from Defendant's obligations in subparagraphs III.C and III.D to provide notice of the injunctive relief to, and obtain an agreement from, persons who participate in Defendant's affiliate program.

medium from which information can be obtained."  Further, the term "other data

compilations" is not ambiguous because the term is defined the same way it is in Fed. R.

Civ. P. 34(a).

I.    "Email Campaign" – The Defendant argues that definitions (I), (J), (L),

(M), and (N) are "overly broad" and "vague for voidness [sic]" because the government

has not defined the term "commercial email message."  The government understands the

term "commercial electronic mail message" as defined in the proposed injunction to be

synonymous with "commercial email message."  However, in order to clarify the

proposed injunctive relief, the government has modified the definition of commercial

electronic mail message in the attached revised proposed injunction to read:

"'Commercial electronic mail message' or 'commercial email message' means any email

message which contains a commercial advertisement or promotion of a commercial

product or service (including content on an Internet web site operated for a commercial

purpose)."

J.    "Initiate" –  In order to clarify the proposed injunctive relief, the

government's current proposed injunction defines "initiate" to include the entire language

of the definition in 15 U.S.C. § 7702(9): "'initiate', when used with respect to a

commercial electronic mail message, means to originate or transmit such message or to

procure the origination or transmission of such message, but shall not include actions that

constitute routine conveyance of such message.  For purposes of this paragraph, more

than one person may be considered to have initiated a message."

L.    "Procure" – The government's amendment of the definition of

"commercial electronic mail message" to include "commercial email message" makes the

definition of "procure" in the proposed injunction complete.

Q.    "Valid physical postal address" – Cyberheat objects that the government's

definition of "valid physical postal address" limits Cyberheat's ability to contract with

affiliates who do not have a street address.  However, Cyberheat misconstrues the

requirements of 15 U.S.C. § 7704(a)(5)(A)(iii) that make the initiation of any commercial

Page 7 of 16

electronic mail message without the valid physical address of the sender unlawful. "Sender" is defined in 15 U.S.C. § 7702(16)(A) as "a person who initiates such a message and whose product, service, or Internet web site is advertised or promoted by the message." Therefore, Cyberheat is the statutory sender whose valid physical postal address must be included in any commercial electronic mail message. Cyberheat's affiliates are not required by the proposed injunction to have a valid physical postal address.[2]

**III.    Defendant's Constitutional Arguments Are Without Merit**

    **A.    Injunctive Relief Does Not Violate Procedural Due Process**

Defendant asserts that the proposed injunction violates the Due Process Clause of the Fifth Amendment of the Constitution because it enjoins Defendant's affiliates, who are not parties to this lawsuit and have not been provided any notice of being subject to a court order. Defendant's procedural due process argument is without merit because Defendant's affiliates are not enjoined by the proposed injunctive relief.[3] Therefore, no notice of the proposed injunctive relief to Defendant's affiliates is required.

Defendant is the entity enjoined under the proposed injunction. Among other things, Defendant is required to gather specific identifying information from its affiliates in an effort to ensure that Defendant is in compliance with the law including this Court's

---

[2] Plaintiff's modifications to the proposed injunctive relief are incorporated into a Revised Proposed Order for Permanent Injunction, which is attached to this memorandum as Exhibit 1.

[3] If an affiliate is later determined to be "in active concert or participation" with Defendant or Defendant's Representatives, and the affiliate receives actual notice of the Court's Order by personal service or otherwise, then the affiliate may be considered a "Defendant's Representative" and subject to the provisions of Paragraphs I and II. To avoid any ambiguity as to whether affiliates are obligated to comply with the Record Keeping Provisions of Paragraph VII, references in that paragraph to "Defendant's Representatives" were deleted. The only provisions enjoining conduct by Defendant's Representatives are Paragraphs I and II. "Defendant's Representatives" means defendant's officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them or defendant who receive actual notice of this Order by personal service or otherwise.

