# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>IMPULSE MEDIA GROUP, INC.,<br>a Washington corporation,<br><br>Defendant. | No. CV05-1285L<br><br>**PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION**<br><br>NOTING DATE: April 11, 2008 |

The government hereby moves this Court to impose injunctive relief against defendant Impulse Media Group, Inc. ("IMG").

## I. Legal Standard for Injunctive Relief

This Court stated the standard for injunctive relief:

> A party can subject itself to injunctive relief whenever it intentionally pays for, or induces, a third-party to send any commercial e-mail message. Once a party intentionally pays for, or induces, a commercial email to be sent, it cannot escape liability for injunctive relief simply because it was unaware that CAN-SPAM provisions were being violated by the party sending the e-mails. In that sense, plaintiff is correct in its statement that CAN-SPAM's injunctive relief provisions contain "no exception for renegade behavior."

Order Denying Motions for Summary Judgment at 5:18-24 ("Order") [Docket Entry 38].

## II. Evidence of IMG's Intentional Inducement to Affiliates Send Emails

Seth Schermerhorn testified that he instructed IMG graphic designer Josh Mackey to create promotional material for use in email promotion by affiliates. He testified that he supplied this material to PureCash. As detailed below, IMG affiliate PureCash is closely aligned to IMG

Plaintiff's Motion for
Permanent Injunction
CV05-1285L

U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
(202) 307-0047

affiliate imatrix. Imatrix sent five of the violative emails containing the promotional material that IMG created and provided specifically for use in emails. (Trial Exhibits 13-17).

### A. Messrs. Schermerhorn and Mackey Testified that IMG Created and Provided Promotional Material for Use in Emails

Mr. Schermerhorn testified that IMG created marketing material for use in emails by affiliates to promote IMG, he knew the marketing material would be used in emails, and IMG would pay the affiliate if IMG got subscribers from opt-in emails. Trial Testimony ("TT") at 36:9-37:4 (Ex. 1); 103:1-15 (Ex. 2). He testified this was not prohibited by IMG's Program Agreement. TT at 48:17-24 (Ex. 2). Mr. Schermerhorn also testified that he instructed Mr. Mackey to create ad materials to supply to "Luke" at "PureCash," and that he, Mr. Schermerhorn, supplied these materials to PureCash. TT at 4:16-6:2 (Ex. 1). Mr. Schermerhorn testified that he intended the promotional material to be used in opt-in emails. Id.; TT at 36:9-37:4 (Ex. 1). Mr. Mackey specifically identified the jizzlickers ad in trial exhibit 13 as material he designed at the request of Mr. Schermerhorn. Mackey Depo. at 25:3-18 and 96:14-21 (Ex. 3).[1]

Importantly, Mr. Schermerhorn testified that the promotional material was for use in emails by affiliates to promote IMG. TT at 36:14-15 (Ex. 1); 103:6-8 (Ex. 2). His testimony expressly demonstrates that *multiple affiliates* were permitted to email. Id. The provision of the marketing material as well as the promise to pay are the intentional inducements provided by IMG to third parties, such as PureCash, to send email to promote IMG's web sites.

### B. PureCash and Imatrix Are Closely Connected to One Another

Both PureCash and imatrix are IMG affiliates. Tr. Ex. 416 (PureCash, pp. 301-03, line 5121; imatrix, pp 139-141, line 2375) (Ex. 4). Luke McCoy signed up PureCash to be an IMG affiliate and provided that payment be sent to Pure Marketing Solutions. (Id.).[2] Both PureCash and imatrix provided the same phone number during the affiliate sign up process. Tr. Ex. 416

---

[1] At trial, IMG stipulated that Deposition Exhibit 24 was Trial Exhibit 13.

[2] Mr. Schermerhorn refers to "Luke" of "PureCash" in his testimony. TT at 5:6-13 (Ex. 1).

Plaintiff's Motion for
Permanent Injunction
CV05-1285L

Page 2 of 7

U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
(202) 307-0047

(PureCash, p. 301, line 5121, col. M; imatrix p. 139, l. 2375, col. M) (Ex. 4). The street address, suite, city and state provided for I-Matrix Tech in trial exhibits 13-17 ("3959 Van Dyke Rd. Ste 246, Lutz, FL.") is the same as the street address, suite, city and state provided by affiliate PureCash during the sign up process. (Tr. Ex. 416, p. 301, l. 5121) (Ex. 4).