1   Order.  However, the affiliates themselves are not enjoined from any conduct.

2   Consequently, the proposed injunctive relief does not violate the Due Process Clause

3   because it does not enjoin any person who is not a party and who has not been provided

4   notice of being subject to a court order.[4]

5              **B.**    **Injunctive Relief Does Not Violate the First Amendment**

6          Defendant's invocation of substantive due process as an introduction for its First

7   Amendment claims is unnecessary. The Supreme Court has held that courts should not

8   rely on substantive due process where there is an explicit textual source of constitutional

9   protection for the interest at stake.  Albright v. Oliver, 510 U.S. 266, 273 (1994) ("Where

10  a particular Amendment 'provides an explicit textual source of constitutional protection'

11  against a particular sort of government behavior, 'that Amendment, not the more

12  generalized notion of 'substantive due process,' must be the guide for analyzing these

13  claims.'" (quoting Graham v. Connor, 490 U.S. 386, 395 (1989))). The explicit textual

14  source for Defendant's claim is the First Amendment.  Therefore, Defendant's

15  constitutional claim regarding free speech is analyzed under the First Amendment not

16  substantive due process.

17         Defendant asserts that the proposed injunction must be subjected to strict scrutiny.

18  However, Defendant's argument rests on the false assumption that the proposed

19  injunction restricts free speech.  It does not.  The proposed injunction merely reflects the

20  statutory requirements of CAN-SPAM; it does not prevent Defendant or anyone else from

21  sending sexually oriented material by commercial email.

22         Paragraphs I and II of the proposed injunction require Defendant to obey the CAN-

23  SPAM Act and the Adult Labeling Rule.  Defendant has never asserted a First

24  Amendment challenge to the CAN-SPAM Act in this litigation.  Rather, Defendant

25  concedes, "Cyberheat agrees with the assertion that commercial electronic mail sent in

26

27

28         [4] Based on this discussion, Defendant's objection to the definition of "person" is without
     merit.

1   violation of the CAN-SPAM Act of 2003 should be regulated."  Def. Response at p. 21

2   n.7.  The proposed injunctive relief in Paragraphs I and II mirrors the statute and Adult

3   Labeling Rule and does no more to regulate commercial electronic mail than the

4   underlying law which the Defendant concedes is constitutional.  Such relief is thus not

5   unconstitutional.

6       Defendant's claim that the monitoring provisions of the proposed injunctive relief

7   inhibit Cyberheat's speech is also unfounded.  The remaining provisions of the proposed

8   injunctive relief, such as requiring Defendant to obtain the name, physical address, and a

9   working telephone number of its affiliates, are "fencing in" requirements necessary to

10  ensure Cyberheat's compliance with the law.[5]  See United States' Submission Regarding

11  Proposed Order For Permanent Injunction (Docket #53).  This in no way burdens

12  "Cyberheat's ability to present First Amendment protected material to adults."  Def.

13  Response at p. 19 lines 19-20.  Defendant remains free to promote its sexually oriented

14  material through commercial emails as long as it complies with the law and the proposed

15  injunctive relief.

16      In any event, any First Amendment challenge to the injunction enforcing CAN-

17  SPAM would be meritless.  To the extent that there is any speech implicated by the

18  proposed injunctive relief, there can be no dispute that it is commercial speech.

19  Commercial speech is speech that "propose[s] a commercial transaction," Board of

20  Trustees of the State Univ. of N.Y. v. Fox, 492 U.S. 469, 473-74 (1989).

21      The issue of whether particular speech is classified as fully protected speech or

22  commercial speech was discussed in Bolger v. Youngs Drug Products Corp., 463 U.S. 60

23  (1983).  In Bolger, the Court considered three factors for deciding whether speech should

24  be classified as commercial speech: (1) whether the speech is concededly an

25

26      [5]  To the extent Defendant objects to the requirement that it obtain a physical address for
27  each person participating in Defendant's affiliate program, Plaintiff asserts that such information
    is necessary in order to make effective any discipline of affiliates who initiate violative emails on
28  Cyberheat's behalf.

advertisement; (2) whether the speech refers to a specific product; and (3) whether the
speaker has an economic motivation for disseminating the speech.  Bolger, 463 U.S. at
67.