Mr. Schermerhorn testified that Internet Matrix Technologies "settled with the FTC or DOJ for sending, I believe, unsolicited email for promoting a couple of different affiliate adult programs." TT at 55:9-22 (Ex. 2). In fact, PureCash a/k/a Pure Marketing Solutions, LLC, and Internet Matrix Technology, Inc., together entered a Stipulated Judgment For Civil Penalties and Permanent Injunctive Relief with the government to resolve allegations of violating CAN-SPAM. (Ex. 5).[3] The Stipulated Judgment was signed by Michael H. Gardner on behalf of both Pure Marketing Solutions and Internet Matrix Technology. (Ex. 5 at p. 20). Pure Marketing Solutions, a/k/a PureCash, and Internet Matrix Technology, a/k/a imatrix, are closely linked. The evidence demonstrates that the promotional material created by Mr. Mackey and supplied by Mr. Schermerhorn to Luke of PureCash for use in email promotion was used in violative emails by imatrix promoting IMG's web site jizzlickers.[4]

### C. **Imatrix Sent Emails that Violated CAN-SPAM**

Trial Exhibits 13-17 were admitted into evidence without objection. Each email contains the marketing material designed by Mr. Mackey. See Mackey Depo. at 96:14-21 (Ex. 3) (the jizzlickers material is identical in each email). Each email was received by a Microsoft trap account and each email fails to contain the equivalent of the brown paper wrapper.[5] Each email

---

[3] The government requests that this Court take judicial notice of the Stipulated Judgement for Civil Penalties and Permanent Injunctive Relief entered by the United States District Court for the Middle District of Florida.

[4] Tr. Ex. 416 indicates that both PureCash and imatrix are "active" affiliates at the time of discovery. Tr. Ex. 417 indicates that PureCash received payments from IMG in 2004.

[5] The "stars" used by IMG to cover aspects of the sexually-oriented material fail to render the sexually-oriented material as compliant with CAN-SPAM. Even if one agrees that the "stars" are sufficient, the emails still lack the use of the term "Sexually Explicit: " in the subject line and initially viewable content of the emails.

Plaintiff's Motion for
Permanent Injunction
CV05-1285L

Page 3 of 7

U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
(202) 307-0047

contains the exact same hyperlink (including subdomain), which when clicked upon, leads to IMG's jizzlickers.com. Tr. Ex. 455 (web capture admitted into evidence without objection).

### D. IMG Admitted its Affiliates Used Email to Promote IMG's Websites

In its closing, IMG admitted that some of its affiliates used email to promote IMG's websites. "Yes, Impulse Media Group provides opportunities at times for people to send solicited e-mails." TT at 3:11-12 (Ex. 6). This is consistent with the trial testimony of Messrs. Schermerhorn and Mackey as well as the admitted fact that "[e]mail and electronic newsletter marketing are examples of a type of marketing Defendant affiliates may choose to use." Admitted Fact #17. IMG sought to distinguish between solicited and unsolicited email. But this distinction is irrelevant to the determination of injunctive relief. Under this Court's Summary Judgment Order, once a party intentionally induced a commercial email to be sent, it cannot escape liability for injunctive relief simply because it was unaware that CAN-SPAM provisions were being violated by the party sending the emails. As this Court held: "a party who intentionally induces another to send commercial e-mails, but who is unaware that the other party is violating the Act's provisions could be subject to injunctive relief[.]" Order at 7:3-5.

### III. Jury Instructions and Jury's Verdict

Following the close of the evidence, the government requested a jury instruction based on this Court's summary judgment decision that once a party intentionally induced a commercial email to be sent, it cannot escape liability for injunctive relief simply because it was unaware that CAN-SPAM provisions were being violated by the party sending the e-mails. TT at 8:24-10:11 (Ex. 7). The Court denied the government's request, holding that the additional instruction might confuse the jury, as it was the jury's task was to determine whether IMG was liable for civil penalties. Id. at 14-15. Importantly, this Court held that it would do the fact finding and decide the issue of injunctive relief itself. Id. ("I am just going to take the injunctive thing back and decide it myself . . . . I will do the fact finding on that myself."). While the jury found that IMG did not initiate the transmission of emails that violated CAN-SPAM as set forth in Instructions 10-12, this finding was in the context of determining the issue of a civil penalty,

Plaintiff's Motion for
Permanent Injunction
CV05-1285L

Page 4 of 7

U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
(202) 307-0047

not injunctive relief.[6] The jury was not informed of the legal standard for injunctive relief. However, based on the evidence, IMG did intentionally induce some of its affiliates to send email. Given this fact and this Court's prior ruling on the standard for injunctive relief, it follows that this Court should impose injunctive relief.