The answer to all three questions here is "yes."  The electronic mail messages are
advertisements for Defendant's pornographic web sites.  They are promoting a specific
product – again, Defendant's web sites.  Third, there is clearly an economic motivation
for the dissemination of the emails advertising Defendant's web sites.  To the extent the
proposed injunctive relief relates to speech, there can be no dispute that the relief relates
to commercial speech.  Defendant is engaged in a commercial activity, and the injunction
is aimed at curbing future illegal conduct relating to Defendant's commercial activity.

It is settled law that commercial speech concerning unlawful activity or speech that
is misleading receives no First Amendment protection.  See 44 Liquormart, Inc. v. R.I.,
517 U.S. 484, 497 n.7 (1996) (plurality opinion) ("the First Amendment does not protect
commercial speech about unlawful activities"); Fla. Bar v. Went For It, Inc., 515 U.S.
618, 623-24 (1995) ("the government may freely regulate commercial speech that
concerns unlawful activity or is misleading"); Zauderer v. Office of Disciplinary Counsel
of Supreme Court of Ohio, 471 U.S. 626, 638 (1985) ("The States and the Federal
government are free to prevent the dissemination of commercial speech . . . that proposes
an illegal transaction"); Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 69 (1983)
("The State may also prohibit commercial speech related to illegal behavior."); Central
Hudson Gas & Elec. Corp., v. Pub. Serv. Comm'n, 447 U.S. 557, 563-64 (1980) ("The
government may ban . . . commercial speech related to illegal activity").

In Central Hudson, the Supreme Court established a four-prong test to determine
whether commercial speech enjoys First Amendment protection.  Central Hudson, 447
U.S. at 566.  For commercial speech to come within the First Amendment, it must
concern lawful activity and not be false or misleading.   As stated above, the commercial
speech at issue here does not get Defendant past the first prong.  The determination that
the Defendant's conduct is unlawful does not implicate the First Amendment because the

statutory provisions define unlawful activity without preventing speech. The proposed injunction merely tracks the statute and contains appropriate fencing-in and monitoring provisions.

Defendant also asserts that the proposed injunctive relief burdens its right to initiate commercial email messages that are not in violation of the law. This argument should be evaluated using the second, third and forth prongs of the test set forth in Central Hudson: whether the asserted governmental interest to be served by the restriction on commercial speech is substantial. Central Hudson, 447 U.S. at 566. If so, it must then be decided whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than necessary to serve that interest. Id.

The asserted government interest to be served by the proposed injunctive relief is substantial: indeed, it is the same interest served by the statute. In enacting the CAN-SPAM Act, Congress expressly found that "[t]he convenience and efficiency of electronic mail are threatened by the extremely rapid growth in the volume of unsolicited commercial electronic mail; [t]he receipt of a large number of unwanted messages also decreases the convenience of electronic mail and creates a risk that wanted electronic mail messages, both commercial and noncommercial, will be lost, overlooked, or discarded amidst the larger volume of unwanted messages, thus reducing the reliability and usefulness of electronic mail to the recipient; [and] [s]ome commercial electronic mail contains material that many recipients may consider vulgar or pornographic in nature." 15 U.S.C. §§ 7701(a)(2), (3), (5). The proposed injunction aims to protect these interests.

The proposed injunctive relief directly advances the government's substantial interest in preventing future violations of the law by this Defendant. This was discussed in some detail in the United States' Submission Regarding Proposed Order For Permanent Injunction (Docket #53). Defendant acknowledged at the December 15, 2006, hearing that it was doing business as usual. As a result, absent an effective injunction, Defendant's violations will continue, and violative email will be broadcast across the

1  Internet soliciting viewers to Defendant's sexually oriented websites.  Defendant does not

2  claim to have remedied the violations, whether with or without sincerity; Defendant does

3  not recognize the wrongful nature of its conduct; and Defendant retains the characteristics

4  that would enable and tempt Defendant to engage in violative behavior in the future.  In

5  these circumstances, an injunction is the only effective way to advance the government's

6  substantial interest in preventing future violations by this Defendant.  See Laerdal Mfg.