## IV. Proposed Injunctive Relief

Paragraphs I and II of the proposed relief would prohibit IMG and its Representatives from violating CAN-SPAM and the Adult Labeling Rule, respectively. (Ex. 8). Paragraph III requires IMG and its Representatives to implement safeguards to verify and monitor its affiliates. Paragraph IV permits standard methods of investigating potential order violations. Paragraph V requires IMG to provide a written report to the FTC setting forth the manner in which it has complied and is complying with the order. The injunctive relief is designed to prevent IMG from engaging in illegal practices in the future. As the Supreme Court has observed with respect to FTC orders:

> Orders of the Federal Trade Commission are . . . to prevent illegal practices in the future. . . . If the Commission is to attain the objectives Congress envisioned, it cannot be required to confine its road block to the narrow lane the transgressor has traveled; it must be allowed effectively to close all roads to the prohibited goal, so that its order may not be by-passed with impunity.

*F.T.C. v. Ruberoid Co.*, 343 U.S. 470, 473 (1952). The Ninth Circuit recognizes that FTC orders should "'fence in' known violators of the Act" and that "[f]encing-in provisions serve to 'close all roads to the prohibited goal, so that [the FTC's] order may not be by-passed with impunity.'" *Sterling Drug, Inc. v. F.T.C.,* 741 F.2d 1146, 1154 (9th Cir. 1984) (citations omitted).

## V. Conclusion

IMG subjected itself to injunctive relief when it intentionally induced affiliate PureCash *and others* to send commercial e-mail. Once IMG intentionally induced commercial emails to be sent by PureCash, IMG cannot escape liability for injunctive relief even if it was unaware that CAN-SPAM was being violated by PureCash's closely aligned ally, imatrix.

---

[6] IMG argued that the government needed to prove that IMG intentionally induced affiliates to send *unsolicited email*. TT at 3:13-15; 4:5-8 (Ex. 6). This is very different than the proof necessary for injunctive relief.

Plaintiff's Motion for
Permanent Injunction
CV05-1285L

Page 5 of 7

U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
(202) 307-0047

| | |
|---|---|
| 1 | DATED: April 4, 2008            Respectfully submitted, |

FOR PLAINTIFF UNITED STATES:
Jeffrey Bucholtz
Acting Assistant Attorney General,
Civil Division
U.S. DEPARTMENT OF JUSTICE

JEFFREY C. SULLIVAN
United States Attorney

BRIAN KIPNIS
Assistant U. S. Attorney for the
Western District of Washington
700 Stewart Street
PHONE: (206) 553-7970
FAX: (206) 553-0882

EUGENE M. THIROLF
Director
Office of Consumer Litigation

KENNETH L. JOST
Deputy Director
Office of Consumer Litigation

By:    /s/ Jeffrey I. Steger
       JEFFREY STEGER
       LAUREN E. HASH
       Trial Attorneys
       Office of Consumer Litigation
       U.S. Department of Justice
       P.O. Box 386
       Washington, DC  20044
       Telephone: (202) 307-0047
       Facsimile: (202) 514-8742
       Jeffrey.Steger@usdoj.gov

Plaintiff's Motion for
Permanent Injunction
CV05-1285L

Page 6 of 7

U.S. Department of Justice
P.O. Box 386
Washington, DC  20044
(202) 307-0047

# CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such to the following CM/ECF registrant:

>Robert S. Apgood
>CarpeLaw PLLC
>2400 NW 80th Street #130
>Seattle, WA 98117-4449

By: /s/ Jeffrey I. Steger
Jeffrey I. Steger
Trial Attorney
Office of Consumer Litigation
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
Telephone: (202) 307-0047
Facsimile: (202) 514-8742
Jeffrey.Steger@usdoj.gov

Plaintiff's Motion for
Permanent Injunction
CV05-1285L

Page 7 of 7

U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
(202) 307-0047