7  Corp., 73 F.3d at 854-55.

8          Lastly, the proposed injunctive relief is narrowly tailored to directly advance the

9  government's substantial interest in preventing future violations of the law by this

10  Defendant.  Specifically, the relief is narrowly tailored to reduce unsolicited pornographic

11  spam, without banning sexually oriented materials in emails.  The proposed injunctive

12  relief provides that sexually oriented materials cannot be located in the subject line or the

13  area of the email that is initially viewable to an email recipient.  This mirrors statutory

14  requirements which the Defendant concedes are constitutional.  Further, the proposed

15  injunctive relief does not exclude sexually oriented materials from the body of an email

16  message.  Thus, the proposed injunctive relief does not prohibit the inclusion of sexually

17  explicit materials in an email message, it merely restricts the manner in which sexually

18  explicit materials can be displayed.  The proposed injunctive relief is narrowly tailored to

19  achieve the government's interest because it is directed at enjoining Defendant's illegal

20  conduct in the future.  It will enable Internet users to filter unsolicited commercial email,

21  contributing directly to the reduction in unsolicited commercial email, but it does not

22  restrict commercial speech because it merely requires the Defendant to make various

23  disclosures.[6]

24  _____

25          [6] Defendant asserts that the injunction will further burden Cyberheat's speech because
   Cyberheat's competitors are not subject to the same requirements.  However, Cyberheat is
26  subject to the injunction because it has broken the law and the requirements are necessary to
   ensure that Cyberheat does not continue to violate the law.  Further, several other adult
27  entertainment companies, presumably competitors of Cyberheat, have entered into Consent
   Decrees for violations of the CAN-SPAM Act that contain injunctive relief very similar to the
28

Page 13 of 16

1
2
3

  The harms that the government seeks to prevent are real, and the proposed injunctive relief will reduce the Defendant's contribution to the mass of unsolicited and violative email.

4

**IV. <u>Conclusion</u>**

5
6
7
8
9
10
11
12
13
14

  The Court should enter Plaintiff's proposed injunctive relief.  Without injunctive relief, there is a reasonable likelihood that Cyberheat's violations of the law may recur. The order focuses on specific actions Defendant must take to comply with the law and to prevent continuing violations.  The proposed injunctive relief is specifically tailored to prevent such future violations and protect the public from being exposed to unsolicited commercial email containing vulgar and pornographic images.  The affirmative steps Defendant would be required to take are reasonable ones given that Defendant has violated a law that Congress designed to protect the public welfare, with emphasis on the welfare of children.  Therefore, Cyberheat's efforts to narrow the scope of the injunctive relief should be denied.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

injunctive relief proposed here.  <u>See</u>, <u>http://www.ftc.gov/os/caselist/0523043/0523043.htm</u>, http://www.ftc.gov/os/caselist/0523044/0523044.htm.

1

DATED: January 19, 2006                    Respectfully submitted,

2

FOR PLAINTIFF UNITED STATES:

3

PETER D. KEISLER

4

Assistant Attorney General,
Civil Division

5

U.S. DEPARTMENT OF JUSTICE

6

PAUL K. CHARLTON

7

United States Attorney

8

JANET MARTIN

9

Assistant U. S. Attorney for the
District of Arizona

10

Bar Number 006014
405 W. Congress, Suite 4800

11

Tucson, AZ  85701-5040
Telephone: (520) 620-7300

12

Facsimile: (520) 620-7320

13

EUGENE M. THIROLF

14

Director
Office of Consumer Litigation

15

16

KENNETH L. JOST
Assistant Director

17

Office of Consumer Litigation

18

By:    /s/ Jeffrey Steger

19

Jeffrey Steger
Lauren Hash

20

Trial Attorneys
Office of Consumer Litigation

21

U.S. Department of Justice
P.O. Box 386

22

Washington, DC  20044

23

Telephone: (202) 307-0047
Facsimile: (202) 514-8742

24

Jeffrey.Steger@usdoj.gov

25

26

27

28

1

2                        **CERTIFICATE OF SERVICE**

3        I hereby certify that on January 19, 2007, I electronically transmitted the

4    attached document to the Clerk's Office using the CM/ECF System for filing and

5    transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

6
                            Robert S. Apgood
7                           CarpeLaw PLLC
                            2400 NW 80th Street #130
8                           Seattle, WA 98117-4449

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28